**BAKER BOTTS L.L.P.**
Jonathan A. Shapiro (Cal. Bar No. 257199)
jonathan.shapiro@bakerbotts.com
Stuart C. Plunkett (Cal. Bar No. 187971)
stuart.plunkett@bakerbotts.com
Ariel D. House (Cal. Bar No. 280477)
ariel.house@bakerbotts.com
101 California Street, Suite 3600
San Francisco, California 94111
Telephone:   (415) 291-6200
Facsimile:    (415) 291-6300

*Attorneys for Defendants*
*UNION SQUARE HOSPITALITY*
*GROUP, LLC, DANIEL MEYER,*
*and SABATO SAGARIA*

*[Additional counsel listed on signature page]*

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

|  |  |
|---|---|
| TIMOTHY BROWN, | CASE NO. 4:17-CV-05782-JSW |
| Plaintiff, | **DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)** |
| v. | |
| 140 NM LLC, *et al.*, | Date:          June 1, 2018 |
| Defendants. | Time:          9:00 a.m. |
|  | Courtroom:  5 |
|  | Judge:        Hon. Jeffrey S. White |
|  | Action Filed: October 6, 2017 |

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ......................................................................... 1

RELIEF REQUESTED ............................................................................................... 2

STATEMENT OF ISSUES TO BE DECIDED ........................................................... 2

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 2

I.    INTRODUCTION ........................................................................................... 2

II.   STATEMENT OF ALLEGATIONS ................................................................ 6

    A.    The Parties and Never-Specified Meals ................................................... 6

    B.    Plaintiff's Amended Claims ..................................................................... 7

III.  SUMMARY OF ARGUMENT ....................................................................... 8

IV.   ARGUMENT ................................................................................................... 9

    A.    Plaintiff Still Lacks Article III Standing. .................................................. 9

    B.    Plaintiff Still Fails to State any Federal or State Antitrust Claim. ........... 11

        1.    Plaintiff Lacks Standing Under Section 4 of the Clayton Act. .......... 12

        2.    Plaintiff's "Conspiracy" Theory Remains Facially Inadequate. ........ 14

        3.    Plaintiff Fails to Allege a *Per Se* Violation or Any Facts
            Supporting a Rule of Reason Case ................................................. 19

    C.    Plaintiff Once Again Fails to State a UCL Claim. .................................... 21

    D.    Because Plaintiff's Amendments in Response to a Motion to Dismiss
        Failed To Cure the Complaint's Defects, Dismissal Should Be With
        Prejudice. ............................................................................................. 23

V.    CONCLUSION ............................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aliya Medcare Fin., LLC v. Nickell*,
　156 F. Supp. 3d 1105 (C.D. Cal. 2015) ....................................................................22, 24

*Alt. Richfield Co. v. USA Petroleum Co.*,
　495 U.S. 328 (1990)........................................................................................................13, 20

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of California*,
　190 F.3d 1051 (9th Cir. 1999) ........................................................................................13

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009)........................................................................................................12, 21

*Associated Gen. Contractors of Cal., Inc. v. California State Council of Carpenters*,
　459 U.S. 519 (1983) ........................................................................................................12

*Athena Feminine Techs. Inc. v. Wilkes*,
　No. C 10-04868 SBA, 2011 WL 4079927 (N.D. Cal. Sept. 13, 2011)...........................22

*Barber v. U.S. Bank N.A.*,
　No. CV 16-695-R, 2016 WL 9211666 (C.D. Cal. Aug. 9, 2016)....................................22

*Bedi v. Hewlett Packard Co.*,
　2008 WL 11226235 (D. Mass. Nov. 17, 2008) ..............................................................21

*Bell Atlantic Corp. v. Twombly*,
　550 U.S. 544 (2007)....................................................9, 11, 12, 14, 15, 16, 17, 18, 19, 24

*Brantley v. NBC Universal, Inc.*,
　675 F.3d 1192 (9th Cir. 2012) ......................................................................................9, 20

*Brunswick Corp v. Pueblo Bowl-O-Mat, Inc.*,
　429 U.S. 477 (1977) ........................................................................................................13

*Camacho v. Auto. Club of S. Cal.*,
　142 Cal. App. 4th 1394 (Cal. Ct. App. 2006) ..............................................................9, 22

*Cargill v. Manfort*,
　479 U.S. 104 (1986) ........................................................................................................13

*Coburn v. Bank of New York Mellon, N.A.*,
　No. 2:10-CV-03080 JAM, 2011 WL 1103470 (E.D. Cal. Mar. 22, 2011).......................22

*Credit Bureau Servs., Inc. v. Experian Info. Sols., Inc.*,
   No. SACV 12-2146 JGB (MLGx), 2013 WL 3337676 (C.D. Cal. June 28,
   2013) ........................................................................................................16

*Davidson v. Kimberly-Clark Corp.*,
   873 F.3d 1103 (9th Cir. 2017) .................................................................9, 10

*Del. Valley Surgical Supply Inc. v. Johnson & Johnson*,
   523 F.3d 1116 (9th Cir. 2008) .......................................................................12

*Dutra v. BFI Waste Mgmt. Sys. of N. Am., Inc.*,
   No. 14-CV-04623-NC, 2015 WL 2251203 (N.D. Cal. May 13, 2015) ...........23

*Gaitan v. Mortgage Elec. Registration Sys., Inc.*,
   EDCV09-1009 VAP MANX, 2009 WL 3244729 (C.D. Cal. 2009) ............9, 21

*Gerlinger v. Amazon.com Inc.*,
   526 F.3d 1253 (9th Cir. 2008) .......................................................................10

*Green Valley Corp. v. Caldo Oil Co.*,
   C 09-4028 JF (PVT), 2010 WL 2348636 (N.D. Cal. June 8, 2010) ...........10, 11

*Houser v. Pritzker*,
   28 F. Supp. 3d 222 (S.D.N.Y. 2014) .............................................................11

*In re ATM Fee Antitrust Litig.*,
   686 F.3d 741 (9th Cir. 2012) .....................................................................9, 12

*In re California Title Ins. Antitrust Litig.*,
   No. C 08-01341 JSW, 2009 WL 3756686 (N.D. Cal. Nov. 6, 2009) (J.
   White) ..........................................................................................................23

*In re Capacitors Antitrust Litig.*,
   154 F. Supp. 3d 918 (N.D. Cal. 2015) ...........................................................10

*In re Ditropan XL Antitrust Litig.*,
   529 F. Supp. 2d 1098 (N.D. Cal. 2007) .........................................................10

*In re LTL Shipping Services Antitrust Litig.*,
   1:08-MD-01895-WSD, 2009 WL 323219 (N.D. Ga. Jan. 28, 2009) ...............16

*In re Modafinil Antitrust Litig.*,
   837 F.3d 238 (3d Cir. 2016) ..........................................................................12

*In re Musical Instruments and Equip. Antitrust Litig.*,
   798 F.3d 1186 (9th Cir. 2015) .......................................................................18

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
   865 F. Supp. 2d 1002 (C.D. Cal. 2011) .........................................................19

*In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*,
   No. MDL 09-2074 PSG, 2013 WL 12130034 (C.D. Cal. July 19, 2013) ........................13

*Int'l Norcent Tech. v. Koninklijke Philips Elecs. N.V.*,
   No. CV07-00043 MMM, 2007 WL 4976364 (C.D. Cal. Oct. 29, 2007),
   *aff'd*, 323 F. App'x 571 (9th Cir. 2009)................................................................16

*Ismail v. Wells Fargo Bank, N.A.*,
   No. 2:12-CV-01653-MCE, 2012 WL 5425175 (E.D. Cal. Nov. 6, 2012)........................21

*Kelsey K. v. NFL Enterprises, LLC*,
   254 F. Supp. 3d 1140 (N.D. Cal. 2017) ........................................................................18

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008) ...............................................................16, 18, 19

*Krantz v. BT Visual Images, LLC*,
   89 Cal. App. 4th 164 (2001) ........................................................................................21

*LAI v. USB-Implementers Forum, Inc.*,
   No. CV14-05301-RGK, 2014 WL 12600969 (C.D. Cal. Nov. 21, 2014) ........................16

*Lewis v. Casey*,
   518 U.S. 343 (1996)......................................................................................................10

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)......................................................................................................10

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011) .....................................................................................11

*Monsanto Co. v. Geertson Seed Farms*,
   561 U.S. 139 (2010)......................................................................................................10

*N'west Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*,
   472 U.S. 284 (1985)......................................................................................................20

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
   795 F.3d 1124 (9th Cir. 2015) .....................................................................................17

*Nat'l Soc. Of Prof'l Eng'rs v. United States*,
   435 U.S. 679 (1978).................................................................................................9, 19

*NCAA. v. Bd. Of Regents of Univ. of Okla.*,
   468 U.S. 85 (1984)........................................................................................................20

*Orchard Supply Hardware LLC v. Home Depot USA, Inc.*,
   967 F. Supp. 2d 1347 (N.D. Cal. 2013) ......................................................................20

*Paladin Assocs. v. Montana Power, Co.*,
   328 F.3d 1145 (9th Cir. 2003) .............................................................................13, 20

*Spokeo, Inc. v. Robins,*
  136 S. Ct. 1540 (2016) ................................................................................9, 10

*Stahl Law Firm v. Judicate W.,*
  No. C13-1668 TEH, 2013 WL 6200245 (N.D. Cal. Nov. 27, 2013) ................................11

*Supply Pro Sorbents, LLC v. RingCentral, Inc.,*
  No. 16-CV-02113-JSW, 2017 WL 4685705 (N.D. Cal. July 17, 2017) (J.
  White) ................................................................................24

*Tanaka v. Univ. of S. Cal.,*
  252 F.3d 1059 (9th Cir. 2001) ................................................................................14

*Texaco Inc. v. Dagher,*
  547 U.S. 1 (2006) ................................................................................21

*United States v. United States Gypsum Co.,*
  438 U.S. 422 (1978) ................................................................................9, 19

*Walker v. USAA Cas. Ins. Co.,*
  474 F. Supp. 2d 1168 (E.D. Cal. 2007) ................................................................................14

*Warth v. Seldin,*
  422 U.S. 490 (1975) ................................................................................11

*Wolf Concept S.A.R.L. v. Eber Bros. Wine & Liquor Corp.,*
  736 F. Supp. 2d 661 (W.D.N.Y. 2010) ................................................................................14

**STATUTES**

15 U.S.C § 1 ................................................................................2, 8, 12, 13, 14, 19, 20, 21

15 U.S.C. § 15 ................................................................................9, 12

Cal. Bus & Prof. Code § 16720 ("Cartwright Act") ................................................................................2, 8, 13, 14, 21

Cal. Bus & Prof. Code § 17200 ("Unfair Competition Law") ................................................................................2, 8, 21

N.Y. Gen. Bus. L. § 340 ("Donnelly Act") ................................................................................2, 8, 13, 14

**FEDERAL RULES**

Fed. R. Civ. P. 12 ................................................................................1, 2, 5, 10, 11

**CONSTITUTIONAL SOURCES**

U.S. Const. art. III ................................................................................1, 2, 4, 5, 7, 8, 9, 10, 11, 12

U.S. Const. amend. XIV ................................................................................5

1

**OTHER AUTHORITIES**

2

*A Letter from Danny Meyer about Hospitality Included*, Oct. 14, 2015,
    available at:

3

    https://www.ushgnyc.com/hospitalityincluded/#letterfromdanny ....................................3

4

Corby Kummer, *Fine Dining's Exploitative Tipping System Is Dying*, NEW
    REPUBLIC, Dec. 7, 2015, available at:

5

    https://newrepublic.com/article/124456/fine-dinings-exploitative-tipping-

6

    system-dying ...................................................................................................................3

7

Pete Wells, *Danny Meyer Restaurants to Eliminate Tipping*, N.Y. TIMES, Oct.
    14, 2015, available at:

8

    https://www.nytimes.com/2015/10/15/dining/danny-meyer-restaurants-no-

9

    tips.html; ..........................................................................................................................3

10

Saru Jayaraman, *Why Tipping is Wrong*, N.Y. TIMES, Oct. 15, 2015, available
    at: https://www.nytimes.com/2015/10/16/opinion/why-tipping-is-

11

    wrong.html; ......................................................................................................................3

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS FAC                       CASE NO. 4:17-CV-05782-JSW
PURSUANT TO FED. R. CIV. P. 12(b)(1) AND      vi
(12)(b)(6)

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on June 1, 2018, at 9:00 a.m., in Courtroom 5 of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California 94612, Defendants 140 NM LLC, d/b/a Trou Normand; Bar Agricole, LLC, d/b/a Bar Agricole; Thaddeus M. Vogler; Hopemoorelain, LLC, d/b/a Camino; Russell Moore; Allison Hopelain; Es Verdad, LLC, d/b/a Comal; John Paluska; Andrew Hoffman; Union Square Hospitality Group, LLC; Daniel Meyer; Sabato Sagaria; Craft Worldwide Holdings, LLC (sued under the assumed name Crafted Hospitality); Thomas Colicchio; Momofuku 232 Eighth Avenue, LLC; Momo Holdings, LLC; David Chang; Marlow, Inc.; Andrew Tarlow; Happy Cooking Hospitality, Inc.; Gabriel Stulman; Molinero LLC, d/b/a Huertas; Jonah Miller; Nate Adler; Make it Nice, LLC; Daniel Humm; Will Guidara; New York City Hospitality Alliance, Inc.; and Andrew Rigie ("the Moving Defendants")[1] will, and hereby do, move the Court to dismiss the First Amended Complaint ("FAC" or "Amended Complaint") (ECF No. 123) filed by Plaintiff Timothy Brown ("Plaintiff"), pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

This Motion is made on the grounds that, despite the opportunity to re-plead in response to Defendants' prior Motions to Dismiss, Plaintiff still lacks standing under Article III of the United States Constitution, and just like its predecessor, the FAC still fails to state a claim upon which relief can be granted under Rule 12(b)(6).

This Motion is supported by the following Memorandum of Points and Authorities, the [Proposed] Order filed concurrently herewith, the pleadings and papers on file herein, and such other matters that may be presented to the Court at hearing.

---

[1]     Plaintiff did not oppose Defendants' Motions to Dismiss his original complaint, instead filing the FAC, which is most notable for dropping the RICO claim in its entirety (formerly, Count 2) and voluntarily dismissing all claims against former defendants Duende, LLC, Paul Canalas, and Golden Gate Restaurant Association.  Plaintiff now also claims to have served defendant Make It Nice LLC.

**RELIEF REQUESTED**

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendants request that this Court dismiss Plaintiff Timothy Brown's First Amended Complaint in its entirety, with prejudice, and enter Final Judgment in favor of Defendants and against Plaintiff.

**STATEMENT OF ISSUES TO BE DECIDED**

1.  Whether Plaintiff still lacks standing under Article III of the United States Constitution?

2.  Whether Count 1 of the FAC against Defendants for violation of Section 1 of the Sherman Act still fails to state a claim upon which relief can be granted?

3.  Whether Count 2 of the FAC against California Defendants for violation of California's Cartwright Act still fails to state a claim upon which relief can be granted?

4.  Whether Count 3 of the FAC against California Defendants for violation of California's Unfair Competition Law still fails to state a claim upon which relief can be granted?

5.  Whether Count 4 of the FAC against New York Defendants for violation of New York's Donnelly Act still fails to state a claim upon which relief can be granted?

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

The First Amended Complaint changes nothing.  It again takes aim at Union Square Hospitality Group, LLC ("USHG"), and its founder and a former executive (Danny Meyer and Sabato Sagaria), for eliminating tipping as part of a broader "Hospitality Included" model adopted in late 2015 at one restaurant, and now embraced at most of its others.  Plaintiff accuses not only the founder of "Hospitality Included," but also the rest of the Moving Defendants, of an antitrust conspiracy and other conduct that still cannot withstand a motion to dismiss.  That Plaintiff has not managed to plead sustainable claims is particularly striking, because he had a full and fair chance to fix the problems laid bare in the prior Motions to Dismiss that he did not

even try to oppose.  The FAC instead offers only trivial-to-irrelevant new "facts" (some demonstrably false), downgrades many prior allegations to "information and belief" (itself a red flag), abandons the RICO claim, and dismisses some defendants who, like the remaining Defendants, never should have been sued in the first instance.

USHG is proud of "Hospitality Included."  It is USHG's answer to the antiquated and socially unjust tipping model, which, over time, has created a "two-tiered wage system with deep social and economic consequences for millions."[2]  Mr. Meyer personally called for the "no tipping" debate that continues in the press, on social media, and among policymakers—including in the very reports that have now been downloaded and cut-and-pasted into a frivolous lawsuit.

Tipping offends USHG's culture of "Enlightened Hospitality"—not only does it exclude critical team members from sharing in guests' generosity, but it also hinders personal and professional advancement, and perpetuates systemic inequality and discrimination in the restaurant industry, including racial bigotry, gender inequality and sexual misconduct.[3] "Hospitality Included" addresses these deep-seated problems at the root, by:  mitigating the pay gap between team members; standardizing growth paths and removing barriers to management advancement; facilitating scheduling flexibility to support working parents; and eliminating the potentially inappropriate power dynamics between guests and service staff in a tipped environment, which can lead to sexual aggression and unwanted advances.  Finally, many guests who expect warm hospitality with every USHG meal prefer to pay the single price on the menu, without nostalgia for separate transactions at the bar, table, and coat check.

---

[2]    *See, e.g.*, Pete Wells, *Danny Meyer Restaurants to Eliminate Tipping*, N.Y. TIMES, Oct. 14, 2015, available at: https://www.nytimes.com/2015/10/15/dining/danny-meyer-restaurants-no-tips.html; Saru Jayaraman, *Why Tipping is Wrong*, N.Y. TIMES, Oct. 15, 2015, available at: https://www.nytimes.com/2015/10/16/opinion/why-tipping-is-wrong.html; Danny Meyer, *A Letter from Danny Meyer about Hospitality Included*, Oct. 14, 2015, available at: https://www.ushgnyc.com/hospitalityincluded/#letterfromdanny.

[3]    The tipping practices that Plaintiff is litigating to preserve "have slavery in their history." *See* Corby Kummer, *Fine Dining's Exploitative Tipping System Is Dying*, NEW REPUBLIC, Dec. 7, 2015, available at: https://newrepublic.com/article/124456/fine-dinings-exploitative-tipping-system-dying ("Tipping first arrived in this country when employers saw no reason to pay regular wages to recently emancipated slaves. . . .").

USHG did not, of course, invent tipping, nor was it the first to eliminate it.  Restaurants in Europe and Asia rarely subsidize service through tipping.  Nor do other leading hospitality and service providers here and abroad, such as the luxury hotels, top airlines, and merchants who compete with personal service.  That USHG sparked industry and public controversy by adopting "Hospitality Included"—hosting town halls and inviting internet debates that have been passionate, pro and con—is hardly surprising.  Since opening Union Square Cafe in 1985, Mr. Meyer has been a hospitality innovator, personalizing guest relationships long before Salesforce and OpenTable (on 3x5 index cards and mailed newsletters, in the 1980s); the first to ban smoking in New York City (roundly criticized as economic suicide, in the 1990s); for the team-driven national bestseller book on "Enlightened Hospitality" (in 2005); and as one of the standard-bearers for paid parental leave in the restaurant industry, which supports working parents (non-gender specific; birth or adoptive) so that each and every employee can take time to bond with new children while maintaining pay and employment (in 2016).  "Hospitality Included" serves the same, shared goal of improving the lives of restaurant employees and delighting guests.  At the same time, "Hospitality Included" enhances robust competition among restaurants, as Plaintiff concedes.

Although it may be controversial, "Hospitality Included" does not require federal court intervention.  Nor do the varied "tipping solutions" that have been separately considered, embraced, and rejected by the other Defendants.  The Amended Complaint should be dismissed, for any number of reasons.

*First*, the out-of-state Plaintiff (a resident of Minnesota) fails to provide the "case or controversy" necessary to invoke this Court's authority under Article III.  Plaintiff's previous reluctance to plead anything about himself is now explained by his threadbare proffer of having "purchased and consumed food" at only four of the approximately 60 restaurants owned and operated by defendants, on no dates in particular in April or June 2017.  Plaintiff still cannot muster even the most basic information about his dining experiences.  Article III requires more than *ad hominem* criticism of an alleged increase (by $5) of the menu price for a "fried chicken

sandwich" in Brooklyn, New York.  There is no redressible injury because, *inter alia*, Plaintiff never claims he would have tipped less than $5 if given the chance, nor does he allege any individual injury "traceable" to the other never-alleged meals.[4]  Plaintiff does not, for example, claim that he paid a penny more than the price set on any menu (for the sandwich or anything else), or claim that he has otherwise been harmed at any restaurant, anywhere.  Plaintiff thus lacks standing to sue because he does not appear to have been harmed in any way that this Court could redress, under any legal theory.  Plaintiff, of course, has many choices when dining out in the Bay Area or New York City, but he has no legal right to set menu prices or compel a restaurant manager to perpetuate wage inequality (through tipping policies or otherwise).

*Second*, the "price-fixing" claims fail for still other reasons.  The notion that all Defendants "agreed" to a price-fixing oligopoly is not supported by a single allegation about prices (other than that they will go up).  The Amended Complaint also ignores that these restaurants adopted strikingly diverse policies, at different times, with some retaining tipping, while others soon reversed course by re-instituting it.  The conceded, pro-competitive reasons for adopting the various no-tipping models make it far more plausible that Defendants exercised their own independent business judgment to set policies at their own restaurants.  That the USHG Defendants have so vocally advocated for change renders absurd any theory of a clandestine anti-tipping conspiracy.

*Third*, Plaintiff has not identified the "relevant competitive market" required to bring a "rule of reason" antitrust case.  A restaurant in a Manhattan museum, of course, is not competing for the lunch crowd against a Mexican restaurant in Berkeley (although both are excellent).  Plaintiff cannot imply some monolithic national market, having now conceded that New York and Bay Area may be the "most significant markets" (FAC ¶ 9), and regardless he does not try to explain how the dwindling number of restaurants he has sued could plausibly harm competition or inflate prices at the roughly 620,000 other full-service restaurants in America.

---

[4]      As set forth in the Motion to Dismiss brought concurrently by the New York Defendants under Rule 12(b)(2), this out-of-state Plaintiff's attempt to sue out-of-staters in California offends Supreme Court and Ninth Circuit precedent under the Fourteenth Amendment.

***Fourth***, California's consumer laws do not protect a Minnesotan who will not say where and when he dined in California (other than alluding to two meals in the East Bay, where he can't say what he ate or paid), or how tipping has impacted him, and in any event, has not alleged any actionable conduct.  That is, it was not "fraudulent" for USHG or any other Defendant to publicly promote "Hospitality Included" (or "no tipping") in the press, just as nothing was concealed on a consumer-friendly website that disclosed prices along with an interactive restaurant map showing where tipping is welcome.  There is nothing "unlawful" about charging the prices listed on the menu, even if the prices are higher (or lower) than those at other restaurants.  And USHG and the other Defendants certainly did nothing "unfair"—or contrary to California public policy—by discarding a practice that has disadvantaged cooks, dishwashers, and team cohesion, not to mention (on a more systemic level) negatively impacted racial and gender parity and fueled power imbalances with insidious wage disparity.

Simply put, Plaintiff may prefer to dine at virtually any sit-down restaurant in America, where he may find lower menu prices with the option to tip some members of the team, or to save money by not tipping at all.  That is a choice, but it is not a national class action.  The First Amended Complaint should be dismissed.

## II.     STATEMENT OF ALLEGATIONS

### A.     The Parties and Never-Specified Meals.

Plaintiff Timothy Brown purports to represent a nationwide class of individuals who "purchased food or drinks from a defendant restaurant as early as 2014 during the period when any such restaurant had in place a no-tipping policy and consequently increased its prices or added a surcharge."  (FAC ¶¶ 12, 162.)  Like its abandoned predecessor, the FAC includes no identifying information whatsoever about Mr. Brown, although the civil cover sheet reveals he resides in Minnesota (Civil Cover Sheet, Dkt. No. 1–1)), nor does the FAC contain any sustainable allegations about how Plaintiff was allegedly harmed when dining at a defendant restaurant with a no-tipping policy.  The new "Standing" section in Plaintiff's FAC asserts that he dined at four restaurants, but he fails to provide even the most basic information, such as the

dates and times that he dined.  (*Id.* ¶¶ 51–53 (alleging only that he dined in April and June 2017).)  Plaintiff also fails to specify how he was "overcharged," or paid more than he otherwise would have; he conceals the menu items he supposedly "purchased and consumed" at three restaurants (and, for only one restaurant in Brooklyn, New York, alleges a "fried chicken sandwich" that a waiter supposedly said was now $5 more expensive); and never explains why he dined at those restaurants rather than somewhere else if he preferred a different tipping model. (*Id.*)

The FAC names 30 Defendants, including ***restaurants*** in New York, San Francisco, Oakland, and Berkeley; ***individual restaurant owners*** in New York, San Francisco, Oakland, and Berkeley; a former "***chief restaurant officer***" residing in New York; ***operating companies*** in New York that own multiple restaurants in New York and other cities; a ***restaurant industry association*** in New York, and the ***executive director*** of that association.  (FAC ¶¶ 13–42.)

## B.  Plaintiff's Amended Claims.

Plaintiff alleges that these undifferentiated "Defendants" entered into a conspiratorial agreement whereby certain restaurants implemented "no tipping" or "Hospitality Included" policies, imposing higher prices for menu items rather than allowing customers to tip servers. (FAC ¶ 2.)  The FAC alleges no evidence or any details about any *agreement* among Defendants, or any subset of them, regarding the implementation of tipping policies.

The FAC instead proffers that the "conspiracy" is somehow evidenced by an entirely public conversation about the merits of "Hospitality Included" in the restaurant industry—a community dialogue that the FAC chronicles at length.  (*Id.* ¶¶ 56–161.)  The FAC includes, and in few instances, adds additional, extensive quotes from multiple publicly-available sources, including: newspaper articles and blog posts (*id.* ¶¶ 59–60, 70, 76, 79–80, 82, 96–97, 98, 99, 101–102, 104, 106, 115, 118, 126–127, 144, 160); Twitter posts (*id.* ¶¶ 56, 83, 88, 90, 92–93, 100, 107, 117, 121, 123, 125, 128, 132, 147); transcripts of and/or information about public events, including radio and television interviews, webcasts, and panel discussions) (*id.* ¶¶ 61–63, 75, 77, 84–86, 91, 95, 111, 112-14, 116, 122, 124, 129, 134, 137–38, 140, 142–43, 145, 148–52,

153); restaurant and association websites and public announcements (*id.* ¶¶ 71, 81, 89, 103, 108–110, 119, 130, 136, 140, 154); publicly available court records (*id.* ¶¶ 73, 139); publicly available surveys (*id.* ¶¶ 74, 105, 120, 131); earnings calls for publicly traded companies (*id.* ¶¶ 94, 133), and other public commentary available on the Internet (*id.* ¶¶ 87, 159).

As is apparent from the redlined version of the FAC (Dkt No. 131), the amendments to the FAC largely consist of: *(i)* allegations that some of the California restaurants discussed "no tipping" policies and public messaging regarding such policies (*id.* ¶¶ 57–58), notably without the involvement of the New Yorkers, some of whom allegedly eliminated tipping a year or more later using an all-inclusive menu price without a service charge (FAC ¶ 81, 96, 161); *(ii)* the new qualification of *dozens* of allegations as "upon information and belief" (*id.* ¶ 37–40, 47–49, ); and *(iii)* truly irrelevant allegations that on their face do not support any postulated price-fixing conspiracy, such as that one individual defendant is a "rockstar" who founded Shake Shack, a casual dining chain that does not utilize servers (*id.* ¶ 9), another individual defendant is famous from appearances on the television show *Top Chef* (*id.* ¶ 47, n.2), and that some waitstaff at some restaurants reportedly resigned because they prefer the tipping model, even if it undermined teamwork and perpetuated wage disparity whereby their kitchen colleagues earned extraordinarily less (*id.* ¶ 52).

Based on these public discussions and the assorted amendments, Plaintiff again asserts claims for price-fixing in violation of Section 1 of the Sherman Act (FAC ¶¶ 171–82), the California Cartwright Act (*id.* ¶¶ 183–87), and the New York Donnelly Act (*id.* ¶¶ 195–98); and unfair competition in violation of California's Unfair Competition Law (*id.* ¶¶ 188–94). Plaintiff has dropped his RICO claim, and the remaining "amended" claims still have no merit.

## III.   <u>SUMMARY OF ARGUMENT</u>

Plaintiff fails to state any claim for relief. ***First***, as a threshold matter, Plaintiff lacks Article III standing because he fails to plead facts demonstrating that he suffered an injury in fact. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *Davidson v. Kimberly-Clark*

1   *Corp.*, 873 F.3d 1103, 1113 (9th Cir. 2017).  Plaintiff also lacks statutory standing.  *See In re*

2   *ATM Fee Antitrust Litig.*, 686 F.3d 741, 754 (9th Cir. 2012) (Section 4 of the Clayton Act).

3       **Second**, Plaintiff's antitrust claims fail.  The FAC falls far short of the pleading standard

4   set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Here, as in *Twombly*, the FAC

5   is unsupported by any factual allegations suggesting that certain Defendants' decisions to

6   eliminate tipping is the result of an unlawful agreement, as opposed to "rational and competitive

7   business strategy unilaterally prompted by common perceptions of the market."  *Id.* at 554.

8   Also, Plaintiff fails to allege any conduct to trigger a *per se* analysis, and he also fails to allege

9   any facts that could support a rule of reason case.  *See Nat'l Soc. Of Prof'l Eng'rs v. United*

10  *States*, 435 U.S. 679, 692 (1978); *United States v. United States Gypsum Co.*, 438 U.S. 422, 441

11  n.16 (1978); *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197 (9th Cir. 2012).

12      **Third**, Plaintiff fails to state a claim under any prong of Section 17200 of the UCL.

13  Plaintiff cannot state an "unlawful" claim because the predicate claims fail as a matter of law.

14  *See Gaitan v. Mortgage Elec. Registration Sys., Inc.*, EDCV09-1009 VAP MANX, 2009 WL

15  3244729, at *11 (C.D. Cal. 2009).  The attempt to allege an "unfair" claim also fails, because

16  Plaintiff makes no effort to demonstrate a "substantial" injury that is not outweighed by

17  consumer benefits or competition—and because Plaintiff could easily have avoided his alleged

18  harm by dining elsewhere.  *See Camacho v. Auto. Club of S. Cal.*, 142 Cal. App. 4th 1394, 1403

19  (Cal. Ct. App. 2006).

20      **Finally**, Plaintiff's amendments to his original complaint, which were made in response

21  to a motion to dismiss raising each of the foregoing issues, do not cure any of these defects.

22  Because Plaintiff already has had an opportunity to amend, which was informed by a detailed

23  roadmap of the basis upon which Defendants are challenging his pleading, the Court should

24  dismiss the FAC with prejudice.

25  **IV.   ARGUMENT**

26      **A.   Plaintiff Still Lacks Article III Standing.**

27      Plaintiff fails to allege an injury-in-fact sufficient to establish Article III standing.  Article

28

III standing is a "jurisdictional prerequisite to the consideration of any federal claim," *Gerlinger v. Amazon.com Inc.*, 526 F.3d 1253, 1255 (9th Cir. 2008), and "a threshold inquiry" for any case, including class actions. *In re Capacitors Antitrust Litig.*, 154 F. Supp. 3d 918, 924 (N.D. Cal. 2015). To establish Article III standing, Plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547. To even be heard before this Court, Plaintiff must affirmatively plead facts demonstrating "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *see also Davidson*, 873 F.3d at 1113 ("plaintiff bears the burden of demonstrating that her injury-in-fact is 'concrete, particularized, and actual or imminent'") (citing *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)).

"To demonstrate standing, 'named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007) (dismissing state law claims based on law of states where no named plaintiff resided) (quoting *Lewis v. Casey*, 518 U.S. 343, 347 (1996)). The named plaintiff must have standing with respect to *each* claim the class representative seeks to bring. *Id.* (citations omitted). Otherwise, the Court "lacks jurisdiction over the claim and must dismiss it." *Capacitors Antitrust Litig.*, 154 F. Supp. 3d at 925.

Under Rule 12(b)(1), the "court presumes a lack of subject matter jurisdiction until the plaintiff meets her burden of establishing subject matter jurisdiction." *Green Valley Corp. v. Caldo Oil Co.*, C 09-4028 JF (PVT), 2010 WL 2348636, at *2 (N.D. Cal. June 8, 2010). But here Plaintiff fails to plead any injury *at all*, much less any "concrete" or "particularized" injury-in-fact. Plaintiff alleges that he dined at only four of the approximately 60 restaurants owned and operated by the defendants, but he neglects to identify when he dined, what he ordered, what he paid, what tipping policy was in place when he dined, or why he chose to dine at that

1    particular restaurant rather than any other establishment.  (FAC ¶¶ 51–53.)  Nor does he allege

2    how he supposedly was overcharged or otherwise suffered any injury when dining at these

3    restaurants.  (*Id.*)  Plaintiff certainly has not cured the Article III problem with a trivial allegation

4    about a single "fried chicken sandwich" allegedly purchased at just one of those restaurants, at a

5    service-included price that he does not claim cost a penny more than he would have paid

6    otherwise (i.e., the aggregate cost of a "sandwich" plus "tip").[5]  (*Id.* ¶ 51.)

7            Plaintiff's vague and incomplete accusations are plainly insufficient to establish Article

8    III standing, because the FAC fails to "allege and show" that the Plaintiff has "personally . . .

9    been injured."  *Houser v. Pritzker*, 28 F. Supp. 3d 222, 236 (S.D.N.Y. 2014) (quoting *Warth v.*

10   *Seldin*, 422 U.S. 490, 502 (1975)).  Plaintiff presumably knows the facts of whatever personal

11   dining experience have brought him to this Court, and his failure to plead *anything about himself*

12   or *even the most basic details of those dining experiences* only spotlights his disregard of Article

13   III standing requirements—particularly after having had the opportunity to amend when faced

14   with the prior motion to dismiss for lack of standing.

15          Because Plaintiff fails to meet his burden of alleging standing, the FAC should be

16   dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).  *See Stahl Law Firm v.*

17   *Judicate W.*, No. C13-1668 TEH, 2013 WL 6200245, at *3 (N.D. Cal. Nov. 27, 2013) (lack of

18   Article III standing requires dismissal for lack of subject matter jurisdiction) (citing *Maya v.*

19   *Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011)).

20          **B.**     **Plaintiff Still Fails to State any Federal or State Antitrust Claim.**

21          In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court cautioned

22   that antitrust pleadings call for particularly careful scrutiny before concluding that they state a

23   viable claim.  *Id.* at 573.  In a case involving allegations of an unlawful antitrust conspiracy,

24

25   [5]     Plaintiff now alleges that he visited Gramercy Tavern, where he received a "rate your
26   experience" postcard describing Hospitality Included, but conspicuously fails to allege what he
     ordered and what he paid.  (FAC ¶ 53.)  As for the other two restaurants that Plaintiff says he
27   visited, both in the Bay Area, Plaintiff alleges only that a 20% service charge was added to the
     bill at Comal.  (*Id.* ¶ 43.)

28

*Twombly* teaches that allegations of "parallel conduct and a bare assertion of conspiracy" do not suffice.  *Id.* at 556.  Boilerplate conclusions of antitrust wrongdoing must be disregarded; plaintiffs must instead plead sufficient factual allegations to meet each element of the claim.  *Id.* at 557; *see also Associated Gen. Contractors of Cal., Inc. v. California State Council of Carpenters*, 459 U.S. 519, 528 n.17 (1983) (district courts have "power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed").  A plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555; *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

The Amended Complaint here does not even come close to meeting those standards.  Plaintiff fails to plead any facts plausibly suggesting a conspiracy—as opposed to a public dialogue and unilateral conduct—and instead pleads facts that show the implausibility of his antitrust claims.  And as a threshold matter, Plaintiff fails to establish statutory standing.

### 1.    Plaintiff Lacks Standing Under Section 4 of the Clayton Act.

Plaintiff's failure to allege Article III standing deprives the Court of subject matter jurisdiction, but Plaintiff also lacks statutory standing to bring an action for damages under the Sherman Act.  To bring a private damages action, Section 4 of the Clayton Act requires Plaintiff to allege and prove that he was "injured in his business or property."  *See* 15 U.S.C. § 15(a).  To satisfy this requirement, Plaintiff must allege injury by at least one of the alleged conspirators.  *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 266 (3d Cir. 2016).  The Supreme Court "has interpreted that section narrowly, thereby constraining the class of parties that have statutory standing to recover damages through antitrust suits."  *Del. Valley Surgical Supply Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1120 (9th Cir. 2008).  As discussed above, Plaintiff fails to allege any injury at all, much less injury caused by Defendants.  (FAC ¶¶ 51–53.)  Plaintiff thus clearly lacks standing under Section 4 of the Clayton Act.

Section 4 of the Clayton Act also requires Plaintiff to establish "antitrust injury."  *In re ATM Fee*, 686 F.3d at 754.  To establish antitrust injury, Plaintiff bears the burden of proving

"(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of California*, 190 F.3d 1051, 1055 (9th Cir. 1999); *see also Paladin Assocs. v. Montana Power, Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003) ("Where the defendant's conduct harms the plaintiff without adversely affecting competition generally, there is no antitrust injury.").  Thus, to have standing to sue under the Sherman Act, Plaintiff must adequately plead that he has suffered antitrust injury from harm to competition and that he is the proper party to bring the case.  *See Brunswick Corp v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977); *Alt. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990) (standing only exists if harm to plaintiff "stems from a competition-*reducing* aspect or effect of the defendant's behavior").

Plaintiff fails this test for multiple reasons.  The FAC does not offer any facts that would demonstrate that the price Plaintiff allegedly paid at a defendant restaurant might somehow have been affected by the alleged conspiracy.  Plaintiff also does not demonstrate that any loss he suffered is "of the type the antitrust laws were designed to prevent" and "flows from that which makes defendants' acts unlawful."  *Cargill v. Manfort*, 479 U.S. 104, 113 (1986) (citations omitted).  It is implausible that the purported conspiracy to end tipping at a few restaurants in the Bay Area and New York could harm competition in those metropolitan areas, let alone in the putative nationwide market consisting of hundreds of thousands of restaurants that Plaintiff alleges.  Plaintiff's Section 1 claim thus also fails for lack of statutory standing.[6]

---

[6]     In determining antitrust standing under the Cartwright Act and the Donnelly Act, California and New York courts apply federal antitrust law.  *See Gatt Commc'ns, Inc. v. PMC Assocs.*, L.L.C., 711 F.3d 68, 81 (2d Cir. 2013) (stating "We see no reason . . . to interpret the Donnelly Act differently than the Sherman Act with regard to antitrust standing.");  *In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*, No. MDL 09-2074 PSG (FFMX), 2013 WL 12130034, at *11 (C.D. Cal. July 19, 2013) (applying federal antitrust standing requirements to a Cartwright Act cause of action).

### 2. Plaintiff's "Conspiracy" Theory Remains Facially Inadequate.

Plaintiff's speculative and conclusory allegations that Defendants "conspired" to adopt "no-tipping" policies are implausible and facially inadequate to state a claim for price fixing under Section 1 of the Sherman Act, or under the California and New York antitrust statutes. Based on Plaintiff's own allegations, it is more likely that the Defendants who decided to alter their tipping policies did so independently after listening to the public dialogue and evaluating the competitive benefits of the polices each chose to adopt.  Plaintiff offers nothing more than speculation that there was a "conspiracy" and thus cannot "nudge his claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.   Plaintiff dropped the RICO conspiracy claim that failed for this reason; the "amended" antitrust conspiracy theory is no stronger.

To state a Section 1 claim, Plaintiff must allege not only the existence of a conspiracy or agreement, but also facts showing that it "unreasonably restrained trade under either a *per se* rule of illegality or a rule of reason analysis." *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1062 (9th Cir. 2001).  Plaintiff must also adequately allege the existence of a conspiracy to state a claim under the Cartwright Act and the Donnelly Act.  *See Walker v. USAA Cas. Ins. Co.*, 474 F. Supp. 2d 1168, 1174 (E.D. Cal. 2007) ("In order to maintain a cause of action under the Cartwright Act, the following elements must be established:  (1) the formation and operation of the conspiracy; (2) illegal acts done pursuant thereto; and (3) damage proximately caused by such acts."); *Wolf Concept S.A.R.L. v. Eber Bros. Wine & Liquor Corp.*, 736 F. Supp. 2d 661, 669 (W.D.N.Y. 2010) (dismissing Donnelly Act claim for lack of "facts to support the basic elements of a conspiracy claim").  A complaint cannot be sustained absent a factual predicate "plausibly suggesting"—that is, a pleading more substantial than one that is "merely consistent with"—the existence of a conspiracy or an unlawful agreement that actually and unreasonably restrained trade.  *See Twombly*, 550 U.S. at 566–57.

In *Twombly*, the plaintiff alleged that the regional "Baby Bell" telecommunications firms restrained competition by engaging in parallel anticompetitive conduct to inhibit the growth of upstart local competitors and agreeing not to enter geographic markets occupied by other Baby Bells.  *Id.* at 550.  The Supreme Court sustained the dismissal of the complaint, finding that

allegations of "parallel conduct that could just as well be independent action" are insufficient to state a conspiracy claim.  *Id.* at 555–57.  The Court explained that "[w]ithout more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."  *Id.*  Because the challenged conduct was no more likely to result from a conspiracy than from "the natural, unilateral reaction of each [Baby Bell] intent on keeping its regional dominance," *id.* at 566, plaintiffs had not "nudged their claims across the line from conceivable to plausible," *id.* at 570.

The Supreme Court also underscored the importance of dismissal when the complaint—like the one at issue here—lacks factual predicates sufficient to establish a plausible conspiracy, because "it is only by taking care to require allegations that reach the level suggesting conspiracy that we can hope to avoid the potentially enormous expense" of antitrust claims founded on a mere "hope that the [discovery] process will reveal relevant evidence."  *Id.* at 559.

Here, as in *Twombly*, the FAC rests on bare assertions of "conspiracy" and parallel conduct, unsupported by any factual allegations suggesting that concerted action is more likely than unilateral business decisions to eliminate tipping following a public dialogue about the topic.  (*See, e.g.*, FAC ¶ 1 (concluding that defendant "restaurant owners are engaged in a sophisticated unlawful conspiracy"); *id.* ¶ 2 (asserting that "a handful of Bay Area restaurants . . . are part of a larger conspiracy"); *id.* ¶ 5 (declaring that the "charged conspiracy constitutes a per se unreasonable restraint of trade in violation of" federal and state antitrust laws); *id.* ¶ 181 (asserting that "class representative and putative class members were overcharged on their purchases from defendant restaurants as a result of the conspiracy").)

*Critically absent* from the Amended Complaint is any allegation regarding the agreement supposedly reached by the Defendants, such as the specific tipping or pricing policy the restaurants allegedly "agreed" to implement, the amount of any surcharge, the amount by which menu prices would be increased (or even if they ever were), how that amount allegedly compares with the amount Plaintiff would have otherwise left in a tip, or any factual allegations about the manner and means by which the restaurants supposedly changed any compensation policies.

After *Twombly*, courts routinely hold that such vague and imprecise allegations of agreement are insufficient to state a conspiracy claim.  *See, e.g.*, *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008) (affirming dismissal because complaint "does not answer the basic questions:  who, did what, to whom (or with whom), where, and when?"); *LAI v. USB-Implementers Forum, Inc.*, No. CV14-05301-RGK (PJWx), 2014 WL 12600969, at *4 (C.D. Cal. Nov. 21, 2014) (dismissing complaint because conspiracy claim was "nothing more than a legal conclusion"); *Credit Bureau Servs., Inc. v. Experian Info. Sols., Inc.*, No. SACV 12-2146 JGB (MLGx), 2013 WL 3337676, at *8 (C.D. Cal. June 28, 2013) (dismissing complaint that did "not allege whether there were one or multiple agreements, the form those agreements took, who executed them, or when or where they were enacted"); *Int'l Norcent Tech. v. Koninklijke Philips Elecs. N.V.*, No. CV07-00043 MMM (SSx), 2007 WL 4976364, at *10 (C.D. Cal. Oct. 29, 2007) (dismissing complaint because plaintiff did not allege when, how, or by whom the purported agreement was made, nor did plaintiff identify the parameters of the agreement), *aff'd*, 323 F. App'x 571 (9th Cir. 2009).

Plaintiff's endless commentary about the very public debate over the USHG Defendants' adoption of "Hospitality Included"—and the differing policies considered, adopted, and in some instances, dropped by other restaurants at different times—is makeweight pleading that may be superficially "factual," but does not lend plausibility to the conspiracy allegations.  (*See, e.g,* FAC ¶¶ 2, 56, 59, 61, 70, 80–81, 94–95, 101–102, 104, 106, 157.)  The same is true of Plaintiff's discussion of the NYC Alliance Defendants' industry conferences in February 2015 and March 2016, where, as Plaintiff points out, the NYC Alliance brought the "restaurant industry together for candid conversations" on tipping practices.  (*Id.* ¶¶ 75, 121.)  Plaintiff's lengthy narration in both instances demonstrates the implausibility of Defendants entering into a private, illegal agreement.  *See In re LTL Shipping Services Antitrust Litig.*, 1:08-MD-01895-WSD, 2009 WL 323219, at *8 (N.D. Ga. Jan. 28, 2009) (plaintiff "cannot state an antitrust claim by showing only that the Defendants made price information publicly available and thus had the opportunity to conspire—a 'conspired in the open' sort of argument").

Furthermore, Plaintiff's attempt to portray communications among a certain "group" of Bay Area-based Defendants as conspiratorial (FAC ¶¶ 57–58, 64–70, 72, 77) are contradicted by Plaintiff's own allegations.  As the FAC alleges, these Defendants were discussing ways to *publicize* their potential changes to tipping policies (*id.* ¶ 58), not hide them.  This is abundantly clear from multiple allegations, including the allegation that the "group"—which obviously was not secret—encouraged reaching out to as many restaurants as possible (*id.* ¶ 67); hired several public relations consultants (*id.* ¶¶ 68–69); set up a meeting with another Oakland restaurant (*id.* ¶ 72); had an open discussion about their tipping policies at an industry conference (*id.* ¶ 77); received an email of encouragement from another Bay Area restaurant (*id.* ¶ 65); and, at least with respect to one member of the "group," did not ultimately switch to a no-tipping policy (*id.* ¶ 70).  The allegations regarding communications, moreover, add nothing to Plaintiff's claims, because they merely restate information already included in press reports.  (*See id.* ¶¶ 59–61, 70.)

Indeed, if anything, Plaintiff has pleaded himself out of court with still other allegations that foreclose the existence of an anticompetitive agreement by demonstrating that those Defendants who revised their tipping policies did so unilaterally for their own business reasons. The FAC includes numerous allegations showing that Defendants' tipping policies were in fact a reflection of changing perceptions in the marketplace and a widespread business problem that metastasized into social injustice.  The FAC alleges that the "Hospitality Included" movement was conceived out of a desire to "promote social justice and equality" (FAC ¶ 3); for "pragmatic and philosophical reasons" (*id.* ¶ 59); to avoid the potential for tax issues (*id.* ¶ 61); to eliminate the disparity in pay among servers and other staff (*id.* ¶ 84); and to address a serious labor shortage for talented cooks (*id.*).  Accordingly, just as in *Twombly*, the Amended Complaint itself provides alternative explanations for certain Defendants' separate transitions to a "Hospitality Included" model, which is a result of a "rational and competitive business strategy unilaterally prompted by common perceptions of the market." *Twombly*, 550 U.S. at 554; *see also Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1130 (9th Cir. 2015) (citation omitted) ("We cannot . . . infer an anticompetitive agreement when

1    factual allegations 'just as easily suggest rational, legal business behavior.'").

2            To the extent the FAC can be read as alleging the adoption, at different times, of loosely

3    similar policies by some Defendants, that too is insufficient to state a claim based on parallel

4    conduct.  *See In re Musical Instruments and Equip. Antitrust Litig.*, 798 F.3d 1186, 1196 (9th

5    Cir. 2015) (rejecting at the pleading stage allegations of parallel conduct where Defendants

6    adopted similar policies, finding "that fact does not reveal anything more than similar reaction to

7    similar pressures within an interdependent market, or conscious parallelism").  As alleged,

8    Defendants USHG and Mr. Meyer started publicly discussing the concept of "no-tipping" in

9    October 2013, before any of the other Defendants identified in the FAC, but did not actually

10   implement no-tipping until 2015-2016.  (FAC ¶¶ 56, 81.)  Additionally, as alleged, in 2014, only

11   *some* Bay Area restaurant-Defendants started implementing no-tipping policies.  (*Id.* ¶ 59.)

12   Further, with regard to the NYC Hospitality Alliance, Plaintiff alleges only the discussion, and

13   never the implementation, of a no-tipping policy.  (*Id.* ¶¶ 75, 121.)  This is hardly sufficient to

14   demonstrate parallel conduct, much less agreement.  *See Twombly*, 550 U.S. at 545 (holding that

15   the "inadequacy of showing parallel conduct or interdependence, without more, mirrors the

16   behavior's ambiguity").

17           Further, even if "consistent with conspiracy," parallel conduct is very often "just as much

18   in line with a wide swath of rational and competitive business strategy unilaterally prompted by

19   common perceptions of the market."  *Twombly*, 550 at 554.  The Ninth Circuit "distinguish[es]

20   permissible parallel conduct from impermissible conspiracy by looking for 'plus factors'" where

21   a plaintiff relies solely on "circumstantial evidence of conspiracy."  *Kelsey K. v. NFL*

22   *Enterprises, LLC*, 254 F. Supp. 3d 1140, 1144 (N.D. Cal. 2017).  Those requisite "plus factors"

23   are "facts tending to exclude the possibility that defendants acted independently," of which, here,

24   the Plaintiff offers none.  *Id.*  Therefore, where the Plaintiff seeks to infer agreement from

25   parallel conduct, the FAC must plead factual allegations establishing that the conduct would

26   have been against the Defendants' independent self-interest absent an unlawful agreement.  *See*

27   *Twombly*, 550 U.S. at 553-54 & n.7; *Kendall*, 518 F.3d at 1049.  Indeed, the FAC contains no

28

factual allegations establishing that the conduct would have been against the Defendants' independent self-interest absent an unlawful agreement. *See Twombly*, 550 U.S. at 553-54 & n.7; *Kendall*, 518 F.3d at 1049.

### 3. Plaintiff Fails to Allege a *Per Se* Violation or Any Facts Supporting a Rule of Reason Case.

Plaintiff attempts to allege only a *per se* violation of Section 1 of the Sherman Act, but Plaintiff fails to allege any conduct to trigger a *per se* analysis. For a *per se* violation, Plaintiff must allege "sufficient facts that Defendants (1) entered into an agreement (2) to fix prices, rig bids, or divided a market" and that Defendants' conduct was "so plainly anticompetitive that no elaborate study of the industry is needed to establish their illegality." *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1025 (C.D. Cal. 2011); *see also Nat'l Soc. Of Prof'l Eng'rs*, 435 U.S. at 692. Here, Plaintiff undermines his entire legal theory when he concedes that New York and the Bay Area are separate markets in the restaurant industry (which only makes sense, as they are located on opposite sides of the country). (FAC ¶ 9.) At best, Plaintiff makes conclusory allegations of agreement but describes nothing more than the public exchange of information among certain Defendants. (*Id.* ¶¶ 56–161.)

It is well-settled, however, that such information exchanges—to the extent they are even arguably sufficient to state a claim—must be judged under the rule of reason, which requires a showing of harm to competition in a properly defined market. *See, e.g.*, *United States Gypsum Co.*, 438 U.S. at 441 n.16 ("The exchange of price data and other information among competitors does not invariably have anticompetitive effects; indeed, such practices can in certain circumstances increase economic efficiency and render markets more, rather than less, competitive. For this reason, we have held that such exchanges of information do not constitute a *per se* violation of the Sherman Act.") (citations omitted).

*Per se* analysis is improper here for the additional reason that the FAC admits that the alleged "conspiracy" has significant pro-competitive justifications. Under established Ninth Circuit precedent, "not all horizontal agreements between competitors are *per se* invalid."

*Paladin Assocs., Inc.*, 328 F.3d at 1155 (declining to apply *per se* analysis).  Rather, "[t]reating an agreement as *per se* illegal is appropriate only if the agreement falls within the category of 'agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use.'" *Id*. at 1154 (citation omitted).  Ultimately, the decision to apply the *per se* rule turns on whether "the practice facially appears to be one that would always or most always tend to restrict competition and decrease output."  *NCAA. v. Bd. Of Regents of Univ. of Okla.*, 468 U.S. 85, 100 (1984) (declining to apply *per se* analysis to horizontal restraints on competition).  Where, however, "a defendant advances plausible arguments that a practice enhances overall efficiency and makes markets more competitive, *per se* treatment is inappropriate, and the rule of reason applies."  *Paladin Assocs.*, 328 F.3d at 1155 (citing *N'west Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*, 472 U.S. 284, 2985 (1985)).

Here, Plaintiff admits that the Defendants advanced several procompetitive justifications for publicly discussing and implementing a "Hospitality Included" model.  (*See, e.g.*, FAC ¶ 81 (increase career opportunities and advancement for staff); *id.* ¶¶ 69, 84–85, 127 (rectify labor shortage in kitchen staff driven by low wages); *id.* ¶ 112 (address pay disparity between back of house and front of house) *id.* ¶¶ 61, 84, 124, 142, 159 (adapt to minimum wage increases).)  Thus, the Amended Complaint's own allegations establish that Plaintiff could only conceivably proceed under the rule of reason.  But Plaintiff makes no attempt to supply such allegations.

To proceed on a rule of reason Section 1 claim, Plaintiff would need to allege and prove not only an agreement to restrain competition, but also that such agreement "actually injures competition."  *Brantley*, 675 F.3d at 1197 (sustaining dismissal of Section 1 rule of reason claim) (quoting *Alt. Richfield*, 495 U.S. at 334).  In particular, Plaintiff would need to "allege sufficient facts to support its claim that the restraint in question harmed competition within a relevant geographic and product market."  *Orchard Supply Hardware LLC v. Home Depot USA, Inc.*, 967 F. Supp. 2d 1347, 1357 (N.D. Cal. 2013) (dismissing Section 1 rule of reason claim).

Plaintiff could never plausibly contend that the Bay Area and New York restaurants operated by certain Defendants compete against each other in the same relevant product or geographic market, let alone that the alleged "conspiracy" among a few restauranteurs could harm competition in such a vast and competitive marketplace. *See, e.g.*, *Texaco Inc. v. Dagher*, 547 U.S. 1, 7 n.2 (2006) ("Respondents have not put forth a rule of reason claim."); *Bedi v. Hewlett Packard Co.*, 2008 WL 11226235 at *2 (D. Mass. Nov. 17, 2008) (granting defendants' motion to dismiss because "plaintiff pleads solely a *per se* violation of the Sherman Act"). Indeed, as noted above, the FAC expressly refers to the Bay Area and New York as *separate* markets.  (FAC ¶ 9 (describing New York and San Francisco as "the two most significant markets in the restaurant industry).)  A lawsuit based on any supposition that "Hospitality Included" at USHG restaurants in Manhattan has stifled competition on New Montgomery Street in San Francisco (Trou Normand) or on Shattuck Avenue in Berkeley (Comal) also calls for dismissal as a matter of "common sense."  *See Iqbal,* 556 U.S. 662, 678.

### C.    Plaintiff Once Again Fails to State a UCL Claim.

Plaintiff fails to plead any cognizable claim under Section 17200 of the UCL.  As with the other theories, the UCL claim is plead only in vague and conclusory terms, and Plaintiff made no effort to clarify this claim in its amendment.  (FAC ¶¶ 188–94.)  The only apparent basis for the UCL claim is the allegation that "Defendants' violation of the Cartwright Act constitutes a violation of California's Unfair Competition Law."  (*Id*. ¶ 191.)  But this attempt to invoke the "unlawful" prong fails because it is derivative of a claim that is legally deficient on multiple grounds, as outlined above.  Plaintiff cannot state a claim for "unlawful" conduct without alleging facts sufficient to show a violation of the underlying law.  *Ismail v. Wells Fargo Bank, N.A.*, No. 2:12-CV-01653-MCE, 2012 WL 5425175, at *5 (E.D. Cal. Nov. 6, 2012).  Since the Cartwright Act claim fails, Plaintiff's UCL claim also fails.  *See Gaitan*, 2009 WL 3244729 at *11 (plaintiff "cannot state a UCL claim based on those predicate violations, since she has not alleged any 'unlawful' activity"); *Krantz v. BT Visual Images, LLC*, 89 Cal. App. 4th 164, 178 (2001) (UCL claim must "stand or fall depending on the fate of the antecedent substantive causes

of action").

The pro forma allegation that "Defendants' price-fixing conduct constitutes unfair competition and unlawful and fraudulent business acts and practices" (FAC ¶ 189) is insufficient to place at issue any other prong of the UCL.  "Different legal standards and pleading requirements apply to each prong." *Athena Feminine Techs. Inc. v. Wilkes*, No. C 10-04868 SBA, 2011 WL 4079927, at *9 (N.D. Cal. Sept. 13, 2011).  Thus, "fact-barren, conclusory" allegations are insufficient to state a UCL claim under any UCL prong. *Id.*; *see also Coburn v. Bank of New York Mellon, N.A.*, No. 2:10-CV-03080 JAM, 2011 WL 1103470, at *5 (E.D. Cal. Mar. 22, 2011) ("Plaintiff's allegation that Defendants' acts constitute unlawful, unfair, and fraudulent business practices is a conclusory statement devoid of facts and it fails to meet heightened, or even standard, pleading requirements.").

Plaintiff does not even attempt to satisfy the standard under the "unfair" prong, which would require factual allegations that Plaintiff's alleged injury was (1) "substantial," (2) not "outweighed by any countervailing benefits to consumers or competition," and (3) not one that Plaintiff could "reasonably have avoided." *Camacho*, 142 Cal. App. 4th at 1403.

In some sense, the usual analysis—determining whether the challenged conduct is unfair, unlawful, or fraudulent—is itself academic because *every* sustainable UCL claim requires a pleading that the supposed misconduct caused an injury.  *See Barber v. U.S. Bank N.A.*, No. CV 16-695-R, 2016 WL 9211666, at *2 (C.D. Cal. Aug. 9, 2016) (dismissing UCL claim because plaintiff had not "allege[d] facts that show that they have suffered an injury in fact . . . as a result of Defendants' unfair or fraudulent practices").  Here, Plaintiff alleges **no injury**, much less a "substantial" one.  (FAC ¶¶ 51–53.)[7]  Furthermore, the consumer "injury" the FAC theorizes is inherently insubstantial and one that consumers could readily avoid by not dining at a no-tipping

---

[7]     Of course, even if a Minnesotan is "injured" by paying the disclosed menu price for a sandwich in Brooklyn, New York (FAC ¶ 51), there is no pleaded basis for how that would be a compensable harm under a California statute that regulates conduct 2,500 miles away.  *See Aliya Medcare Fin., LLC v. Nickell*, 156 F. Supp. 3d 1105, 1140 (C.D. Cal. 2015) (dismissing UCL claim brought by a Nevada resident because UCL does not apply extraterritorially).

restaurant. There is no allegation that Defendants have been anything other than transparent about their tipping policies, which apply to patrons who voluntarily choose to dine at a Defendant restaurant rather than another restaurant. Regarding the last factor, the FAC concedes the many consumer benefits of hospitality-included policies, which necessarily outweigh the "injury" the FAC attempts to allege.

**D.      Because Plaintiff's Amendments in Response to a Motion to Dismiss Failed To Cure the Complaint's Defects, Dismissal Should Be With Prejudice.**

Plaintiff's amendments to the original complaint, rather than curing the defects identified in Defendants' prior motion to dismiss, only further illustrate Plaintiff's lack of standing and failure to state a claim. *Dutra v. BFI Waste Mgmt. Sys. of N. Am., Inc.*, No. 14-CV-04623-NC, 2015 WL 2251203, at \*4 (N.D. Cal. May 13, 2015) (dismissing FAC without leave to amend, noting that "plaintiff has amended the complaint once with the benefit of defendant's pending motion to dismiss, so he was put on notice of defendant's arguments and had an opportunity to cure the complaint's deficiencies"; *see also In re California Title Ins. Antitrust Litig.*, No. C 08-01341 JSW, 2009 WL 3756686, at \*2-5 (N.D. Cal. Nov. 6, 2009) (J. White) (dismissing antitrust claims without leave to amend where plaintiffs had been given an opportunity to amend and failed to allege sufficient additional facts).

As noted above, Plaintiff's new "standing" allegations (FAC ¶¶ 51–53) are utterly devoid of the necessary facts from which Defendants or the Court could deduce how Plaintiff suffered any harm from dining at one of Defendants' restaurants, let alone all of the Defendants. Among other glaring omissions, Plaintiff does not even say what he paid or what he would have tipped at any of these establishments, and for three of them, does not even identify what he supposedly ordered. Plaintiff has now had two chances to allege his harm, so it should be presumed that he is unable to allege harm.

Plaintiff's new "conspiracy" allegations only reinforce Plaintiff's attempt to allege a secret, anticompetitive conspiracy based entirely on a public dialogue among industry participants. Indeed, Plaintiff now explicitly concedes that if "no-tipping" is to become the

industry norm, it will be because of the media, social media, and promotion at public events. (FAC ¶ 10.)  The FAC includes multiple new allegations that concern entirely public discussions of no tipping (*id.* ¶¶ 65, 67–69, 72, 77, 79, 91, 98, 138) and multiple new allegations quoting the media (*id.* ¶¶ 91, 98, 138).  Other new allegations are contradicted by existing allegations.  The FAC alleges that a difference in pay to servers "ends up in pocket of owners" (*id.* ¶ 8), but that is at odds with allegations that its purpose was to increase compensation to kitchen staff and to specifically be used for employee wages and benefits (*see, e.g.*, *id.* ¶¶ 57–58).  The new allegations also further demonstrate the differences among tipping policies actually implemented, including the timing (*id.* ¶¶ 155, 157), further undermining the existence of a conspiracy.

Plaintiff's other additions consist of citing random legal authority, including case law (*id.* ¶¶ 54, 178),[8] alleging that *Twombly* is satisfied (*id.* ¶ 177), insisting that discovery will uncover relevant facts (*id.* ¶¶ 50, 161, 179), and characterizing the FAC as containing "substantial direct evidence" of a conspiracy (*id.* ¶ 6).  This strategy—citing random court decisions that purportedly apply an applicable pleading standard, but still not alleging the cogent facts necessary to satisfy that standard—is not how to state a claim.  *See, e.g.*, *Supply Pro Sorbents, LLC v. RingCentral, Inc.*, No. 16-CV-02113-JSW, 2017 WL 4685705, at *2 (N.D. Cal. July 17, 2017) (J. White) (citations omitted) (court "is not required to accept legal conclusion cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.").

---

[8]    For example, Plaintiff refers to a case pending in Los Angeles (FAC ¶ 78) that has no apparent relevance and does not assist Plaintiff in stating a claim here.  Furthermore, Plaintiff provides no citation to the alleged statement that the defendants in the Los Angeles case were "inspired by the Northern California pioneers" (*id.*), and regardless, it is unclear what pioneering even means or how it pertains to Plaintiff's allegations here.  The allegations about one defendant's *passive* investments in separately incorporated *casual* restaurants (walk-up service at a burger shack, a salad-oriented chain, and an ice-cream shop) add nothing but distraction.  (*Id.* ¶¶ 48(a) and (b).)  Such vague, incomplete and irrelevant allegations cannot substitute for factual pleading—and, if anything, only add more clutter to an overweight pleading that also must be "short and plain" to comply with Rule 8(a).

1

## V.  **CONCLUSION**

2     For the foregoing reasons, the Court should dismiss with prejudice Plaintiff's First

3 Amended Complaint for lack of subject matter jurisdiction and for failure to state a claim.

4

5 Dated:  April 2, 2018                    Respectfully submitted,

6

7 By: */s/  Stuart C. Plunkett*                By: */s/  Judith A. Zahid*

8       Jonathan A. Shapiro (SBN 257199)          Judith A. Zahid (SBN 215418)
        jonathan.shapiro@bakerbotts.com            jzahid@zelle.com
9       Stuart C. Plunkett (SBN 187971)            Zelle LLP
        stuart.plunkett@bakerbotts.com             44 Montgomery Street, Suite 3400
10      Ariel D. House (SBN 280477)                San Francisco, CA 94104-4807
        ariel.house@bakerbotts.com                 Phone: (415) 633-1916
11      Baker Botts LLP
        101 California Street, Suite 3600          Jennifer Duncan Hackett (*pro hac vice*)
12      San Francisco, California 94111            jhackett@zelle.com
        Telephone: (415) 291-6200                  Zelle LLP
13      Facsimile: (415) 291-6300                  1775 Pennsylvania Avenue, NW, Suite 375
                                                   Washington DC 20006
14      *Counsel for Defendants*                    Phone: (202) 899-4102
        *Union Square Hospitality Group, LLC,*
15      *Daniel Meyer, and Sabato Sagaria*          *Counsel for Defendants*
                                                   *140 NM LLC, d/b/a Trou Normand; Bar*
16                                                 *Agricole, LLC, d/b/a Bar Agricole; Thaddeus*
                                                   *M. Vogler; Hopemoorelain, LLC, d/b/a*
17                                                 *Camino; Russell Moore; Allison Hopelain;*
                                                   *Es Verdad, LLC, d/b/a Comal; John Paluska;*
18                                                 *Andrew Hoffman*

19

20 By: */s/  David L. Snyder*                    By: */s/  Todd Norris*

21      David L. Snyder (SBN 270465)               C. Todd Norris (SBN 181337)
        dsnyder@bsfllp.com                         todd.norris@bullivant.com
22      Boies Schiller Flexner LLP                 Bullivant Houser Bailey PC
        1401 New York Ave., NW                     101 Montgomery St. Suite 2600
23      Washington, D.C. 20005                     San Francisco, CA 94104
        Phone: (202) 237-2727                      Phone: (415) 352-2720

24      *Counsel for Defendants*                    *Counsel for Defendants*
        *Birth of the Cool, LLC, dba Eleven*        *Marlow, Inc.; Andrew Tarlow; Molinero LLC,*
25      *Madison Park; Daniel Humm; and Will*       *dba Huertas; Jonah Miller; Nate Adler*
        *Guidara*

26

27

28

1

2    By: */s/ Jacob A. Kramer*                           By: */s/ Steven N. Feldman*
         Jacob A. Kramer (*pro hac vice*)                    Steven N. Feldman (SBN 281405)
3        jacob.kramer@bryancave.com                          sfeldman@hueston.com
         Bryan Cave Leighton Paisner LLP                     Hueston Hennigan LLP
4        1155 F Street NW, Suite 700                         523 West 6th St., Suite 400
         Washington, DC 20004                                Los Angeles, CA 90014
5        Telephone: (202) 508-6153                           Telephone: (213) 788-4272

6        Tracy M. Talbot (SBN 259786)                        *Counsel for Defendants*
         tracy.talbot@bryancave.com                          *Happy Cooking Hospitality, Inc.; Gabriel*
7        Bryan Cave Leighton Paisner LLP                     *Stulman*
         Three Embarcadero Center, 7th Floor
8        San Francisco, California 94111-4070
         Telephone: (415) 675-3400
9
         Lawrence G. Scarborough
10       (AZ Bar No. 006965)
         lgscarborough@bryancave.com
11       Bryan Cave Leighton Paisner LLP
         Two North Central Avenue, Suite 2100
12       Phoenix, Arizona 85004-4406
         Telephone: (602) 364-7000
13
         *Counsel for Defendants*
14       *Momofuku 232 Eighth Avenue, LLC;*
         *Momo Holdings, LLC; and David Chang*
15

16

17   By: */s/ Timothy Branson*                          By: */s/ Stephen H. Sutro*
         M.D. Scully (SBN 135853)                            Stephen H. Sutro (SBN 172168)
18       mscully@grsm.com                                    shsutro@duanemorris.com
         Timothy K. Branson (SBN 187242)                     Duane Morris LLP
19       tbranson@grsm.com                                   One Market, Spear Tower, Suite 2200
         Gordon Rees Scully Mansukhani                       San Francisco, CA 94105
20       101 W. Broadway Suite 2000                          Telephone: (415) 957-3008
         San Diego, CA 92101
21       Telephone: (619) 230-7441                           *Counsel for Defendants*
         Facsimile: (619) 696-7124                           *New York Hospitality Alliance, Inc. and*
22                                                           *Andrew Rigie*
         *Counsel for Defendants Craft Worldwide*
23       *Holdings, LLC (sued under the assumed*
         *name Crafted Hospitality), and Thomas*
24       *Colicchio*

25

26

27

28

1

**ATTORNEY ATTESTATION**

2     I, Stuart C. Plunkett, hereby attest, pursuant to Civil Local Rule 5-1(i)(3) of the Northern

3 District of California, that the concurrence to the filing of this document has been obtained from

4 each signatory hereto.

5

6                                              /s/ Stuart C. Plunkett
                                               Stuart C. Plunkett
7
                                               *Counsel for Defendants*
8                                              *Union Square Hospitality Group, LLC,*
                                               *Daniel Meyer, and Sabato Sagaria*
9

10

11

12

13

**CERTIFICATE OF SERVICE**

14     I, Stuart C. Plunkett, hereby certify that on April 2, 2018, I electronically filed the above

15 document with the U.S. District Court for the Northern District of California by using the

16 CM/ECF system.  All participants in the case are registered CM/ECF users who will be served

17 by the CM/ECF system.

18

19                                             /s/ Stuart C. Plunkett
                                               Stuart C. Plunkett
20
                                               *Counsel for Defendants*
21                                             *Union Square Hospitality Group, LLC,*
                                               *Daniel Meyer, and Sabato Sagaria*

22

23

24

25

26

27

28