David Lavine, SBN 166744
dlavinelaw@gmail.com
LAW OFFICES OF ANDREW WOLFF, P.C.
1615 Broadway, Fourth Floor
Oakland, California 94612
Tel: (510) 834-3300
Fax: (510) 834-3377

Guy E. Mailly, SBN 135720
gmailly@bohmwildish.com
MAILLY LAW
695 Town Center Drive, Suite 700
Costa Mesa, CA 92626
(714) 384-6531

Steven E. Uhr (admitted *pro hac vice*)
seuhr@uhrlawoffice.com
LAW OFFICE OF STEVEN E. UHR, PLLC
7010 W. 84th Street Circle
Bloomington, MN  55438
(952) 239-0346

Attorneys for Plaintiff
TIMOTHY BROWN

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| **TIMOTHY BROWN,** | ) Case No. 4:17-cv-05782-JSW |
| **Plaintiff,** | ) **PLAINTIFF'S CONSOLIDATED** |
| **vs.** | ) **OPPOSITION TO DEFENDANTS'** |
| | ) **MOTIONS TO DISMISS FOR LACK OF** |
| **140 NM LLC,** *et al.,* | ) **SUBJECT MATTER JURISDICTION** |
| | ) **AND LACK OF PERSONAL** |
| **Defendants.** | ) **JURISDICTION** |
| | ) |
| | ) **Date:  June 1, 2018** |
| | ) **Time:  9:00 a.m.** |
| | ) **Courtroom:  5** |
| | ) **Judge:  Hon. Jeffrey S. White** |

I.    STATEMENT OF ISSUES AND SUMMARY OF ARGUMENT

In this consolidated brief, plaintiff, Timothy Brown, ("plaintiff") hereby opposes defendants' motions to dismiss based on lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), and lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2).

Several defendants challenge subject matter jurisdiction, for failure of standing and of a nexus to interstate commerce. Plaintiff has established standing to bring his antitrust claims by virtue of his having eaten and paid for meals in several of the restaurants alleged to have acted in concert to eliminate tipping and raise their menu prices. Defendants' restaurants operate in and substantially affect interstate commerce under the law of this circuit. The alleged widespread price fixing among collusive restaurants also substantially affects such commerce.

The New York-based defendants assert that this Court cannot assert personal jurisdiction over them. Plaintiff has alleged sufficient facts for this Court to assert personal jurisdiction over most of the defendants, in that he alleges either substantial business contacts with California such that general jurisdiction is reasonable and proper, or an intentional act aimed at California related to or giving rise to his claims, such that specific jurisdiction is reasonable and proper. Plaintiff additionally advances the conspiracy theory of jurisdiction – that personal jurisdiction established for one conspirator is jurisdiction established for all co-conspirators – even as he acknowledges that this circuit has neither approved nor rejected this theory. As to any defendants the Court finds plaintiff to have insufficiently pleaded jurisdictional facts, and in light of the unavoidable information imbalance as to needed jurisdictional facts as between plaintiff and defendants at the pleading stage, plaintiff requests that the Court order jurisdictional discovery under the lenient standing permitting it so that plaintiff may more fully plead those facts beyond those able to be obtained to date. Venue is proper in this Court under the antitrust-specific venue statute and the general venue statute.

Defendants' motions should be denied. To the extent the Court finds that plaintiff must re-plead portions of the First Amended Complaint (FAC) to include additional facts, plaintiff respectfully seeks leave to take targeted discovery and to amend the FAC.

# **TABLE OF CONTENTS**

I.   STATEMENT OF ISSUES AND SUMMARY OF ARGUMENT.....................i

II.  STATEMENT OF FACTS.................................................................1

III. PLAINTIFF HAS ESTABLISHED SUBJECT MATTER JURISDICTION.............2

   A. Plaintiff Has Standing to Sue................................................................2

   B. Both Defendants' Conspiracy to Raise Prices and Their Restaurant Operations
      Substantially Affect Interstate Commerce..................................................5

IV.  PERSONAL JURISDICTION IS PROPERLY ASSERTED WITH RESPECT
     TO ALL NEW YORK DEFENDANTS.......................................................6

   A.  Pertinent Law.......................................................................................6

   B.  Plaintiff Has Alleged Sufficient Facts To Support Personal Jurisdiction as to the
       New York Defendants...........................................................................10

       1.  Several New York-Based Defendants Are Subject To the General
           Jurisdiction of This Court Due To Their Sustained Business Activities in
           California.....................................................................................11

           a. Defendant David Chang..............................................................11

           b. Defendant Thomas Colicchio.......................................................11

           c. Defendants Daniel Humm and Will Guidara....................................12

       2.  Other New York-Based Defendants Are Subject to this Court's Specific
           Personal Jurisdiction Due to Having Directed Claim-Related Actions
           Toward California............................................................................13

           a.  Defendants Daniel Meyer, Sabato Sagaria and Union Square Hospitality
               Group, LLC..............................................................................14

           b.  Defendants Andrew Tarlow and Marlow, Inc. ..............................16

           c.  Jurisdictional Discovery Should Be Granted for Other New York-Based
               Defendants..............................................................................17
               (1)  Defendant Crafted Hospitality, LLC......................................18
               (2)  Defendants Nate Adler, Jonah Miller and Molinero, LLC.............19
               (3)  Defendants Andrew Rigie and New York City Hospitality
                    Alliance, Inc. .......................................................................19
               (4)  Defendant Birth of the Cool, LLC...........................................20
               (5)  Defendants Gabriel Stulman and Happy Cooking Hospitality, Inc. .....20
               (6)  Defendants Momofuku 232 Eighth Avenue, LLC and Momo
                    Holdings, LLC.......................................................................21

PLAINTIFF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS FOR LACK
OF SUBJECT MATTER JURISDICTION AND LACK OF PERSONAL JURISDICTION

ii

3.  Personal Jurisdiction of All Named Defendants Follows from Their Roles as Co-Conspirators Under the Conspiracy Theory of Jurisdiction................21

4.  Absent Establishment of Personal Jurisdiction for Any Defendant, Jurisdictional Discovery and Leave to Amend is Appropriate....................23

C. Venue Should Remain in this District .................................................24

V.     CONCLUSION................................................................................24

PLAINTIFF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND LACK OF PERSONAL JURISDICTION

iii

# **TABLE OF AUTHORITIES**

## CASES

*Accord Andres Industries, Inc. Chen Sun Lan*
    2014 WL 6611227, *9 (D. Nev.)..................................................................10, 23

*American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.*
    456 U.S. 556 (1982))..................................................................................17

*AT&T Co. v. Compagnie Bruxelles Lambert*
    94 F.3d 586 (9th Cir. 1996).............................................................................6

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*
    223 F.3d 1082 (9th Cir. 2000)...........................................................................6

*Benjamin v. Trans Union, LLC*
    2015 WL 3387158 at *2 (E.D. Pa. May 26, 2015)..........................................11, 17

*Bogosian v. Gulf Oil Corp.*
    561 F2d 434 (3rd Cir. 1977).............................................................................4

*Boschetto v. Hansing*
    539 F.3d 1011 (9th Cir. 2008)..........................................................................7

*Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*
    429 U.S. 477 (1977)......................................................................................3

*Butcher's Union Local No. 498 v. SDC Inv., Inc.*
    788 F.2d 535 (9th Cir. 1986)..........................................................................10

*Calder v. Jones*
    465 U.S. 783 (1984)..........................................................................6, 7, 8, 13

*College Source, Inc. v. AcademyOne, Inc.*
    653 F.3d 1066 (9th Cir. 2011).................................................................8, 15, 17

*Edmond v. U.S. Postal Service General Counsel*
    949 F.2d 415 (D.D.C. 1991))......................................................10, 16, 18, 23

*Feitelson v. Google, Inc.*
    80 F.Supp.3d 1019 (N.D. Cal. 2015)...................................................................5

PLAINTIFF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF
SUBJECCT MATTER JURISDICTION AND LACK OF PERSONAL JURISDICTION

IV

*GTE New Media Services, Inc. v. BellSouth Corp.*
    199 F.3d 1343 (D.C. Cir. 2000)………………………………..…………...………...9

*Go-Video v. Akai Electric Co., Ltd.*
    885 F.2d 1406 (9th Cir. 1989)……………………………………………………24

*Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*
    784 F.2d 1392 (9th Cir. 1986)……………………………..……………………8

*Hanover Shoe, Inc. v. United Shoe Machinery Corp.*
    392 U.S. 481 (1968)…………………………………..…………………….….…5

*Hanson v. Denckla.*
    357 U.S. 235 (1958)…………………………………..………………………7

*Hawaii v. Standard Oil of Cal.*
    405 U.S. 251 fn. 14 (1968)……………………………………….……..……5

*Helicopteros Nacionales de Colombia, S.A. v. Hall*
    466 U.S. 408 (1984)…………………………………………..…..…….……6

*In re Bulk Graphite Products Antitrust Litigation*
    2007 WL 2212713 (D.N.J. July 30, 2007) ……………..…….....................8

*In re Delta/AirTran Baggage Fee Antitrust*
    2016 WL 3770957, at *7 (N.D. Ga. July 12, 2016) …………………..……....…5

*In re Lidoderm Antitrust Litigation*
    2017 WL 679367 at *21 (N.D. Cal. 2017) …………….…..…....................…5

*In re Online DVD–Rental Antitrust Litig*
    779 F.3d 914 (9th Cir. 2015)……………...……………..………………..…3

*In re Polypropylene Carpet Antitrust Litig.*
    178 F.R.D. 603 (N.D. Ga.1997)……………………..…………………..…...3

*In re: Qualcomm*
    2017 WL 5235649 at *11 (N.D. Cal. 2017)…………………....……………..…...4

*In re Vitamins Antitrust Litigation*
    94 F.Supp. 26 (D.D.C. 2000)…………………...……………….……….…...9

*Int'l Shoe Co. v. Washington*
    326 U.S. 310 (1945)……………………..…………………………..…...6

PLAINTIFF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF
SUBJECCT MATTER JURISDICTION AND LACK OF PERSONAL JURISDICTION

v

*Jeffrey v. Southwestern Bell*
    518 F.2d 1129 (5th Cir. 1975)…………………....………………………….………..…...5

*Lake v. Lake*
    817 F.2d 1416 (9th Cir. 1987)……………………….......…………………..……...……7, 8

*Laub v. U.S. Dept. of Interior*
    342 F.3d 1080 (9th Cir. 2003)…………….…………...............10, 11, 12, 13, 16, 18, 23

*Mavrix Photo, Inc. v. Brand Techs., Inc.*
    647 F.3d 1218 (9th Cir. 2011)……..……………......……………………..……….7, 12, 17

*Mencalco, FZE v. Buchan*
    602 F.Supp.2d 1186 (D.Nev. 2009)……..…………….......……………………….……..9

*McLain v. Real Estate Bd.*
    444 U.S. 232 (1980)………………….…….......……………….……….……………....…..5

*Morrill v. Scott Financial Corp.*
    873 F.3d 1136 (9th Cir. 2017)…………….…………………….......………………..…….7

*Orchid Biosciences, Inc. v. St. Louis University*
    198 F.R.D. 670 (S.D. Cal. 2001)…………………...………….…...………….10, 18, 23

*Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*
    81 F.Supp.3d 1 (D.D.C. 2015)……………...…………….………………….………...…..4

*Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K*
    757 F.2d 1058 (9th Cir. 1985)………………….....…………………….…………….7, 13

*Pac. Atl. Trading Co. v. M/V Main Express*
    758 F.2d 1235 n.1 (9th Cir. 1985)……………….......…………………………….………8

*Panavision Int'l, L.P. v. Toeppen*
    141 F.3d 1316 (9th Cir. 1998)…………………….......……………………..……..8, 16

*Perkins v. Benguet Consol. Mining Co.*
    342 U.S. 437 (1952)…………………….......…..……………….…………………….…...7

*Schuylkill Health System v. Cardinal Health*
    2014 WL 3746817 at *4 (E.D. Pa. 2014)………………...……………………………3

*Schwarzenegger v. Fred Martin Motor Co*
    374 F.3d 797 (9th Cir. 2004)………………………….......……………………6, 7, 8, 15, 16

PLAINTIFF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF
SUBJECCT MATTER JURISDICTION AND LACK OF PERSONAL JURISDICTION

VI

*Shaffer v. Heitner*
    433 U.S. 186 (1987)…………..…………………………………………..…7

*Sinatra v. National Enquirer, Inc.*
    854 F.2d 1191 (9th Cir. 1988)……………...……….………….…...…………15, 16

*Somers v. Apple, Inc.*
    729 F.3d 953 (9th Cir. 2013)……………….………...……………..……………4

*Summit Health, Ltd. v. Pinhas*
    500 U.S. 322 (1991)……………………………………………..…..……………5

*Textor v. Board of Regents of Northern Illinois University*
    711 F.2d 1387 (7th Cir. 1983)……………….………………………...……..9

*Tuazon v. R.J. Reynolds Tobacco Co*
    433 F.3d 1163 (9th Cir. 2006)……………………...…….…..……………...7, 12, 16

*Underwager v. Channel 9 Australia*
    69 F.3d 361 (9th Cir. 1995)…………………….…………..…...…………….9, 21

*Vaughn v. Bay Envtl. Mgmt., Inc.*
    567 F.3d 1021 (9th Cir. 2009)………………………………………………...4

*Ward v. Apple Inc.*
    791 F.3d 1041 (9th Cir. 2015)……………………………….……………...4

*Wells Fargo & Co. v. Wells Fargo Express Co.*
    556 F.2d 406 n.24 (9th Cir. 1977)………………………………...…………….9, 23

*Western Waste Service Systems v. Universal Waste Control*
    616 F.2d 1094 (9th Cir. 1980)…………………………….…..….……...............5

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*
    433 F.3d 1199 (9th Cir. 2006)…………………………….….……......7, 8, 16

*Youming Jin v. Ministry of State Security*
    335 F.Supp.2d 72……………………………….….…...........10, 15, 16, 18, 23

**CONSTITUTIONAL PROVISIONS AND STATUTES**

*U.S. Const., Art. 1, Section 8*… … … … … … … … … … … … … … … … … … … …5

PLAINTIFF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF
SUBJECCT MATTER JURISDICTION AND LACK OF PERSONAL JURISDICTION

VII

15 U.S.C. § 15(a)……………………………………………………………………3

15 U.S.C. Section 22……...…………………………………………………………23, 24

28 U.S.C. Section 1391(b)(2)……………………………………………………………23, 24

Cal. Civ. Pro. Code Section 410.10………………………………………………….....6

**OTHER AUTHORITIES**

Phillip E. Areeda & Herbert Hovenkamp
        Antitrust Law ¶345 (4d ed. 2014)………………………………………..…………3

PLAINTIFF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF
SUBJECCT MATTER JURISDICTION AND LACK OF PERSONAL JURISDICTION

VIII

I.      STATEMENT OF FACTS

Plaintiff has alleged a horizontal price-fixing conspiracy by all defendants, and perhaps others as of yet not known to plaintiff.  Defendants coordinated with one another, and acted in concert, to organize and roll out their wide-reaching plan to eliminate tipping, and to raise menu prices, in as many restaurants as possible in large urban markets such as New York City and the San Francisco Bay Area.  FAC ¶¶1-10.  The preliminary evidence of the conspiracy – an agreement to end tipping and increase menu prices -- comes from press reports, other publicly-available documents and communications, interviews, and some privately-held documents.  Plaintiff is relatively certain that more evidence of the conspiracy exists beyond his current view.

Detailed facts from the allegations of the FAC are provided in plaintiff's consolidated opposition to the Rule 12(b)(6) motions. [1]  The alleged facts supporting plaintiff's eating and paying for increased-price meals at some of the restaurants in New York and California at issue are found at FAC ¶¶51-55, and are discussed in further detail below.  The "jurisdictional facts" supporting defendants' substantial business connections to California (for general jurisdiction), and supporting claims-related actions aimed toward, and forays into, California (for specific jurisdiction) are found at FAC ¶¶47-50, and elsewhere in the FAC, as further detailed below.  The facts reflecting concerted action among the defendants to form the conspiracy, and to carry it out, as needed for the conspiracy theory of jurisdiction, and to meet the lenient standard for jurisdictional discovery, to the extent currently known by plaintiff, appear at FAC ¶¶56-58, 64, 66-67, 70-72, 76, 82. 90, 107, 123-25, 127-29, 132, 134, 138, 140, 147, 152-53 (attracting participants and support for eliminating tipping on both coasts), ¶¶75-82, 85, 88-90, 92, 121, 128. 138, 140, 147 (attending industry conferences and participating on panels to promote elimination of tipping and higher menu prices), and ¶¶96, 99-106 (coordinated roll-out and

---

[1]  Given the many motion filings of defendants -- some consolidated, some separated – plaintiff is filing this consolidated opposition with respect to the motions to dismiss for lack of standing and for lack of personal jurisdiction, together with a consolidated opposition as to the motion to dismiss for failure to state a claim, and stand-alone oppositions as to the motion to dismiss for deficient service and for the motion to strike.

implementation of no-tipping and higher menu prices), and are discussed in more detail in the Rule 12(b)(6) motion opposition and below.

## II.   PLAINTIFF HAS ESTABLISHED SUBJECT MATTER JURISDICTION

Plaintiff has established his standing to sue based on his having eaten, and paid for, meals in restaurants that have eliminated tipping and raised menu prices.  Additionally, the alleged price-fixing conspiracy crosses state lines and thereby affects interstate commerce, and defendants' restaurants operate in and affect interstate commerce under the broad "general business activity" test applied by this circuit.

### A.   Plaintiff Has Standing to Sue

> Because protecting consumers from monopoly prices is the central concern of antitrust, buyers have usually been preferred plaintiffs in private antitrust litigation. As a result, consumer standing to recover for an overcharge paid directly to an illegal cartel or monopoly is seldom doubted.

Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶345 (4d ed. 2014).

Private suits to enforce the Sherman Act are authorized by Section 4 of the Clayton Act, 15 U.S.C. § 15(a), which provides that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor ... and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."  Injunctive relief is available under Section 16 of the Sherman Act.  To proceed, a plaintiff must show a "case or controversy" that brings jurisdiction to Article III courts, and must also show antitrust injury, which is defined as the kind of injury that the antitrust laws were intended to prevent and which "flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489 (1977).  Antitrust standing can be established by showing that consumers paid higher prices for a product due to the anticompetitive actions of a defendant. *In re Online DVD–Rental Antitrust Litig.*, 779 F.3d 914, 922 (9th Cir. 2015).  "Paying higher prices is the quintessential form of antitrust injury." *Schuylkill Health System v. Cardinal Health*, 2014 WL 3746817 at *4 (E.D. Pa. 2014).

PLAINTIFF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER AND PERSONAL JURISDICTION

2

Under *Twombly*, it is sufficient if the Complaint makes a plausible claim of antitrust injury and damages. *In re: Qualcomm*, 2017 WL 5235649 at *11 (N.D. Cal. 2017). *See also Somers v. Apple, Inc.* 729 F.3d 953, 963 (9th Cir. 2013) (need to plead plausible injury or damages). The court must accept as true all material non-conclusory allegations in the complaint. *Vaughn v. Bay Envtl. Mgmt., Inc.*, 567 F.3d 1021, 1024 (9th Cir. 2009).

The "short and plain" allegations of injury and damages in the FAC easily meet this standard. Plaintiff alleges that he purchased food at four of the defendants' restaurants during the conspiracy period and was overcharged as a result of the alleged conspiracy. FAC at ¶¶51-53. All four had a non-tipping policy in place at the time of purchase. *Id.* The four included Grammercy Tavern, which is owned by USHG, the apparent ringleader of the conspiracy. *Id.* The server at one of the restaurants told plaintiff that the price of the fried chicken sandwich he ordered increased from $16 to $21 after the elimination of tips. *Id.* at ¶51. Given these allegations, it is certainly *plausible* that plaintiff was overcharged at least at one of those defendant restaurants.

Because antitrust conspirators are liable for the acts of their co-conspirators, there is no requirement that plaintiff make purchases from each defendant. *See Ward v. Apple Inc.*, 791 F.3d 1041, 1048 (9th Cir. 2015) (antitrust conspirators are liable for the acts of their co-conspirators)*; Bogosian v. Gulf Oil Corp.*, 561 F2d 434, 448 (3rd Cir. 1977) (the "fact that a customer has not made purchases from every co-conspirator does not prevent him from suing all—for each co-conspirator contributed to the charging of the supra-competitive price paid by the purchaser.") In fact, standing would be proper even if plaintiff had not specified from which defendant(s) he purchased, or had made purchases from conspirators who were not even named defendants. *See Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*, 81 F.Supp.3d 1, 7 (D.D.C. 2015) (finding that because the alleged co-conspirators are jointly and severally liable, "Plaintiffs ... need not identify, at this stage, to which co-conspirator they paid fuel surcharges ..."); *In re Polypropylene Carpet Antitrust Litig.*, 178 F.R.D. 603, 609 (N.D. Ga.1997) ( "[I]n order for Plaintiffs to possess standing to act as class representatives, Plaintiffs must adduce

PLAINTIFF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER AND PERSONAL JURISDICTION

3

evidence showing they purchased carpet from the named Defendants or their co-conspirators during the alleged conspiracy period.") Indeed, there is no requirement at the pleading stage that plaintiff identify the specific date and time of day he made purchases or the specific food items purchased or amount paid at each restaurant. "Plaintiffs need only allege, as they have in the amended complaint, that they suffered damages as a result of the conspiracy in which defendants participated." *Oxbow Carbon*, 81 F.Supp.3d at 7 (D.D.C. 2015). The allegations place defendants on notice of the nature of the injury and damages claimed, and defendants can explore additional details during discovery.

Whether and the amount plaintiff would have tipped but for the conspiracy is also immaterial to standing. An antitrust injury occurs the moment the purchaser incurs an overcharge. *In re Lidoderm Antitrust Litigation*, 2017 WL 679367 at \*21 (N.D. Cal. 2017) (*quoting In re Delta/AirTran Baggage Fee Antitrust*, 2016 WL 3770957, at \*7 (N.D. Ga. July 12, 2016). *See also Hawaii v. Standard Oil of Cal.*, 405 U.S. 251, 262 fn. 14 (1968) (antitrust damages are established by the amount of the overcharge and "courts will not go beyond the fact of this injury to determine whether the victim of the overcharge has partially recouped its loss in some other way ..."). Thus, a defendant cannot argue that the damages of a direct purchaser were limited because the purchaser passed on the overcharge to downstream customers. *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481 (1968). Similarly, here defendants cannot escape liability on the notion that, but for the conspiracy, plaintiff might have voluntarily and subsequently given some of his money to a third party.[2]

Accordingly, plaintiff has established standing to sue as a victim of antitrust injury.

---

[2] Additionally, in cases brought in equity for injunctive relief based on threatened future injury, the standing requirement is more lenient than for a plaintiff seeking damages. *Feitelson v. Google, Inc.*, 80 F.Supp.3d 1019, 1026 (N.D. Cal. 2015). *See also Jeffrey v. Southwestern Bell*, 518 F.2d 1129, 1132 (5th Cir. 1975) (courts take a somewhat "less constrained view of standing in suits involving injunctive relief than in those demanding treble damages."). Plaintiff is seeking both damages and injunctive relief here.

PLAINTIFF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER AND PERSONAL JURISDICTION

4

### B. Both Defendants' Conspiracy to Raise Prices and Their Restaurant Operations Substantially Affect Interstate Commerce[3]

Jurisdiction under the Sherman Act is co-extensive with that of the Commerce Clause. U.S. Const., Art. 1, Section 8; *McLain v. Real Estate Bd.,* 444 U.S. 232, 241 (1980). Jurisdiction under the Commerce Clause is interpreted liberally. *McLain,* 441 U.S. at 241. Any activity by defendant having a causal nexus with interstate commerce is sufficient. *Id.* at 246. A showing of potential, rather than actual, effect on interstate commerce is all that is required. *Summit Health, Ltd. v. Pinhas,* 500 U.S. 322, 329-31 (1991) (potential effect on out-of-state patients served by hospital department at issue is sufficient nexus). This circuit has taken a broad view of compliance with this requirement, extending interstate commerce jurisdiction to any activities by defendant affecting interstate commerce, even if those activities are wholly divorced from the alleged antitrust violation. *Western Waste Service Systems v. Universal Waste Control,* 616 F.2d 1094, 1097 (9th Cir. 1980).

Here, plaintiff alleges a price-fixing scheme crossing state boundaries. *See, e.g.,* FAC ¶¶2, 9-10. 176. Beyond that, plaintiff also alleges that many of the defendants operate restaurant chains or multiple restaurants across states, some under common parent companies. *See, e.g.,* ¶¶47-48. Even with respect to those restaurants which operate singly in the popular travel hubs of New York City and New York, it can be surmised that many of the patrons are out-of-state visitors, as are likely some of the food and related product and service suppliers to these restaurants. A finding of nexus with interstate commerce, in short, is easily reached from the alleged antitrust violation or from the nature of the defendants' business operations.[4]

---

[3] Interstate commerce can arguably be addressed as a Fed.R.Civ.P. 12(b)(6) matter, as a nexus with interstate commerce is an element of an antitrust violation. As the moving party raised the issue under subject matter jurisdiction, plaintiff follows suit.

[4] Should the Court conclude that more information about defendants' business operations is needed to satisfy the interstate commerce requirement, plaintiff would seek targeted discovery and leave to amend.

PLAINTIFF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER AND PERSONAL JURISDICTION

5

III.   PERSONAL JURISDICTION IS PROPERLY ASSERTED WITH RESPECT TO
       ALL NEW YORK DEFENDANTS

Plaintiff has sufficiently alleged personal jurisdiction with respect to all New York

defendants by virtue of their substantial and sustained business presence in California, or by their

conduct directed toward the residents and state of California.

A.   Pertinent Law

Personal jurisdiction is established based on the law of the state in which the court sits,

unless federal law provides otherwise. *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d

797, 800-01 (9th Cir. 2004). California law provides for the exercise of "jurisdiction on any basis

not inconsistent with the Constitution of [California] or of the United States." Cal. Civ. Pro.

Code Section 410.10. The constitutional due process standard for both is the same: a non-

resident defendant must have "minimum contacts with [the forum state] such that the

maintenance of the suit does not offend traditional notions of fair play and substantial justice."

*Int'l Shoe Co. v. Washington* 326 U.S. 310, 316 (1945). "In judging minimum contacts, a court

properly focuses on the relationship among the defendant, the forum, and the litigation." *Calder

v. Jones,* 465 U.S. 783, 788 (1984), *citing Shaffer v. Heitner*, 433 U.S. 186, 204 (1987).

A plaintiff need make only a *prima facie* showing of jurisdiction at the pleadings stage.

*Schwarzenegger*, 374 F.3d at 800. The Court must accept as true all non-controverted

allegations in the complaint, and credit a plaintiff's admissible facts over any contrary facts

submitted by a defendant. *AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th

Cir. 1996).

Personal jurisdiction can be general or specific. General jurisdiction is predicated on

"substantial" or "continuous and systematic" contacts with the forum state, even if the cause of

action is unrelated to those contacts. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d

1082, 1086 (9th Cir. 2000), *citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S.

408, 415 (1984). "To determine whether a nonresident defendant's contacts are sufficiently

substantial, continuous, and systematic, we consider their '[l]ongevity, continuity, volume,

economic impact, physical presence, and integration into the state's regulatory or economic

PLAINTIFF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF
SUBJECT MATTER AND PERSONAL JURISDICTION

6

markets.'" *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1224 (9th Cir. 2011), *citing Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1172 (9th Cir. 2006).

An assertion of specific jurisdiction requires the Court to assess whether the conduct or activity of a defendant giving rise to a plaintiff's causes of action is sufficiently related to the forum state. *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 446 (1952); *Hanson v. Denckla*, 357 U.S. 235, 250–53 (1958). The Ninth Circuit determines whether there is sufficient relation to the forum state by way of a three-part test: (1) The non-resident defendant must purposefully direct his activities toward or consummate some transaction with the forum state or a resident thereof; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable. *Morrill v. Scott Financial Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017); *Schwarzenegger*, 374 F.3d at 802, *citing Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987). A plaintiff must establish the first two prongs. *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). In that event, defendant can defeat the assertion of specific personal jurisdiction only with a "'compelling case' that the exercise of jurisdiction would not be reasonable." *Id., citing Schwarzenegger*, 374 F.3d at 802.

In *Calder*, the Supreme Court elucidated the "purposeful direction" standard of the first prong to make clear that a non-resident defendant need not have conducted case-related activity related to an intentional tort in the forum state if such a defendant "expressly aimed" activity conducted out-of-state at the forum state or its residents, such that the "effects" were felt in the forum state by its residents. *Calder* 465 U.S. at 788-90 (1984). To satisfy this test, plaintiff must allege that a defendant (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows or can foresee is likely to be suffered in the forum state. *Id.* Courts may exercise jurisdiction over defendants who have engaged in an act that is directed at and has an effect in the forum state, even if the act itself takes place outside state boundaries. *Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1064 (9th Cir. 1985). Further, there is no requirement that the brunt of the harm caused by a defendant is suffered in the forum state. If a jurisdictionally-sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered elsewhere. *Yahoo!*

PLAINTIFF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER AND PERSONAL JURISDICTION

7

*Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006).

Even a single act aimed by a defendant at the forum state is sufficient so long a claim arises out of that act. *See Yahoo!,* 433 F.3d at 1210 ("A single forum state contact can support jurisdiction if "the cause of action...arise[s] out of that particular purposeful contact of the defendant with the forum state."), *citing Lake*, 817 F.2d at 1421.

The second prong of the Ninth Circuit's sufficient relation test requires that a plaintiff's action arises out of or relates to a defendant's forum-directed activities. *Schwarzenegger*, 374 F.3d at 802.

The third prong of the Ninth Circuit's sufficient relation test requires that "the exercise of personal jurisdiction must be reasonable," with the burden resting with the defendant to "set forth a compelling case" that the exercise of personal jurisdiction would not be reasonable. *College Source, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011). In analyzing reasonableness, the Ninth Circuit considers seven factors: "(1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998).

The Ninth Circuit has applied what has alternately been called the "express aiming" or "effects" test of *Calder* broadly to a wide variety of cases. *See, e.g.. Schwarzenegger v. Fred Martin Motor Co.* 374 F.3d 797, 799 (9th Cir. 2004); *Pac. Atl. Trading Co. v. M/V Main Express,* 758 F.2d 1235, 1330, n.1 (9th Cir. 1985); *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.,* 784 F.2d 1392, 1395 (9th Cir. 1986); *Yahoo!, Inc. v. La Ligue Contre Le Racisme et L'Antisemetisme,* 433 F.3d 1199, 1206 (9th Cir. 2006). The Ninth Circuit is not alone in reading the "express aiming" test of *Calder* expansively, particularly with respect to antitrust cases. *See, e.g., In re Bulk Graphite Products Antitrust Litigation*, 2007 WL 2212713 (D.N.J. July 30, 2007)

(noting that the special character of an antitrust claim should benefit from a broad interpretation of the *Calder* "express aiming" test).

Further, in a subset of specific personal jurisdiction jurisprudence, multiple federal and state courts have adopted a more lenient theory of establishing personal jurisdiction with respect to an alleged conspiracy. Under a "conspiracy jurisdiction" theory, a plaintiff establishes personal jurisdiction by alleging an actionable conspiracy and a "substantial act" in furtherance of the conspiracy performed in the forum state. *In re Vitamins Antitrust Litigation,* 94 F.Supp. 26, 33 (D.D.C. 2000) (after finding *Calder* "effects-test" jurisdiction in California and Illinois, the court found conspiracy jurisdiction under the law of four additional states), *citing Textor v. Board of Regents of Northern Illinois University,* 711 F.2d 1387, 1392 (7th Cir. 1983). Under such a theory, jurisdiction established over one co-conspirator is jurisdiction over all co-conspirators, in that an act by one member of the conspiracy in furtherance of the conspiracy is attributable to the other members of the conspiracy. *Id.* To date, the Ninth Circuit has stopped short of adopting or rejecting this theory of personal jurisdiction. *See Underwager v. Channel 9 Australia,* 69 F.3d 361, 364 (9th Cir. 1995) (leaving open question of viability of conspiracy theory of jurisdiction in the absence of a well-pleaded conspiracy); *Mencalco, FZE v. Buchan,* 602 F.Supp.2d 1186, 1193 (D.Nev. 2009) (this circuit "has not expressly accepted or rejected the conspiracy theory of personal jurisdiction").

Finally, a plaintiff who plausibly demonstrates that he does not currently have sufficient facts to support jurisdiction, but that such facts are plausibly available from a defendant, may conduct jurisdictional discovery to secure those facts. *In re Vitamins Antitrust Litigation* 94 F.Supp.2d 26, 35, *citing GTE New Media Services, Inc. v. BellSouth Corp.,* 199 F.3d 1343, 1351-52 (D.C. Cir. 2000) (plaintiffs who are not yet able to make a *prima facie* showing of personal jurisdiction are entitled to pursue "precisely focused discovery aimed at addressing matters relating to personal jurisdiction" even when the court cannot be sure that such discovery would help). Jurisdictional discovery can be denied to a plaintiff only when it is clear to the court that such discovery would not reveal facts sufficient to establish jurisdiction. *Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 430 n.24 (9th Cir. 1977). Rather, jurisdictional

PLAINTIFF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER AND PERSONAL JURISDICTION

9

discovery should be granted when key jurisdictional facts are in dispute, or a fuller factual showing is needed. *Laub v. U.S. Dept. of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003), *citing Butcher's Union Local No. 498 v. SDC Inv., Inc.* 788 F.2d 535, 540 (9th Cir. 1986). Indeed, a defendant faces a "high burden" in convincing the court to deny jurisdictional discovery because it is not usually clear that such discovery would be of no utility to the plaintiff). *Orchid Biosciences, Inc. v. St. Louis University*, 198 F.R.D. 670, 674-75 (S.D. Cal. 2001).

The test is even more lenient in the event jurisdictional discovery is sought in the context of an alleged conspiracy. In this context, to obtain jurisdictional discovery, plaintiff need show only (1) the existence of a conspiracy, (2) participation by the non-resident(s) in the conspiracy, and (3) an injury-causing act within the forum state. *Youming Jin v. Ministry of State Security*, 335 F.Supp.2d 72, 83, *citing Edmond v. U.S. Postal Service General Counsel*, 949 F.2d 415, 425 (D.D.C. 1991) (noting that is an abuse of discretion to deny jurisdictional discovery if these three elements are met). *Accord Andres Industries, Inc. Chen Sun Lan*, 2014 WL 6611227, *9 (D. Nev.) (upon showing of personal jurisdiction over co-defendants, jurisdictional discovery is appropriate for non-resident co-conspirator, without any further showing for the non-resident).

B.  <u>Plaintiff Has Alleged Sufficient Facts To Support Personal Jurisdiction as to the New York Defendants</u>

All New York-based defendants have challenged the assertion of personal jurisdiction by this Court. To the contrary, plaintiff has alleged sufficient jurisdictional facts in the FAC for this Court to find minimum contacts with California based on either substantial business contacts with California generally, or by way of express aiming of claim-related acts at California or its residents, such that the assertion of personal jurisdiction over each of them is reasonable and comports with due process. Should plaintiff not establish a *prima facie* showing of personal jurisdiction with respect to any defendant due to not having sufficient information, plaintiff respectfully requests jurisdictional discovery to correct the information imbalance. Each New York defendant is taken up in turn under the applicable theory of personal jurisdiction.

1. Several New York-Based Defendants Are Subject To the General Jurisdiction of This Court Due To Their Sustained Business Activities in California

   a. Defendant David Chang

General jurisdiction for defendant Chang is predicated on his presence in California in 2017 in preparation for the opening of his Los Angeles-based restaurant Majordomo, as alleged at FAC ¶¶29, 47.  It is unclear without further information from defendant what the precise nature or time frame of his activities in California were at that time.  It is not unusual that a plaintiff would not know such details. *See, e.g.,* FAC ¶¶50, 178; *Benjamin v. Trans Union, LLC,* 2015 WL 3387158 at *2 (E.D. Pa. May 26, 2015) ("Where, as here, the information about [the] moving defendants' Pennsylvania business activities lies in the sole possession of [the corporations], [the plaintiff] should have the opportunity to conduct jurisdictional discovery to cure the informational imbalance.").  It can be surmised without difficulty that opening a restaurant involves sustained periods of work on site, instructing contractors, hiring staff, preparing menus, locating vendors, evaluating market conditions, and so forth.  That Majordomo does not itself participate in the conspiracy is of no moment to the jurisdictional analysis, as general jurisdiction is reviewed based on the substantiality of contacts with California, not whether those contacts gave rise to the claims at issue.  It is sufficient if plaintiff shows an individual defendant's sustained contacts in California – as planning and opening a restaurant would ordinarily give rise to.  Should the Court conclude that plaintiff needs to allege more detail of Chang's presence and activities in California, and that such information is likely discoverable from Chang or his businesses, then plaintiff respectfully requests that the Court order such tailored discovery. *See Laub v. U.S. Dept. of Interior,* 342 F.3d 1080, 1093 (9th Cir. 2003) (discovery of fuller jurisdictional facts should be permitted with some prospect of success and absent clear futility).

   b. Defendant Thomas Colicchio

Like defendant Chang, defendant Colicchio is subject to general personal jurisdiction based on his work devoted to a California restaurant.  Colicchio has been responsible for

PLAINTIFF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER AND PERSONAL JURISDICTION

11

1   preparing, opening, and managing restaurants in several states, including a California-based

2   restaurant, Craft Los Angeles. FAC ¶¶25-26, 47. As with defendant Chang, it appears that

3   Colicchio was in California over an extended period to manage the planning and opening of the

4   Los Angeles restaurant, and to oversee it following its opening. It is reasonable to surmise that

5   Colicchio spent sustained time preparing, opening and overseeing Craft Los Angeles, with both

6   residence time in California and repeated trips to California, amounting to substantial time and

7   activity in state to manage an ongoing business serving the public while integrating it into the

8   local economy. *See Mavrix Photo,* 647 F.3d at 1224, *citing Tuazon,* 433 F.3d at 1172. Colicchio

9   also had substantial contact with the state in connection with his television program Top Chef,

10  which was situated in California in 2006, 2007, and 2016. Colicchio Decl., ¶6; FAC at ¶47, n.2.

11         Should the Court conclude that plaintiff needs to allege more detail of Colicchio's

12  presence and activities in California beyond the little he placed in his declaration, and that such

13  information is likely discoverable from Colicchio or his businesses, then plaintiff respectfully

14  requests that the Court order such tailored discovery. *See Laub v. U.S. Dept. of Interior*, 342

15  F.3d 1080, 1093 (9th Cir. 2003) (discovery of fuller jurisdictional facts should be permitted with

16  some prospect of success and absent clear futility).

17                        c.   Defendants Daniel Humm and Will Guidara[5]

18         As alleged with respect to defendants Chang and Colicchio, defendants Humm and

19  Guidara are subject to general personal jurisdiction predicated on their opening of a restaurant in

20  California. It is similarly alleged that each of Humm and Guidara spent significant time in

21  ─────────────────
    [5] Plaintiff understands that defendants and their counsel will often advance a different
22  characterization of questions pending with the Court than will plaintiff – whether about the
    assertion of personal jurisdiction, compliant service, or the merits of claims, as here. But these
23  characterizations should be offered respectfully, and not intemperately. Defendants Humm and
    Guidara are alleged to have eliminated tipping and raised prices in New York in coordination
24  with others doing the same, and to have active business connections with a restaurant in
    California. Whether those connections are sufficient, alone, or aided by jurisdictional facts to be
25  uncovered during any discovery ordered, to establish personal jurisdiction in California, or
    whether claims against these defendants are better brought in a New York court, or perhaps not
26  at all, is an arguable question, to be sure. But those arguments should at all times be advanced
27  respectfully.

28

California planning, opening and managing their new restaurant, NoMad Los Angeles.  FAC ¶¶ 37-40, 47.  It is reasonable to surmise that Humm and Guidara spent sustained time in his work preparing, opening and overseeing NoMad Los Angeles, with both residence time in California and repeated trips to California, amounting to substantial time and activity in state to manage an ongoing business serving the public while integrating it into the local economy.  *See Mavrix Photo,* 647 F.3d at 1224, *citing Tuazon,* 433 F.3d at 1172.  Should the Court conclude that plaintiff needs to allege more detail of Humm's and/or Guidara's presence and activities in California, and that such information is likely discoverable from them or their businesses, then plaintiff respectfully requests that the Court order such tailored discovery.  *See Laub v. U.S. Dept. of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (discovery of fuller jurisdictional facts should be permitted with some prospect of success and absent clear futility).

### 2. Other New York-Based Defendants Are Subject to this Court's Specific Personal Jurisdiction Due To Having Directed Claim-Related Actions toward California

Apart from defendant Meyer, whose personal jurisdiction is predicated on both general and specific theories, the remaining defendants are subject to the jurisdiction of this court under a theory of effects-based specific jurisdiction under *Calder*.  That is:  each defendant expressly aimed an intentional act at the residents and state of California, knowing that its effects would be felt there; that act was related to and in some measure gives rise to the claims at issue; and assertion of jurisdiction over each is reasonable.  *Calder*, 465 U.S. at 789-90; *Paccar*, 757 F.2d at 1064.  To the extent that plaintiff falls short as to any defendant based on the current information imbalance between plaintiff and defendants, plaintiff respectfully requests jurisdictional discovery.  *Laub*, 342 F.3d at 1093 (jurisdictional discovery should be granted when a fuller factual showing is needed); *Youming Jin*, 335 F.Supp.2d at 83, *citing Edmond,* 949 F.2d at 425 (noting an even lower standard to qualify for jurisdictional discovery if plaintiff shows the existence of a conspiracy, participation by non-resident(s) in the conspiracy, and an injury-causing act within the forum state).

### a. Defendants Daniel Meyer, Sabato Sagaria and Union Square Hospitality Group, LLC

PLAINTIFF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER AND PERSONAL JURISDICTION

13

As alleged, for example, at FAC ¶¶48, 88, and 124, defendant Meyer, through his role as CEO of USHG, has been attempting to attract broad-based industry support for eliminating tipping and increasing menu prices since at least 2013. USHG established a "help-line" to aid restaurateurs of all types and price points to switch to a no-tipping, increased menu prices model. Around the time of USHG's announcement, Meyer thanked California defendant Camino for "leading the way." (FAC at ¶88) and is believed to have personally similarly supported other Bay Area restaurant owners in the elimination of tipping and the resulting increase in menu prices.

Similarly, as alleged at FAC ¶¶48, 77, 123, 128, defendant Sagaria travelled to California one two separate occasions to attend GGRA conferences. At the first convention, held in July 2015, defendant Vogler talked to Sagaria and "helped inspire[] some of the mechanics of USHG's tipless policy." At the second conference in April 2016, Sagaria and Vogler presented on a panel titled: "The Tipping Point: A Year Later." Sagaria and Vogler also allegedly discussed increasing prices and eliminating tipping at a conference sponsored by USHG held in Chicago in May 2016 titled: "Tipping the Scale: Wages, Workplace Culture and the Gratuity-Free Future." FAC at ¶132. These trips of Sagaria to promote and recruit other restaurants to USHG's no-tipping agenda are intentional acts expressly aimed at the California urban restaurant market, without which the elimination of tipping and resulting higher menu prices would be less likely to succeed.

Similarly, as alleged at FAC ¶¶48, 124, 138 and 176, defendant USHG has worked to attract broad-based industry support for eliminating tipping and increasing menu prices since at least 2013. USHG established a "help-line" to aid restaurateurs of all types and price points to switch to a no-tipping, increased menu prices model. As discussed above, USHG, through Meyer, Sagaria, and others supported, expressed encouragement to, and shared information with, California-based co-conspirators such as Camino restaurant. In April 2016, USHG tweeted that it was "honored to share in the dialogue and learn from our west coast peers." FAC at ¶128. Further, Gwyneth Bordon, the Executive Director of GGRA, traveled to New York City in October 2015 to attend a USHG town hall regarding tipping. FAC at ¶92. USHG's efforts to

1  promote and recruit other restaurants to its no-tipping agenda are intentional acts expressly

2  aimed at the California urban restaurant market, without which the elimination of tipping and

3  resulting higher menu prices could not hope to succeed.

4      The claims alleged in the FAC are related to and grow out of the acts promoting the

5  elimination of tipping and the raising of menu prices by these three defendants. *See*

6  *Schwarzenegger*, 374 F.3d at 802, *citing Sinatra v. National Enquirer, Inc.* 854 F.2d 1191, 1197

7  (9th Cir. 1988) (the intentional act establishing specific jurisdiction constituted "an event within a

8  sequence of activities designed to use California markets for the defendant's benefit").

9      Finally, as to the reasonableness of bringing Meyer, Sagaria and USHG into California

10 court -- an issue as to which defendants hold the burden to show unreasonableness -- *see College*

11 *Source*, 653 F.3d at 1076 (reflecting defendant's burden of showing unreasonableness) -- the

12 interjection of each defendant was clearly purposeful, in that the efforts of each supported broad

13 adoption of no tipping, and were designed to attract and support more restaurants into the no-

14 tipping fold. *Panavision*, 141 F.3d at 1323 (reflecting the seven factors noted earlier in this brief

15 to weigh, most of which take up the theme of the fairness of the selected forum relative to

16 defendant's home state or others). As noted elsewhere in this brief, there is clearly another

17 forum that a conspiracy complaint against Meyer and others could be directed to – a New York

18 federal court – but re-directing the case to New York would create the flip-side of the distant

19 court problem presented by bringing a bi-coastal conspiracy complaint in California: the

20 California-based defendants would then protest being hailed into a distant court in New York for

21 much the same reason as currently presented by the New York-based defendants. Given the

22 geographic separation of the defendants, on balance plaintiff sees no reason that New York lays

23 greater claim to this lawsuit then does California, or would function as a superior forum to

24 California given the impact on all concerned. Plaintiff elected to file the case in California, and

25 there is no sound reason why that choice should be upended.[6]

---

26 [6] Plaintiff also advances by way of his allegations at FAC ¶48 a general jurisdiction theory as to
defendant Meyer, based on what appears to be substantial, systematic and continuous contacts in

27

28

PLAINTIFF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF
SUBJECT MATTER AND PERSONAL JURISDICTION

15

1

b.  Defendants Andrew Tarlow and Marlow, Inc.

2      As alleged at FAC ¶¶ 48, 103, and 176, Defendant Tarlow hired a designer to design and

3 post an open-source "gratuity-free" logo, to rally and support other restaurateurs to drop tipping

4 in favor of increased menu prices.  That logo was directed for use not only in New York, but

5 outside of New York – and, as alleged, has in fact been utilized by restaurants in California.  The

6 website from which the logo can be downloaded could also be used to track no-tipping

7 restaurants around the country, and stated, e.g., that "by submitting this form you … consent to

8 us communicating with you."  This step in furtherance of the conspiracy was expressly aimed at

9 restaurants beyond the local New York market, including those in California.  *See Yahoo!*, 433

10 F.3d at 1207 (sufficient to establish jurisdiction if harm was directed toward and absorbed in

11 forum state together with other places as well).  The claims alleged in the FAC are related to and

12 grow out of the act of designing and circulating the gratuity-free logo to high-concentration

13 restaurant markets to support and show participation in a network of no-tipping restaurants with

14 resulting higher menu prices.  *See Schwarzenegger*, 374 F.3d at 802, *citing Sinatra v. National*

15 *Enquirer, Inc.* 854 F.2d 1191, 1197 (9th Cir. 1988) (the intentional act establishing specific

16 jurisdiction constituted "an event within a sequence of activities designed to use California

17 markets for the defendant's benefit").

18      Finally, as to the reasonableness of bringing Tarlow into California court – an issue as to

19 which defendants hold the burden to show unreasonableness -- Tarlow's interjection was clearly

20 California from his opening or supporting through investment and hands-on assistance, directly
or as CEO of Union Square Hospitality Group or COB of Shake Shack, of multiple restaurants
21 and retail food outlets in this state – the Tender Greens restaurant chain, the Salt and Straw
chain, and at least seven locations of Shake Shack.  *See Mavrix Photo,* 647 F.3d at 1224, *citing*
22 *Tuazon,* 433 F.3d at 1172.  Not surprisingly, plaintiff knows little about Meyer's trips to
California, or his dispatching resources to aid these restaurants in California.  As there is reason
23 to believe that Meyer has substantial contacts in California beyond what is alleged in the FAC,
discovery to flush out those contacts should be allowed.  *See Laub,* 342 F.3d at 1093
24 (jurisdictional discovery should be granted when a fuller factual showing is needed); *Youming*
*Jin,* 335 F.Supp.2d at 83, *citing Edmond,* 949 F.2d at 425 (noting an even lower standard to
25 qualify for jurisdictional discovery if plaintiff shows the existence of a conspiracy, participation
by non-resident(s) in the conspiracy, and an injury-causing act within the forum state).
26

27

28

purposeful, in that it was designed to attract and support more restaurants into the no-tipping fold. *See College Source*, 653 F.3d at 1076 (reflecting the seven factors noted earlier in this brief to weigh, most of which take up the theme of the fairness of the selected forum relative to defendant's home state or others).  As noted elsewhere in this brief, there is clearly another forum that a conspiracy complaint against Tarlow could be directed to – a New York federal court – but re-directing the case to New York would then create the flip-side problem for the California-based defendants, and force them to a forum that, on balance, holds no superior claim to host this case over a California court.

The specific jurisdiction analysis is the same for defendant Marlow as it is for its founder and CEO, Tarlow.  FAC ¶¶30-31.  The acts of a corporate entity's officers or members in the course of conducting corporate business are attributed to the entity, as a corporate entity can act only through its agent officers.  *See, e.g., American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 565-66 (1982) (under general rules of agency law, corporate employers are liable for the antitrust and other tortious actions of their officers acting within their apparent authority).   Specific personal jurisdiction is accordingly established for Marlow by virtue of CEO Tarlow's purposeful actions directed toward California.

c.   Jurisdictional Discovery Should Be Granted for Other New York-Based Defendants

As to the remaining New York-based defendants, plaintiff recognizes that, absent application of the conspiracy theory of jurisdiction (which the Ninth Circuit has yet to rule upon, as discussed below), he may need jurisdictional discovery to better crystallize and understand the California connections from and impact caused by each of those defendants.  This information is not often in the possession of a plaintiff at the outset of pleading a price-fixing conspiracy, as so much of the supportive contacts and communications take place behind the scenes and out of public view.  FAC ¶¶50, 178; *Benjamin v. Trans Union, LLC*, No. 14-07098, 2015 WL 3387158, at *2 (E.D. Pa. May 26, 2015) ("Where, as here, the information about [the] moving defendants' [forum state] business activities lies in the sole possession of [the corporations], [the plaintiff]

PLAINTIFF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER AND PERSONAL JURISDICTION

17

should have the opportunity to conduct jurisdictional discovery to cure the informational imbalance"). As the ability to discover such California contacts is not clearly futile, plaintiff should be allowed to pursue such facts through targeted jurisdictional discovery. *Laub*, 342 F.3d at 1093 (jurisdictional discovery should be granted when a fuller factual showing is needed); *Youming Jin*, 335 F.Supp.2d at 83, *citing Edmond*, 949 F.2d at 425 (noting an even lower standard to qualify for jurisdictional discovery if plaintiff shows the existence of a conspiracy, participation by non-resident(s) in the conspiracy, and an injury-causing act within the forum state). Defendants cannot meet their "high burden" to demonstrate that such efforts would be futile and of no utility to plaintiff's pleading. *Orchid Biosciences,* 198 F.R.D. at 674-75.

### (1) Defendant Crafted Hospitality, LLC

Defendant Crafted Hospitality, LLC, through its founder and manager Colicchio, expressed interest in eliminating tipping as early as 2013, and continued to look for support for those sentiments into 2015. FAC ¶¶56, 76, 80, 95, 113. Those efforts increased in intensity in 2016, when Colicchio sat on panels and in media interviews to promote ending tipping and increasing menu prices to attract more supporters. FAC ¶¶121, 129, 137. Crafted Hospitality took the Craft brand to California, where Colicchio spent substantial time to plan, open and manage Craft Los Angeles. FAC ¶¶25, 26. Not much more is currently known to plaintiff about Crafted Hospitality's California activities. Given the connection of the Craft brand to, and the sustained business of the Craft brand in, California, and given Colicchio's far-reaching efforts to eliminate tipping, plaintiff respectfully requests targeted jurisdictional discovery to flush out Crafted Hospitality's purposeful acts toward promoting no-tipping in California.

### (2) Defendants Nate Adler, Jonah Miller and Molinero, LLC

As alleged at FAC ¶¶101, 107 and 140, defendant Adler, a founder and managing member of defendant Molinero, LLC, doing business as the restaurant Huertas, has been a leader of the no-tipping "movement" established by his mentor, defendant Meyer. He was active at

PLAINTIFF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER AND PERSONAL JURISDICTION

18

drumming up support among other restaurateurs to end tipping and raise menu pricing: "Can we start something bigger than Huertas? Can we help other restaurants get to this point? If we're a leader in the movement, you've got to feel pretty good about where you're going. I'm super passionate about this. If we can get this passion to flow through the ranks, through our staff, throughout industry, then we're going to be in really good shape." Huertas' website states that "[w]e believe that this is the future of dining in New York City and are proud to lead the charge alongside our former employer and mentor Danny Meyer and his Union Square Hospitality Group." He was a regular speaker on panels addressing this topic, with fellow defendants Tarlow and Sagaria. Defendant Miller co-founded and co-manages Huertas, and supported the no-tipping decision as championed by Adler. Currently, plaintiff cannot show a supporting act aimed at California from these three defendants to satisfy the specific jurisdictional requirement. However, with defendant Adler on the vanguard of what he terms the no-tipping "movement," and with his persistent efforts to find like-minded allies in the restaurant industry, plaintiff respectfully requests the ability to take jurisdictional discovery to reveal his broad-based "movement" efforts directed toward California.

         (3) Defendants Andrew Rigie and New York City Hospitality Alliance, Inc.

      As alleged at FAC ¶¶41, 42, 75 and 121, defendant Andrew Rigie is executive director of the New York City Hospitality Alliance (the "Alliance"), an industry group active in, among other things, touting and promoting the end of tipping and an increased menu price. As Rigie himself noted at a conference sponsored by the Alliance:

> One of the most interesting things that I grapple with, and I know many of you in this room we've had these discussions. What is it going to take the industry to change … One of the big things that is holding people back … they don't want to be the test case where we get rid of tipping ... our tipped employees will get a straight hourly wage which will reduce their hourly rate and then they are going to work across the street at my competitor. And that just really seems to be the big challenge and I don't know if there is really any one way that enough restaurateurs at one time are going to make a switch and say we're going to move from tipping …". (FAC ¶75).

      Currently, plaintiff cannot show a supporting act aimed at California from these two defendants to satisfy the specific jurisdictional requirement. However, with defendant Rigie

PLAINTIFF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER AND PERSONAL JURISDICTION

19

clearly staking out a position in favor of eliminating tipping and raising menu prices on behalf of the Alliance, and with his persistent efforts to find like-minded allies in the restaurant industry, plaintiff respectfully requests the ability to take jurisdictional discovery to reveal his efforts directed toward California.

(4) Defendant Birth of the Cool, LLC

As alleged at FAC ¶¶37-40 and 99, Birth of the Cool, LLC, owns and operates Eleven Madison Park, which adopted no tipping and increased menu prices in December 2016. Currently, plaintiff cannot show a supporting act aimed at California from this defendant to satisfy the specific jurisdictional requirement.   However, as with the other defendants with respect to which needed information is publicly unavailable, plaintiff respectfully requests the ability to take jurisdictional discovery to reveal those efforts directed toward California.[7]

(5) Defendants Gabriel Stulman and Happy Cooking Hospitality, Inc.

As alleged at FAC ¶¶32, 33, and 104, defendant Happy Cooking Hospitality, Inc., headed by its founder and CEO, Gabriel Stulman, operate several restaurants, including Fedora, which enthusiastically "joined a movement of like-minded restaurants in adopting a hospitality-included model that eliminated tipping." Stulman and Happy Cooking subsequently reverted back to a tipping model at Fedora, though Stulman said he "continues to believe that [no tipping] has the potential to change hospitality for the better" and is "thankful for the support of our colleagues who remain committed."  Currently, plaintiff cannot show a supporting act aimed at

---

[7] The ownership structure of Eleven Madison Park and its sister restaurants, including NoMad Los Angeles, a California-based restaurant, remains unclear to plaintiff, even after reviewing the moving papers of Birth of the Cool and its owner-members, defendants Humm and Guidara.  In particular, it appears that an entity known as Make it Nice, LLC (though other, related Make it Nice entities also exist to confuse matters further) is affiliated with Birth of the Cool – though the nature of such affiliation is unclear.  The Delaware corporation to which these defendants refer, *see, e.g.,* Humm Decl, ¶13, is likely Make it Nice, LLC.  Make it Nice's website lists Eleven Madison Park and NoMad as part of their restaurant group.  Given this confusion, and the lack of clarity on management structure supplied by these defendants' moving papers, plaintiff respectfully requests discovery to sort out the corporate structure and any hierarchy, not only for purposes of developing facts supporting specific jurisdiction for Birth of the Cool, but also to develop facts supporting general jurisdiction following from the continuous and ongoing operation of the California-based NoMad restaurant.

California from these two defendants to satisfy the specific jurisdictional requirement. However, with defendant Stulman clearly staking out a position in favor of eliminating tipping and raising menu prices, guided and supported by like-minded allies in the restaurant industry, plaintiff respectfully requests the ability to take jurisdictional discovery to reveal his efforts directed toward California.

(6) Defendants Momofuku 232 Eighth Avenue, LLC and Momo Holdings, LLC

As alleged at FAC ¶¶28, 47, 56, 106, 135 and 157, Momofuku 232 Eighth Avenue, LLC ("Momofuku 232") owns and operates Momofuku restaurant, which has eliminated tipping and increased menu prices. For its part, Momo Holdings, LLC appears to be a parent to Momofuku and other entities operating restaurants in the Momo family across the country, including Majordomo in California. As noted earlier, as the primary chef, founder and CEO of the Momo family of companies, CEO Chang has promoted the elimination of tipping since 2013, has implemented the elimination of tipping and raised menu prices at Momofuku, and has worked to gain cohorts and allies in this cause among other restaurant owners. Currently, plaintiff cannot show a supporting act aimed at California from Momofuku 232 and Momo Holdings to satisfy the specific jurisdictional requirement. However, as with the other defendants with respect to which needed information is publicly unavailable, plaintiff respectfully requests the ability to take jurisdictional discovery to reveal those efforts directed toward California.[8]

3. <u>Personal Jurisdiction of All Named Defendants Follows From Their Roles as Co-Conspirators Under the Conspiracy Theory of Jurisdiction</u>

As noted above, it is unclear whether the conspiracy theory of personal jurisdiction is viable in this circuit. *See Underwager,* 69 F.3d at 364 (leaving open viability of conspiracy theory of jurisdiction). Plaintiff advances this theory as an alternative road to establishing personal jurisdiction, in that, unlike in *Underwager,* plaintiff has properly pleaded a conspiracy –

---

[8] The ownership relationship among Momo Holdings, Momofuku 232 Eighth Avenue and what appears to be other related companies remains unclear to plaintiff, even after reviewing the moving papers of the Momo defendants. Given this confusion, plaintiff respectfully requests discovery to sort out the corporate structure and any hierarchy, but also to develop facts supporting general jurisdiction following from the continuous and ongoing operation of the California-based Majordomo restaurant.

PLAINTIFF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER AND PERSONAL JURISDICTION

21

that is, an agreement among restaurateurs to do away with the time-honored tradition of tipping and instead to increase menu prices. With that requirement met, it falls to this Court to pick up where the *Underwager* court left off -- to decide whether conspiracy jurisdiction is viable and available for plaintiff to assert. The formation of a price-fixing conspiracy is amply alleged in the FAC, *see, e.g.,* ¶¶1-10, 56-58, 64, 66-67, 70-72, 107, 121, 123-25, 127-29, 132, 134, 138, 140, 147, 152-53 (attracting participants to stop tipping and raise menu prices, and coordinating roll-out near in time to one another), as are the acts carried out in California in furtherance of the price-fixing conspiracy, *see, e.g.,* ¶¶ 70-72 (examples of coordinated roll-out and implementation of no-tipping and higher menu prices among California restaurants).

In light of the challenging reality, as alleged at FAC ¶¶50 and 178, that price-fixing conspiracies are often conducted secretly and not out in the open, thus making it difficult for a plaintiff to ascertain needed jurisdictional facts with respect to each defendant at the time of pleading, and that a federal court in New York offers no better alternative to keeping the alleged conspiracy together in one court given the likely attenuation to the California-based defendants, plaintiff requests that the Court, as an alternative to the more established theories discussed above, consider the viability and application of the conspiracy theory of jurisdiction to any defendants in this case not found to be properly called into this Court under a general jurisdiction or a *Calder*-based specific jurisdiction theory.

### 4. Absent Establishment of Personal Jurisdiction for Any Defendant, Jurisdictional Discovery and Leave to Amend is Appropriate

Should the Court find that the showing supporting jurisdiction for any defendant falls short, plaintiff respectfully requests that the Court order jurisdictional discovery to enable plaintiff to amend the FAC to include facts further connecting such defendants to California. Such discovery would be neither a fishing expedition nor a clearly futile pursuit. Rather, plaintiff has already alleged that several of the defendants have opened California-based restaurants, and thus established at a minimum an ongoing commercial foothold in this state, and that other defendants have acted in coordination, and in substantial part secretly, to further the

elimination of tipping and increased menu prices in urban restaurant hubs such as New York and the San Francisco Bay Area.  On the strength of these allegations, jurisdictional discovery should be ordered.  *See Wells Fargo,* 556 F.2d at 430 n.24 (jurisdictional discovery can be denied to a plaintiff only when it is clear to the court that such discovery would not reveal facts sufficient to establish jurisdiction; *Laub,* 342 F.3d at 1093 (jurisdictional discovery should be granted when a fuller factual showing is needed).  Defendants cannot meet their "high burden" in convincing the court to prevent jurisdictional discovery because it is not clear that such discovery would be futile and of no utility to the plaintiff.  *Orchid Biosciences,*198 F.R.D. at 674-75.

As noted above, the test is even more lenient in the context of an alleged conspiracy. Plaintiff need show only (1) the existence of a conspiracy, (2) participation by the non-resident(s) in the conspiracy, and (3) an injury-causing act within the forum state.  *Youming Jin v. Ministry of State Security*, 335 F.Supp.2d 72, 83, *citing Edmond v. U.S. Postal Service General Counsel,* 949 F.2d 415, 425 (D.D.C. 1991) (noting that is an abuse of discretion to deny jurisdictional discovery if these three elements are met).  *Accord Andres Industries, Inc. Chen Sun Lan,* 2014 WL 6611227, *9 (upon showing of personal jurisdiction over co-defendants, jurisdictional discovery is appropriate for non-resident co-conspirator, without any further showing on the part of the non-resident).   Plaintiff has pleaded a *prima facie* price-fixing conspiracy, with participation by both California and New York-based defendants, and an injury to a diner in at least one of the named California restaurants.  Jurisdictional discovery as to the California connections of the New York-based defendants is therefore appropriately ordered.

### C.   Venue Should Remain in this District

Several defendants challenge venue of this case in this district.  The venue question is a distinct one from that of personal jurisdiction, but the two inquiries overlap.  Choice of venue entails reference to two governing statutes – one specific to antitrust cases as found in the Clayton Act, and the generally applicable venue statute.  *Compare* 15 U.S.C. Section 22 (2012) (providing for venue in any district in which a corporate defendant "may be found" or "transacts business") *with* 28 U.S.C. Section 1391(b)(2) (2012) (providing for venue in the state in "a judicial district in which a substantial part of the events or omissions giving rise to the claim

PLAINTIFF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER AND PERSONAL JURISDICTION

23

occurred...".  This circuit has ruled that an antitrust plaintiff can rely on the general venue statute in selecting the location of a court.  *Go-Video v. Akai Electric Co., Ltd.*, 885 F.2d 1406, 1407-13 (9th Cir. 1989) (even when plaintiff relies on the Clayton Act for broader service of process reach, plaintiff can still rely on the general venue statute in selecting a court).  Here, many of the restaurants participating in the alleged price-fixing conspiracy are located and operate in this district.  Venue is therefore proper in this district with respect to all defendants pursuant to either 15 U.S.C. Section 22 or 28 U.S.C. Section 1391(b)(2).

IV.   CONCLUSION

Plaintiff has established standing by virtue of having paid for food in several restaurants whose owners have collusively raised menu prices.  Further, plaintiff has alleged an antitrust conspiracy across state boundaries affecting interstate commerce, concerning restaurants which operate in and affect interstate commerce.  Moreover, plaintiff has established this Court's personal jurisdiction generally over those New York-based defendants with substantial, continuous or systematic business contacts in California, and specifically over those New York-based defendants who have aimed conduct supportive of eliminating tipping and raising menu prices at California.  To the extent plaintiff does not currently have enough information to establish the required California contacts for one or more defendants, and to the extent that the Court does not adopt the conspiracy theory of jurisdiction, then plaintiff respectfully requests an order providing for targeted jurisdictional discovery under the applicable lenient legal standard.

Respectfully Submitted,

Date:  April 16, 2018          LAW OFFICES OF ANDREW WOLFF, P.C.

                              */s/ David Lavine*_____
                              David Lavine
                              Co-Counsel for Plaintiff
                              TIMOTHY BROWN

MAILLY LAW

*/s/ Guy E. Mailly*
Guy E. Mailly
Co-Counsel for Plaintiff
TIMOTHY BROWN

LAW OFFICE OF STEVEN E. UHR, PLLC

*/s/ Steven E. Uhr*
Steven E. Uhr, Admitted *Pro Hac Vice*
Co-counsel for Plaintiff
TIMOTHY BROWN