**BAKER BOTTS L.L.P.**
Jonathan A. Shapiro (Cal. Bar No. 257199)
jonathan.shapiro@bakerbotts.com
Stuart C. Plunkett (Cal. Bar No. 187971)
stuart.plunkett@bakerbotts.com
Ariel D. House (Cal. Bar No. 280477)
ariel.house@bakerbotts.com
101 California Street, Suite 3600
San Francisco, California 94111
Telephone:   (415) 291-6200
Facsimile:   (415) 291-6300

*Attorneys for Defendants*
*UNION SQUARE HOSPITALITY*
*GROUP, LLC, DANIEL MEYER,*
*and SABATO SAGARIA*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| TIMOTHY BROWN, | ) CASE NO. 4:17-CV-05782-JSW |
| Plaintiff, | ) |
| | ) **DEFENDANT DEFENDANTS UNION** |
| | ) **SQUARE HOSPITALITY GROUP, LLC,** |
| v. | ) **DANIEL MEYER, SABATO SAGARIA,** |
| | ) **MARLOW, INC., ANDREW TARLOW,** |
| 140 NM LLC, *et al.*, | ) **MOLINERO LLC, dba HUERTAS, JONAH** |
| | ) **MILLER, NATE ADLER, NEW YORK CITY** |
| Defendants. | ) **HOSPITALITY ALLIANCE, INC., AND** |
| | ) **ANDREW RIGIE'S REPLY IN SUPPORT OF** |
| | ) **MOTION TO DISMISS FIRST AMENDED** |
| | ) **COMPLAINT PURSUANT TO FED. R. CIV. P.** |
| | ) **12(b)(2)** |
| | ) |
| | ) Date:        June 1, 2018 |
| | ) Time:        9:00 a.m. |
| | ) Courtroom:  5 |
| | ) Judge:        Hon. Jeffrey S. White |
| | ) |
| | ) Action Filed: October 6, 2017 |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................... 1

II.    SUMMARY OF ARGUMENT ........................................................................... 3

III.   ARGUMENT ...................................................................................................... 4

     A.     The Court May Not Exercise Specific Jurisdiction Over the New York
           Defendants Based on the *Calder* Effects Test. ...................................... 4

     B.     Plaintiff's Discredited "Conspiracy Jurisdiction" Theory Cannot Provide
           an "Alternative Road" to Personal Jurisdiction. ..................................... 7

     C.     Plaintiff Is Not Entitled to Jurisdictional Discovery. ........................... 10

IV.   CONCLUSION ................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Andes Indus., Inc. v. Chen Sun Lan,*
  2:14-CV-00400-APG, 2014 WL 6611227 (D. Nev. Nov. 19, 2014) ....................................12

*Barantsevich v. VTB Bank,*
  954 F. Supp. 2d 972 (C.D. Cal. 2013) ...................................................................................11

*BNSF Railway Co. v. Tyrrell,*
  137 S. Ct. 1549 (2017) .............................................................................................................1

*Boschetto v. Hansing,*
  539 F.3d 1011 (9th Cir. 2008) ...............................................................................................11

*Brayton Purcell LLP v. Recordon & Recordon,*
  606 F.3d 1124 (9th Cir. 2010) .................................................................................................5

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County,*
  137 S. Ct. 1773 (2017) ................................................................................................1, 2, 10

*Burger King Corp. v. Rudzewicz,*
  471 U.S. 462 (1985) .................................................................................................................2

*Calder v. Jones,*
  465 U.S. 783 (1984) ......................................................................................................3, 4, 5, 9

*Camp W. Recorders Inc. v. Gibbs,*
  CV 13-06525 BRO, 2013 WL 12191723 (C.D. Cal. Oct. 28, 2013).....................................14

*Chirila v. Conforte,*
  47 Fed. Appx. 838 (9th Cir. 2002) ......................................................................................4, 8

*Daimler AG v. Bauman,*
  134 S. Ct. 746 (2014) ...........................................................................................................1, 6

*Edmond v. U.S. Postal Serv. Gen. Counsel,*
  949 F.2d 415 (D.C. Cir. 1991) ...............................................................................................12

*Gemcap Lending I, LLC v. Grow Michigan, LLC,*
  2:17-CV-07092-ODW (AS), 2018 WL 654409 (C.D. Cal. Jan. 31, 2018) ...........................13

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
  564 U.S. 915 (2011)..................................................................................................................1

*Green v. Advance Ross Elecs. Corp.,*
  86 Ill. 2d 431 (1981) ................................................................................................................9

*Headspace Int'l, LLC v. New Gen Agric. Servs., LLC,*
  No. CV-16-3917-RGK, 2016 WL 9275781 (C.D. Cal. Nov. 15, 2016)...............................3, 5

*HK China Grp., Inc. v. Beijing United Auto. & Motorcycle Mfg. Corp.*,
   417 F. App'x 664 (9th Cir. 2011) ...................................................................................3, 5

*In re Dental Supplies Antitrust Litig.*,
   No. 16-CIV-696 (BMC)(GRB), 2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017)..................4, 8

*In re Dynamic Random Access Memory (Dram)*,
   No. C 02-1486 PJH, 2005 WL 2988715 (N.D. Cal. Nov. 7, 2005)............................................8

*In re Vitamins Antitrust Litig.*,
   94 F. Supp. 2d 26 (D.D.C. 2000) ...........................................................................................9

*Kipperman v. McCone*,
   422 F. Supp. 860 (N.D. Cal. 1976) ....................................................................................2, 8

*Lang v. Morris*,
   823 F. Supp. 2d 966 (N.D. Cal. 2011) .................................................................................11

*Liberty Media Holding, LLC v. Tabora*,
   No. 11-CV-651-IEG JMA, 2012 WL 28788 (S.D. Cal. Jan. 4, 2012) ...................................14

*Mavrix Photo, Inc. v. Moguldom Media Grp. LLC*,
   2011 WL 1134187 (C.D. Cal. Mar. 28, 2011) ......................................................................13

*McGibney v. Retzlaff*,
   No. 14-CV-01059-BLF, 2015 WL 3807671 (N.D. Cal. June 18, 2015) ...................................2

*Mehr v. Féderation Internationale de Football Ass'n*,
   115 F. Supp. 3d 1035 (N.D. Cal. 2015) ...............................................................................14

*Naartex Consulting Corp. v. Watt*,
   722 F.2d 779 (D.C. Cir. 1983) .............................................................................................12

*Perkins v. Benguet Consolidated Mining Co.*,
   342 U.S. 437 (1952).................................................................................................................6

*Phillips v. Hernandez*,
   No. 12-CV-748-MMA (WMC), 2012 WL 5185848 (S.D. Cal. Oct. 18, 2012) .................4, 11

*Piedmont Label Co. v. Sun Garden Packing Co.*,
   598 F.2d 491 (9th Cir.1979) ...................................................................................................8

*Ploense v. Electrolux Home Products, Inc.*,
   377 Ill. App. 3d 1091 (2007) .................................................................................................9

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015) ...............................................................................................6

*Sher v. Johnson*,
   911 F.2d 1357 (9th Cir. 1990) ...............................................................................................5

*Smith v. Jefferson County Bd. of Educ.*,
   378 Fed. Appx. 582 (7th Cir. 2010) .......................................................................................9

*Textor v. Bd. of Regents of N. Illinois Univ.*,
  711 F.2d 1387 (7th Cir. 1983) ...................................................................................9

*U.S. Vestor, LLC v. Biodata Info. Tech. AG*,
  290 F. Supp. 2d 1057 (N.D. Cal. 2003) ...............................................................4, 8

*Uhr v. Responsible Hosp. Inst., Inc.*,
  No. 10-CV-4945 PJS/TNL, 2011 WL 4091866 (D. Minn. Sept. 14, 2011) .....................4, 10

*Underwager v. Channel 9 Australia*,
  69 F.3d 361 (9th Cir. 1995) ......................................................................................8

*Videx, Inc. v. Micro Enhanced Tech., Inc.*,
  6:12-CV-0065-AA, 2012 WL 1597380 (D. Or. May 4, 2012)...........................................4, 13

*Walder v. Fiore*,
  134 S. Ct. 1115 (2014)......................................................................................1, 2, 8

*Wells Fargo & Co. v. Wells Fargo Express Co.*,
  556 F.2d 406 (9th Cir. 1977) ..................................................................................11

*Yolo Med., Inc. v. Lila Enter., LLC*,
  No. CV 14-06537-AB (RZX), 2014 WL 12558314 (C.D. Cal. Nov. 21, 2014) .....................6

*Youming Jin v. Ministry of State Sec.*,
  335 F. Supp. 2d 72 (D.D.C. 2004) ...........................................................................11

**CONSTITUTIONAL SOURCES**

U.S. Const. amend XIV ..........................................................................................1, 2, 10

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(2).............................................................................................3

Fed. R. Civ. P. 12(b)(6).............................................................................................10

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff has no answer to the moving New York Defendants' Motion to Dismiss for lack of personal jurisdiction.  The Opposition does not even try to address any of the 29 cases cited by Defendants, starting with the five recent Supreme Court precedent that bar Plaintiff's attempt to sue these out-of-staters in California.  Nor is there any reason to believe that, after two failed attempts and full notice of jurisdictional arguments and authorities, Plaintiff could ever satisfy the Fourteenth Amendment.  Instead, the Opposition retypes the same inadequate "facts" and "information and belief" from the original complaint and the First Amended Complaint (as if redundancy cured inadequacy), relies on allegations that are not in the FAC (which is not fair advocacy, and here would not make a difference anyway), and proposes an alternative—but discredited—"road" to jurisdiction under a uniquely "lenient" standard.  Ultimately, Plaintiff reaches for "jurisdictional discovery" to find the California connections the law required him to have *before* coming to federal court.

***First***, there is a reason why Plaintiff does not address *any* of the precedent cited by the New York Defendants—literally opposing the Motion to Dismiss without addressing the law upon which it is based.  The Supreme Court has spent the last several years reversing courts (and in particular, those within the Ninth Circuit) for the exercise of "loose and spurious" personal jurisdiction that violates out-of-state defendants' rights under the Fourteenth Amendment.[1]  That Plaintiff himself is from Minnesota, who has come to California to sue New Yorkers on behalf of a purported national class, is precisely the sort of red flag raised, and lowered, last year by the Supreme Court in *Bristol Myers*.

***Second***, the Opposition cannot avoid dismissal with chronic repetition of allegations that, as a matter of law, cannot amount to personal jurisdiction.  Plaintiff, for example, cannot explain

---

[1]   *See, e.g., Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011); *Daimler AG v. Bauman*, 571 U.S. 117 (2014); *Walden v. Fiore*, 134 S. Ct. 1115 (2014); *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773 (2017); *BNSF Railway Co. v. Tyrrell*, 137 S. Ct. 1549 (2017).

how miscellaneous Twitter posts are any different than the "internet postings floating in the ether" that cannot support jurisdiction in California. *See McGibney v. Retzlaff*, No. 14-CV-01059-BLF, 2015 WL 3807671, at *4 (N.D. Cal. June 18, 2015). Plaintiff again emphasizes that some New York Defendants "travelled to California one [sic] two separate occasions" (industry conferences in 2015 and 2016), and that a since-dismissed California defendant made the opposite trip (once visiting New York City for a "USHG town hall"). (Plaintiff's Opposition, Dkt. 157 ("Opp.") at 14.) Plaintiff does not explain how two visits to California, and one trip back east, are any better than the "'random, fortuitous, or attenuated'" contacts that never justify personal jurisdiction. *Walden*, 134 S. Ct. at 1123 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Plaintiff certainly has not pleaded jurisdiction by referring in the Opposition to facts that are not even in the FAC—such as Mr. Meyer's never-alleged "hands-on assistance" to non-party "food outlets in this state" (*see* Opp. at 16, n. 6), at no time in particular, and with no relationship to Hospitality Included or anything else about this case.

**Third**, Plaintiff cannot pave an "alternative road" to personal jurisdiction with a dead-end "conspiracy theory." (Opp. at 21–22.) Plaintiff concedes his theory has never been held "viable and available" in the Ninth Circuit (*id*. at 22), which is a generous way to describe an argument that has been rejected and even deemed "frivolous." *See Kipperman v. McCone*, 422 F. Supp. 860, 873 n.14 (N.D. Cal. 1976). All roads must traverse the Fourteenth Amendment, which is why modern precedent will not tolerate "a more lenient theory . . . with respect to an alleged conspiracy." *Compare* Opp. at 9 with *Bristol-Myers*, 137 S. Ct. at 1781 (warning of the "danger of the California approach").[2]

**Finally**, jurisdictional discovery is not the answer. Plaintiff has twice failed to meet his affirmative burden to plead a basis for this Court to exercise personal jurisdiction over *every* New York Defendant. (*See* Motion to Dismiss Pursuant to Rule 12(b)(2), Dkt. 144 ("Motion"),

---

[2]     For the same reason, there is no jurisdictional exception for what the Opposition refers to as the "distance court problem." (Opp. at 15.) As often happens, Plaintiff seeks to bring a single lawsuit against a large and geographically diverse group of defendants, but cannot find a single court with jurisdiction over everyone. That inconvenient reality cannot displace a Fourteenth Amendment that protects defendants. (*See infra* at 4–14.)

at 7.)  Plaintiff cannot now keep the New York Defendants in this case with trust me assurances that counsel are "relatively certain" evidence may exist, and/or that the missing allegations "are plausibly available," culminating in a generic plea for "jurisdictional discovery to secure those facts."  (Opp. at 1, 9.)  That is backwards.  The law is clear that Plaintiff must establish a "colorable basis" for exercising jurisdiction over each defendant ***before*** asking the Court to exercise its discretion for jurisdictional discovery (and for this reason, appellate courts consistently decline to second-guess trial courts for denying such unfounded requests for discovery in search of jurisdiction).

## II.    <u>SUMMARY OF ARGUMENT</u>

The Opposition only confirms that Plaintiff's FAC should be dismissed without leave to amend.  Plaintiff concedes that he has twice failed to plead *any* facts that would enable this Court to exercise specific personal jurisdiction over *five* of the moving New York Defendants, an admission which justifies their immediate, and permanent, dismissal from this case. Nonetheless, Plaintiff charges forward with an Opposition that raises just three arguments in support of his effort to evade dismissal, none of which has any merit.

***First***, Plaintiff argues that the Court may exercise specific jurisdiction over some of the New York Defendants, based on a diluted version of the *Calder* effects test.  Plaintiff is unable, however, to point to allegations in the FAC which demonstrate that any of those defendants committed an intentional act expressly aimed at California, which then caused harm in this state. Instead, Plaintiff contends that some of the Defendants were involved in hosting a town hall in New York, posting on Twitter (to public at large), creating a logo (which is also available to the public at large), and travelling to California on just two occasions, none of which suffice to establish personal jurisdiction.  *See HK China Grp., Inc. v. Beijing United Auto. & Motorcycle Mfg. Corp.*, 417 F. App'x 664, 666 (9th Cir. 2011); *Headspace Int'l, LLC v. New Gen Agric. Servs., LLC*, No. CV-16-3917-RGK (GJSx), 2016 WL 9275781, at *4 (C.D. Cal. Nov. 15, 2016).

***Second***, Plaintiff encourages this Court to travel down an "alternative road" to find personal jurisdiction based on a "more lenient" standard that Plaintiff contends should apply where the complaint attempts to allege a conspiracy.  The Ninth Circuit and other California

courts have rejected this discredited theory, and other district courts have refused to apply this theory in the antitrust context. *See Chirila v. Conforte*, 47 Fed. Appx. 838 (9th Cir. 2002); *U.S. Vestor, LLC v. Biodata Info. Tech. AG*, 290 F. Supp. 2d 1057, 1065 (N.D. Cal. 2003); *In re Dental Supplies Antitrust Litig.*, No. 16-CIV-696 (BMC)(GRB), 2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017).  Plaintiff ignores these authorities, and instead cites to outdated and out-of-circuit case that has since been overruled.  Even if conspiracy jurisdiction could apply, Plaintiff's attempt to invoke it would fail, because the allegations in the FAC do not establish the existence of an unlawful conspiracy.  *See Uhr v. Responsible Hosp. Inst., Inc.*, No. 10-CV-4945 PJS/TNL, 2011 WL 4091866, at *10 (D. Minn. Sept. 14, 2011), *aff'd*, 473 F. App'x 517 (8th Cir. 2012).

*Finally*, Plaintiff asks the Court to allow him to conduct jurisdictional discovery to locate the facts that he is required to have **before** suing defendants in federal court. *Phillips v. Hernandez*, No. 12-CV-748-MMA (WMC), 2012 WL 5185848, at *7 (S.D. Cal. Oct. 18, 2012). The Court should not subject the New York Defendants to the burden and expense of such a fishing expedition, based on nothing more than Plaintiff's "purely speculative allegations of attenuated jurisdictional contacts." *Videx, Inc. v. Micro Enhanced Tech., Inc.*, 6:12-CV-0065-AA, 2012 WL 1597380, at *2 (D. Or. May 4, 2012).

The FAC should be dismissed without leave to amend.

## III.   ARGUMENT

### A.   The Court May Not Exercise Specific Jurisdiction Over the New York Defendants Based on the *Calder* Effects Test.

Plaintiff ignores the recent Supreme Court precedent cited by the New York Defendants, and instead argues that some of them are subject to specific personal jurisdiction under a diluted version of the *Calder* effects test.  (Opp. at 13 (citing *Calder v. Jones*, 465 U.S. 783 (1984)). The *Calder* effects test goes to the first prong of the three-part test to determine whether a party has sufficient minimum contacts to be subject to specific jurisdiction.[3]  Under the *Calder* effects test, purposeful direction is found where the defendant "1) committed an intentional act, (2) *expressly aimed at the forum state,* (3) causing harm that the defendant knows is likely to be

[3]    The three-part test is set forth in the Motion at 8.

1  suffered in the forum state." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124,

2  1128 (9th Cir. 2010) (emphasis added).

3    Plaintiff's attempt to invoke personal jurisdiction over some of the New York Defendants

4  under the *Calder* effects test fails for a number of reasons, as explained below.

5    **The USHG Defendants.**  The Opposition spotlights the superficiality of the FAC.  Once

6  again, Plaintiff posits that Mr. Sagaria's two visits to California suffice for personal jurisdiction

7  as "intentional acts expressly aimed at the California urban restaurant market."  (Opp. at 14.)

8  USHG did not "commit an intentional act . . . expressly aimed at California" by hosting a town

9  hall in New York, even if one attendee was a former defendant who flew in from California.

10  (*Id.*)  Additionally, Plaintiff contends that Mr. Meyer and USHG established a "help-line," to

11  provide information about the Hospitality Included model, which presumably is available to

12  anyone with a telephone, even though neither he nor USHG are alleged to operate a restaurant in

13  California with the Hospitality Included model or a tipping model.  (*Id.*)  Finally, Plaintiff alleges

14  that Mr. Meyer and USHG "supported, expressed encouragement to, and shared information

15  with" the alleged California co-conspirators by, among other things, using Twitter posts to thank

16  Defendant Camino for "leading the way," and stating that USHG was honored to "share in the

17  dialogue" and learn from West Coast restaurants.  (*Id.*)

18    These allegations come nowhere close to establishing specific personal jurisdiction over

19  the USHG Defendants.  Courts have repeatedly dismissed allegations that are based on such

20  tenuous contacts with the forum state.  *See, e.g., HK China Grp., Inc.,* 417 F. App'x at 666

21  (attendance at a few meetings in California did not constitute purposeful availment); *Sher v.*

22  *Johnson*, 911 F.2d 1357, 1363 (9th Cir. 1990) ("three trips to California were discrete events

23  arising out of a case centered entirely in Florida").  Nor can two tweets, one publicly

24  acknowledging a discussion with West Coast restaurants, and the other congratulating a

25  California restaurant for ending regressive tipping practices, support specific jurisdiction.  Kind

26  words, encouragement, and social justice advocacy via Twitter are not intentional acts aimed at a

27  particular state.  *See Headspace Int'l, LLC*, 2016 WL 9275781, at *4 ("[s]ubjecting someone to

28

personal jurisdiction in California for merely having contact with Californians on social media would subject millions of people to personal jurisdiction in California").

Next, the Opposition contends in a footnote, and without any legal analysis, that Paragraph 48 of the FAC allows this Court to exercise *general* jurisdiction over Mr. Meyer, "based on what appears to be substantial, systematic, and continuous contacts in California from his opening or supporting through investment and hands-on assistance . . . of multiple restaurants and retail food outlets in this state." (Opp. at 15–16, n. 6 (citing FAC ¶ 48).) This is a legal conclusion, not a factual pleading. Plaintiff completely ignores the law set forth in Section III(4) of the Motion that passive investments in different restaurants that are not part of the alleged conspiracy are legally irrelevant. (*See* Motion at 12–13.) Those passive minority investments in Shake Shack, Salt & Straw, and Tender Greens are not the "continuous and systematic" affiliations that render him "essentially at home" in California—which is what Plaintiff needs to establish general personal jurisdiction over Mr. Meyer. *See Daimler AG*, 571 U.S. at 749–50; *see also Yolo Med., Inc. v. Lila Enter., LLC*, No. CV 14-06537-AB (RZx), 2014 WL 12558314, at *2 (C.D. Cal. Nov. 21, 2014) (quoting *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 445 (1952)).[4]

**The Marlow Defendants.** Plaintiff argues that the Marlow Defendants may be subject to specific jurisdiction, because Mr. Tarlow assisted in creating a gratuity-free logo, which could be downloaded from a website available to the public. (Opp. at 16.) Plaintiff contends this act "was expressly aimed at restaurants beyond the local New York market, including those in California." (*Id.*) But the FAC provides no facts in support of this assertion, other than Plaintiff's conclusory speculation. Plaintiff does not, and cannot in good faith, allege that Mr. Tarlow himself or anyone on his or Marlow, Inc.'s behalf ever solicited a single California restaurant or made any agreement with one concerning *free* use of the logo. Creating a logo,

---

[4]      As a matter of law, even a wholly-owned subsidiary in California would not suffice. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015) ("The existence of a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction.") (internal quotations and citations omitted).

which is publicly available for free, cannot constitute an act that is purposefully directed toward a particular state. *See NuboNau, Inc. v. NB Labs, Ltd*, No. 10CV2631-LAB BGS, 2012 WL 843503, at *6 (S.D. Cal. Mar. 9, 2012) ("promot[ing] one's business" via the Internet does not constitutes "purposeful direction at California").

Moreover, it is telling that plaintiff declines to identify a single restaurant in California that has made use of the logo. Indeed, costly and unwarranted jurisdictional discovery would only show that not one of the California defendants has made use of the logo. Whatever plaintiff's purported claims are based on, they are certainly *not* related to any of the Marlow defendants' activities in California. In short, none of the Marlow defendants' alleged acts can fairly be said to have been expressly aimed at California, a market in which Marlow, Inc. does not even compete. *Burger King Corp.,* 471 U.S. at 476-477 (defendant's contacts with the forum state must not only be sufficient, but such that the maintenance of the action will not "offend traditional notions of fair play and substantial justice.")

**The NYHA Defendants and the Molinero Defendants.** Plaintiff now admits—two complaints later—that with respect to Defendants Adler, Miller, and Molinero, he "cannot show a supporting act aimed at California from these three defendants to satisfy the specific jurisdictional requirement." (Opp. at 19.) Similarly, as for Defendants Rigie and NYHA, Plaintiff concedes that he "cannot show a supporting act aimed at California from these two defendants to satisfy the specific jurisdictional requirement." (*Id*.) The Court should accept this concession and dismiss these defendants from this lawsuit, none of whom should ever have been subject to the expense of twice briefing motions to dismiss complaints that Plaintiff concedes he never had a basis to file. Additionally, for the reasons explained in Section III(C) below, the Court should deny Plaintiff's request for jurisdictional discovery from these defendants.

**B.** **Plaintiff's Discredited "Conspiracy Jurisdiction" Theory Cannot Provide an "Alternative Road" to Personal Jurisdiction.**

Recognizing that he cannot satisfy the constitutional standard, Plaintiff instead urges "a more lenient theory" of personal jurisdiction based on "an alleged conspiracy." (Opp. at 9.) That "alternative road" is a dead end.

1   *First*, "conspiracy jurisdiction" has been routinely rejected by the Ninth Circuit and other

2   California courts, which Plaintiff concedes.  (Opp. at i, 9.)  Plaintiff errs, however, in suggesting

3   that conspiracy jurisdiction still remains a potentially viable theory.  In *Chirila*, the Ninth Circuit

4   explained that "[t]here is a great deal of doubt surrounding the legitimacy of this conspiracy

5   theory of personal jurisdiction," several California district courts and legal commentators had

6   rejected the theory, and the Ninth Circuit had previously "rejected an analogous theory."  47 Fed.

7   Appx. at 842–43 (citing *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 492 (9th

8   Cir. 1979) (rejecting a conspiracy theory of venue)).  The Ninth Circuit also noted that

9   conspiracy jurisdiction had previously been rejected in *Underwager v. Channel 9 Australia*, 69

10  F.3d 361, 364 (9th Cir. 1995).  *Id*.  The notion that the Ninth Circuit may reverse course and

11  decide to embrace the conspiracy theory is particularly unfounded in light of the Supreme

12  Court's many recent efforts to rein in jurisdictional theories that fail to consider the defendant's

13  "own contacts" with the forum state.  *Walden*, 134 S. Ct. at 1124.[5]

14       Indeed, just last year, Plaintiff's theory was rejected in another antitrust lawsuit, *In re

15  Dental Supplies Antitrust Litig.*, 2017 WL 4217115.  The court refused to exercise specific

16  personal jurisdiction where, as here, a non-resident plaintiff sued non-resident defendants under

17  the nebulous "conspiracy jurisdiction" banner.  *Id*. at *7–9.  Nowhere does Plaintiff address, or

18  even attempt to distinguish, *In re Dental Supplies*.  (*See* Motion at 14.)

19       *Second*, Plaintiff's argument that "multiple federal and state courts have adopted a more

20  lenient theory of establishing personal jurisdiction with respect to an alleged conspiracy" rests on

21  a single, outdated, and out-of-circuit case that has since been overruled.  (Opp. at 9.)  Nearly

---

22  [5]       Like the Ninth Circuit, this District has repeatedly refused to recognize a "conspiracy

23  theory."  In *In re Dynamic Random Access Memory (Dram)Antitrust Litig.*, No. C 02-1486 PJH,
    2005 WL 2988715, at *8 (N.D. Cal. Nov. 7, 2005), the court acknowledged that "[t]he

24  conspiracy theory doctrine is not a generally accepted theory" and "decline[d] plaintiffs'

25  invitation to adopt the conspiracy theory of personal jurisdiction."  *Id*. at *8; *see also U.S.
    Vestor*, 290 F. Supp. 2d at 1065 ("California law does not recognize conspiracy as a basis for

26  acquiring jurisdiction over a foreign defendant"); *Kipperman*, 422 F. Supp. at 873 n.14 (rejecting

27  as "frivolous" the "contention that personal jurisdiction, the exercise of which is governed by
    strict constitutional standards, may depend on upon the imputed conduct of a co-conspirator" and

28  determining that "personal jurisdiction over any non-resident individual must be premised upon
    *forum-related acts personally committed by the individual*") (emphasis added).

---

twenty years ago, in *In re Vitamins Antitrust Litig.*, 94 F. Supp. 2d 26 (D.D.C. 2000), a district court in the District of Columbia applied Illinois law and determined that "plaintiffs' allegations as they now stand are insufficient to establish conspiracy jurisdiction over these alien corporations." *Id.* at 33 (citing *Green v. Advance Ross Elecs. Corp.*, 86 Ill. 2d 431 (1981)).[6]

Plaintiff contends that in *In re Vitamins*, the court found "*Calder* 'effects-test' jurisdiction in California and Illinois." (Opp. at 9.) Nowhere in the opinion, however, does the *In re Vitamins* court discuss *Calder*, the effects test, or any California contacts at all. *See In re Vitamins Antitrust Litig.*, 94 F. Supp. 2d 26. Plaintiff further argues that under *In re Vitamins* and *Textor v. Bd. of Regents of N. Illinois Univ.*, 711 F.2d 1387 (7th Cir. 1983), "jurisdiction established over one co-conspirator is jurisdiction over all co-conspirators" (Opp. at 9), even though that proposition finds no support in either case.[7] Indeed, Plaintiff's exact argument was rejected by the Illinois Supreme Court in the very opinion relied upon by the *In re Vitamins* court. *See Green,* 86 Ill. 2d at 44 ("***It is not true that if one conspirator is subject to Illinois jurisdiction so are all the others***.") (emphasis added).

Worse still, the only case upon which Plaintiff relies, *In re Vitamins*, and more generally, the very notion of "conspiracy jurisdiction," has since been expressly disavowed by both the Illinois Supreme Court and the Seventh Circuit. *See Ploense v. Electrolux Home Products, Inc.*, 377 Ill. App. 3d 1091, 1105 (2007) (explaining that after *Green*, the Illinois Supreme Court "effectively scuttl[ed]" the theory of conspiracy jurisdiction); *see also Smith v. Jefferson County*

---

[6]     The *In re Vitamins* court relied on an opinion of the Illinois Supreme Court, *Green v. Advance Ross Elecs. Corp.*, 86 Ill. 2d 431 (1981), in which the Illinois Supreme Court rejected the application of a "conspiracy theory" of personal jurisdiction and determined that "[t]he idea of jurisdiction based on the acts of co-conspirators has been questioned . . . But even if long-arm jurisdiction over conspirators may be established in some cases, it has no application to this case." *Id.* at 440–41.

[7]     In *Textor v. Bd. of Regents of N. Illinois Univ.*, 711 F.2d 1387 (7th Cir. 1983), the Seventh Circuit agreed that the complaint at issue failed to allege an actionable conspiracy, and therefore conspiracy jurisdiction was unavailable. *Id.* at 1393. At best, the Seventh Circuit stated that it might be possible for a plaintiff to successfully plead facts "supporting application of the conspiracy theory of jurisdiction" by alleging "both an actionable conspiracy and a substantial act in furtherance of the conspiracy performed in the forum state." *Id.* at 1392–93.

*Bd. of Educ.*, 378 Fed. Appx. 582, 585–86 (7th Cir. 2010) (acknowledging that conspiracy jurisdiction "may not be valid in Illinois" and as a legal theory was only "marginal at best").

**Third**, even if the conspiracy theory *could be* applicable, Plaintiff's attempt to invoke it would fail because Plaintiff has failed to plead the existence of a conspiracy. In the Opposition, Plaintiff refers to specific paragraphs in the FAC, which he contends provide the "facts reflecting concerted action among the defendants to form the conspiracy, and to carry it out." (Opp. at 1.) For the reasons explained in Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6), Dkt. 144, at 14–19, and the concurrently-filed reply in support, those allegations fail to establish the existence of an unlawful conspiracy. *See also Uhr*, 2011 WL 4091866 at *10 (rejecting theory that "bar owners in one state" would form a conspiracy and "agree to fix prices with bar owners in another state" because "[a]fter all, they operate in totally different markets").

**Finally**, Plaintiff recognizes that a New York court has personal jurisdiction over the New York Defendants. (Opp. at 15.) However, Plaintiff contends that suing the New Yorkers in New York would be inconvenient or inefficient, *i.e.*, "re-directing the case to New York would create the flip side of the distant court problem presented by bringing a bi-coastal conspiracy complaint in California," because Plaintiff predicts the California defendants would challenge a New York court's exercise of jurisdiction over them. (*Id.*) In other words, Plaintiff argues that the Court should defer to a Minnesota resident's decision to file a case in California against various defendants based in New York and California. (*Id.*) Plaintiff's argument is contrary to the Fourteenth Amendment, and decades of Supreme Court jurisdiction, which reaffirm Plaintiff's obligation to plead a factual basis for *each* claim alleged against *each* defendant. The New York Defendants' constitutional rights cannot be overridden by Plaintiff's preference to proceed in the court of his choosing. *See Bristol-Myers*, 137 S. Ct. at 1779 (the Court's jurisdictional analysis focuses on the defendants—not on plaintiffs, public policy, or case management efficiency).

## C. Plaintiff Is Not Entitled to Jurisdictional Discovery.

The central theme of the Opposition is that Plaintiff now would like a chance to take "jurisdictional discovery to secure th[e] facts" that, as a matter of law and professional practice,

should have been marshalled *before* filing two complaints.  (*See* Opp. at 9; *see also id* at 1, 4, 5, 9–13, 16–24.)  Nowhere, however, has Plaintiff shown *why* he deserves it (hunches and hopes do not suffice), *what* "discovery" he seeks (he proffers no plan), and *why* he has confidence that it will make a difference (as opposed to it "plausibly" may make a difference).  If anything, the Opposition undermines the requested discovery because it finally concedes that Plaintiff does not have a single fact to connect five New York Defendants to California, and as for the others, falls back on a "lenient" conspiracy pleading standard (which has never been accepted, *see supra*), statements made via Twitter, which can be viewed by anyone, and industry conferences held in California, along with and Texas and Colorado.[8]

The Court, of course, has broad discretion when it comes to jurisdictional discovery. *Lang v. Morris*, 823 F. Supp. 2d 966, 979 (N.D. Cal. 2011).  "Jurisdictional discovery need not be allowed, however, if the request amounts merely to a "fishing expedition.'"  *Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972, 996 (C.D. Cal. 2013) (citation omitted).  Requests for jurisdictional discovery are appropriately denied if the request is "based on little more than a hunch that it might yield jurisdictionally relevant facts," *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008), or "when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction," *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977).  The Court should not allow discovery here.

*First*, Plaintiff falls short of his initial burden to plead sufficient facts to establish a "colorable basis' for personal jurisdiction **before** discovery is ordered."  *Phillips*, 2012 WL 5185848, at *7 (emphasis added).  Plaintiff ignores his burden to establish a "colorable basis" before any discovery can be ordered, and instead urges the Court to apply a "more lenient" threshold for jurisdictional discovery, again based on his "conspiracy theory."  (Opp. at 10.) That argument is not even supported by the two out-of-circuit cases that Plaintiff cites.  Rather, in *Youming Jin v. Ministry of State Sec.*, 335 F. Supp. 2d 72 (D.D.C. 2004), the District Court for

---

[8]     Plaintiff also does not say why, if he so acutely needs discovery to find jurisdiction, he did not ask for any of it until *after* putting Defendants to the expense of filing motions to dismiss *two* complaints (the one he abandoned, and now the FAC).

the District of Columbia granted jurisdictional discovery with respect to one (of many)

defendants where, unlike here, the plaintiff successfully pleaded every prong of conspiracy

claim, and alleged in disturbing detail the politically-motivated violence and oppression that

included specific acts against plaintiff, on a variety of dates, within the District of Columbia. *Id.*

at 83–84.

Plaintiff cannot credibly rely on *Edmond v. U.S. Postal Serv. Gen. Counsel*, 949 F.2d 415

(D.C. Cir. 1991), plainly inapplicable civil rights litigation where jurisdictional discovery was

appropriate because, unlike here: *(i)* plaintiff's pleading of the conspiracy was "far from

conclusory," *id*. at 425; *(ii)* defendants directed the misconduct into the forum when they

"effectually kidnapped [plaintiffs] from the State Maryland into the District of Columbia" *id.* at

431, and *(iii)* jurisdictional discovery was necessary to resolve factual disputes about defendants'

connection to the misconduct in the forum that arose from conflicting affidavits adduced by both

plaintiffs and defendants, *id.* at 42. [9]  Plaintiff comes no closer with *Andes Indus., Inc. v. Chen*

*Sun Lan,* 2:14-CV-00400-APG-GWF, 2014 WL 6611227 (D. Nev. Nov. 19, 2014), where the

court denied jurisdictional discovery as to the only defendant that had actually been served. *Id.*

at *9.

There is no "colorable basis" in the FAC for jurisdictional discovery.  As for *five* of the

New York Defendants (Messrs. Rigie, Adler, Miller, Molinero LLC, and NYHA), Plaintiff

concedes that he has failed to allege **any** basis for specific jurisdiction.  (Opp. at 19.)  This

concession mandates the denial of Plaintiff's request, because he has not met his burden to

establish a "colorable basis" for jurisdiction over these defendants.

Plaintiff contends, however, that he should be allowed to take jurisdictional discovery to

explore these defendants' contacts with California.  (Opp. at 19–20.)  The only allegation that

Plaintiff offers in support of his request for jurisdictional discovery is that NYHA sponsored an

---

[9]  The *Edmond* court contrasted the plaintiff's specific and sufficient allegations in that case
with those at issue in *Naartex Consulting Corp. v. Watt*, 722 F.2d 779 (D.C. Cir. 1983), which
affirmed the denial of jurisdictional discovery where, just like here, plaintiff sued multiple
nonresident defendants for an alleged conspiracy with "pleadings [that] contained no allegations
of specific facts that could establish the requisite contacts with the District."  *Id*. at 788.

1    "industry conference" at an unidentified location (but likely in New York), where Rigie

2    discussed some of the challenges faced by restaurants seeking to move to a Hospitality Included

3    model.  (Opp. at 19 (citing FAC ¶ 75).)  Plaintiff also contends that Mr. Adler was a "leader" of

4    the no-tipping "movement," and that jurisdictional discovery *may* "reveal his broad-based

5    'movement' efforts directed toward California."  (*Id*. at 18.)  Promoting a particular practice in

6    New York that might be of interest to the hundreds of thousands of sit-down restaurants across

7    the United States (not to mention the rest of the world) cannot constitute an act directed towards

8    one particular state.  These allegations do not establish a "colorable basis" to find that these

9    defendants have the necessary contacts *with California* to subject them to personal jurisdiction

10   in this state.

11          As to other Defendants, such as Mr. Meyer, Plaintiff falls back on passive-voice

12   speculation that "there is reason to believe that Meyer has substantial contacts in California

13   beyond what is alleged in [paragraph 48] of the FAC."  (Opp. at 16, n.6.)  Plaintiff's request for

14   jurisdictional discovery, based on Plaintiff's "purely speculative allegations of attenuated

15   jurisdictional contacts" must be denied.  *Videx, Inc. v. Micro Enhanced Tech., Inc.*, 6:12-CV-

16   0065-AA, 2012 WL 1597380, at *2 (D. Or. May 4, 2012); *see also Butcher's Union Local No.*

17   *498, United Food & Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986)

18   (affirming district court's denial of jurisdictional discovery request where the plaintiffs "state

19   only that they 'believe' that discovery will enable them to demonstrate sufficient California

20   business contacts to establish the court's personal jurisdiction").

21          *Second*, the facts alleged in the FAC do not suggest that jurisdictional discovery will

22   reveal evidence of how these non-resident defendants purposefully directed activities toward

23   California.  The FAC does not indicate how or why the New York Defendants, who eliminated

24   tipping at their own restaurants *in New York*, purposefully directed their activities *toward*

25   *California*.  *See, e.g.*, *Mavrix Photo, Inc. v. Moguldom Media Grp. LLC*, No. CV 10-9351

26   RSWL (JCGx), 2011 WL 1134187, at *3 (C.D. Cal. Mar. 28, 2011) ("Plaintiff's allegations that

27   Defendant directed its activities at this forum are conclusory and do not support a finding that

28   further discovery will likely provide sufficient evidence to the contrary."); *Gemcap Lending I,*

*LLC v. Grow Michigan, LLC*, 2:17-CV-07092-ODW (AS), 2018 WL 654409, at *5 (C.D. Cal. Jan. 31, 2018) (denying jurisdictional discovery where Plaintiff "provide[d] no plausible theory of how Defendants purposefully directed their activities to California" and therefore "present[ed] no facts that would allow the Court to find discovery permissible"); *Camp W. Recorders Inc. v. Gibbs*, (MRWx), 2013 WL 12191723, at *10 (C.D. Cal. Oct. 28, 2013) (denying jurisdictional discovery where such discovery was "likely to result in little evidence" of an Australian entity's "purposeful direction of acts in this district").

**Third**, the Opposition repeatedly insists that Plaintiff needs jurisdictional discovery (Opp. at 1, 4, 5, 9–13, 16–24), but makes no effort to explain what he seeks.  Plaintiff has not provided this Court with the discovery he would like to propound, nor does he identify the specific California contacts that would be revealed by any such discovery.  This deficiency also mandates dismissal.  *See The Carsey-Werner Co., LLC v. British Broad. Corp., et al.*, No. CV 17-8041 PA (ASx), 2018 WL 1083550, at *8 (C.D. Cal. Feb. 23, 2018) ("Plaintiff does not explain what discovery it would conduct or why it would be helpful."); *Mehr v. Féderation Internationale de Football Ass'n*, 115 F. Supp. 3d 1035, 1054 (N.D. Cal. 2015) (rejecting jurisdictional discovery where plaintiff "provided no indication as to [how] discovery might possibly demonstrate facts sufficient to constitute a basis for jurisdiction"); *Liberty Media Holding, LLC v. Tabora,* No. 11-CV-651-IEG (JMA), 2012 WL 28788, at *7 (S.D. Cal. Jan. 4, 2012) ("Plaintiff provides no explanation in its motion of what discovery it seeks to conduct and what facts it expects to uncover if it is granted leave to conduct discovery.").

## IV.   <u>CONCLUSION</u>

Plaintiff failed to plead sufficient facts for this Court to exercise jurisdiction over the New York Defendants, and failed to justify his request for jurisdictional discovery.  The Court should dismiss the FAC without leave to amend.

1    Dated: April 23, 2018                    Respectfully submitted,

2

3                                      By: /s/ Stuart C. Plunkett
                                            Jonathan A. Shapiro (Cal. Bar No. 257199)
4                                           jonathan.shapiro@bakerbotts.com
                                            Stuart C. Plunkett (Cal. Bar No. 187971)
5                                           stuart.plunkett@bakerbotts.com
                                            Ariel D. House (Cal. Bar No. 280477)
6                                           ariel.house@bakerbotts.com
                                            Baker Botts LLP
7                                           101 California Street, Suite 3600
                                            San Francisco, California 94111
8                                           Telephone: (415) 291-6200
                                            Facsimile: (415) 291-6300

9                                           Counsel for Defendants
                                            Union Square Hospitality Group, LLC,
10                                          Daniel Meyer, and Sabato Sagaria

11

12                                     By: /s/ Todd Norris
                                            C. Todd Norris (Cal. Bar No. 181337)
13                                          todd.norris@bullivant.com
                                            Bullivant Houser Bailey PC
14                                          101 Montgomery St. Suite 2600
                                            San Francisco, CA 94104
15                                          Phone: (415) 352-2720

16                                          Counsel for Defendants
                                            Marlow, Inc.; Andrew Tarlow; Molinero LLC, dba
17                                          Huertas; Jonah Miller; Nate Adler

18                                     By: /s/ Stephen H. Sutro
                                            Stephen H. Sutro (Cal. Bar No. 172168)
19                                          shsutro@duanemorris.com
                                            Duane Morris LLP
20                                          One Market, Spear Tower, Suite 2200
                                            San Francisco, CA 94105
21                                          Telephone: (415) 957-3008

22                                          Counsel for Defendants
                                            New York City Hospitality Alliance, Inc. and
23                                          Andrew Rigie

24

25

26

27

28

1

**ATTORNEY ATTESTATION**

2      I, Stuart C. Plunkett, hereby attest, pursuant to Civil Local Rule 5-1(i)(3) of the Northern

3  District of California, that the concurrence to the filing of this document has been obtained from

4  each signatory hereto.

5

6                                                            */s/ Stuart C. Plunkett*_____
                                                           Stuart C. Plunkett

7                                                          *Counsel for Defendants*
                                                           *Union Square Hospitality Group, LLC,*
8                                                          *Daniel Meyer, and Sabato Sagaria*

9

10

11

**CERTIFICATE OF SERVICE**

12      I, Stuart C. Plunkett, hereby certify that on April 23, 2018, I electronically filed the above

13  document with the U.S. District Court for the Northern District of California by using the

14  CM/ECF system.  All participants in the case are registered CM/ECF users who will be served

15  by the CM/ECF system.

16

17                                                          */s/ Stuart C. Plunkett*_____
                                                           Stuart C. Plunkett

18                                                         *Counsel for Defendants*
                                                           *Union Square Hospitality Group, LLC,*
19                                                         *Daniel Meyer, and Sabato Sagaria*

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF SERVICE**

2          I, Stuart C. Plunkett, hereby certify that on April 23, 2018, I electronically filed the above

3 document with the U.S. District Court for the Northern District of California by using the

4 CM/ECF system.  All participants in the case are registered CM/ECF users who will be served

5 by the CM/ECF system.

6

7                                                  */s/ Stuart C. Plunkett*
                                                 Stuart C. Plunkett

8                                                  *Counsel for Defendants*
                                                 *Union Square Hospitality Group, LLC,*
9                                                  *Daniel Meyer, and Sabato Sagaria*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28