UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TIMOTHY BROWN,

                    Plaintiff,

         v.

140 NM LLC, et al.,

                    Defendants.

Case No.  17-cv-05782-JSW

**ORDER RESOLVING MOTIONS TO DISMISS**

Re: Dkt. Nos. 135, 140-145

Now before the Court for consideration are motions to dismissed filed by restaurants and restaurateurs from California (the "California Defendants") and New York (the "New York Defendants").[1]

The California Defendants are: 140 NM LLC, d/b/a Trou Normand ("Trou Normand"); Bar Agricole, LLC d/b/a Bar Agricole ("Bar Agricole"); Thaddeus M. Vogler ("Vogler"); Hopemoorelain, LLC, d/b/a Camino ("Camino"), Russell Moore ("Moore"), and Allison Hopelain ("Hopelain") (the "Camino Defendants"); Es Verdad, LLC, d/b/a Comal ("Comal"), John Paluska ("Paluska"), and Andrew Hoffman ("Hoffman") (the "Comal Defendants").

The New York Defendants are: Momofuku 232 Eighth Avenue, LLC ("Momofuku 232"), Momo Holdings, LLC, ("Momo Holdings"), and David Chang ("Chang") (the "Momofuku

---

[1]      The California Defendants are: 140 NM LLC, d/b/a Trou Normand ("Trou Normand"); Bar Agricole, LLC d/b/a Bar Agricole ("Bar Agricole"); Thaddeus M. Vogler ("Vogler"); Hopemoorelain, LLC, d/b/a Camino ("Camino"), Russell Moore ("Moore"), and Allison Hopelain ("Hopelain") (the "Camino Defendants"); Es Verdad, LLC, d/b/a Comal ("Comal"), John Paluska ("Paluska"), and Andrew Hoffman ("Hoffman") (the "Comal Defendants").

The New York Defendants are: the USHG Defendants; the Craft Worldwide Defendants; the Momofuku Defendants; the Marlow Defendants; the Happy Cooking Defendants; the Huertas Defendants; the EMP Defendants; and the Alliance Defendants.

Defendants"); Gabriel Stulman ("Stulman") and Happy Cooking Hospitality, Inc. ("Happy Cooking") (the "Happy Cooking Defendants"); Craft Worldwide Holdings, LLC, erroneously sued as Crafted Hospitality, ("Craft Worldwide") and Thomas Colicchio ("Colicchio") (the "Crafted Hospitality Defendants"); Union Square Hospitality Group, LLC ("USHG"), Daniel Meyer ("Meyer"), Sabato Sagaria ("Sagaria") (the "USHG Defendants"); Marlow, Inc. ("Marlow") and Andrew Tarlow ("Tarlow") (the "Marlow" Defendants); Molinero LLC d/b/a Huertas, Jonah Miller ("Miller"), and Nate Adler ("Adler") (the "Huertas Defendants"); the New York City Hospitality Alliance (the "Alliance") and Andrew Rigie ("Rigie") (the "Alliance Defendants"); and Birth of the Cool, LLC d/b/a Eleven Madison Park ("EMP")[2], Will Guidara ("Guidara"), and Daniel Humm ("Humm") (the "EMP Defendants").

The motions are:

1.     a motion to dismiss for lack of standing, for lack of personal jurisdiction, and for improper venue, filed by the Momofuku Defendants) (Dkt. No. 135);

2.     a motion to dismiss for lack of personal jurisdiction and for failure to state a claim, filed by Happy Cooking Defendants (Dkt. No. 140);

3.     a motion to dismiss for lack of personal jurisdiction and for improper venue, filed by Crafted Hospitality Defendants (Dkt. No. 142);

4.     a motion to dismiss for lack of personal jurisdiction filed by: (a) the USHG Defendants[3]; (b) the Marlow Defendants); (c) the Huertas Defendants; and the Alliance Defendants (Dkt. No. 144);

5.     a motion to dismiss for lack of standing, for failure to effect service, for lack of personal jurisdiction, for improper venue; and for failure to state a claim filed by the EMP

---

[2]     Plaintiff named Make it Nice, LLC as a Defendant.  The EMP Defendants attest that no such entity exists.  (Dkt. No. 145-4, Declaration of Marcia Regen ("Regen Decl."), ¶ 29.)  Brown has not countered that assertion.  Accordingly, the Court DISMISSES all claims against "Make it Nice, LLC."

[3]     The USHG Defendants also filed a motion to strike.  (Dkt. No. 143.)  In light of the Court's ruling on their motions to dismiss for lack of personal jurisdiction and for failure to state a claim, the Court DENIES that motion as moot.

Defendants; and

      6.     a joint motion to dismiss for lack of standing and for failure to state a claim filed by Defendants (Dkt. No. 141).

**BACKGROUND**

Plaintiff, Timothy Brown ("Brown"), filed his original complaint on October 6, 2017. On March 9, 2018, in response to Defendants' motions to dismiss, Brown filed the First Amended Complaint ("FAC"). In brief, Brown alleges the California Defendants and the New York Defendants conspired with one another to fix prices in the restaurant industry by eliminating the practice of tipping. Based on those allegations, which the Court shall address in more detail in the analysis, Brown asserts claims on behalf of himself and on behalf of a putative class for: (1) a violation of the Sherman Act, 15 U.S.C. section 1 against all Defendants; (2) a violation of California's Cartwright Act, California Business and Professions Code sections 16720, *et seq.* against the California Defendants; (3) a violation of California's Unfair Competition Law, California Business and Professions Code sections 17200, *et seq*. against the California Defendants; and (4) a violation of New York's Donnelly Act, New York General Business Law section 340 against the New York Defendants.

**ANALYSIS**

**A.**     **Brown Alleges He Has Article III Standing to Sue for Damages but Not for Injunctive Relief.**

Defendants argue Brown has not alleged he has standing under Article III of the United States Constitution, including standing to seek injunctive relief. "Where, as here, a case is at the pleading stage," Brown "must 'clearly … allege facts demonstrating' each element" of Article III's standing requirements. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914, 922 (9th Cir. 2015) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). Brown asserts the allegedly concerted decision to eliminate tipping was designed to and did result in higher prices to customers. It is undisputed that Brown has only dined at four of the restaurants named as defendants or owned by a defendant. In particular he alleges that, in April 2017, he dined at Reynard and Gramercy

Tavern, both of which he alleges were gratuity-free restaurants. (FAC ¶¶ 51-52.)[4] According to Brown, the server at Reynard told him "the price of the fried chicken sandwich he ordered increased from $16 to $21 after tips were eliminated." (*Id.* ¶ 51.) Brown also alleges that he "purchased and consumed food from Comal … and Camino" and that both restaurants eliminated the tip line from their receipts. Brown alleges that Comal included a "20% service charge in lieu of a tip[.]" (*Id.* ¶ 53.)[5]

Brown relies on the alleged price-fixing conspiracy to establish standing to sue the remaining defendants. Defendants argue Brown fails to allege facts to support such a conspiracy and argue the facts alleged are not sufficient to demonstrate antitrust injury. Those arguments relate to the merits of Brown's claims, but the jurisdictional question of standing precedes, and does not require, analysis of the merits." *Equity Lifestyle Props., Inc. v. County of San Luis Obispo*, 548 F.3d 1184, 1189 n.10 (9th Cir. 2008); *cf. Safe Air for Everyone*, 373 F.3d 1035, 1039 n.3 (9th Cir. 2004) (Where "the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court … is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case.") (citations omitted).

Brown alleges that he paid $5.00 more for a fried-chicken sandwich than he would have absent the alleged price fixing conspiracy. The Court concludes that, at the pleading stage, Brown has alleged sufficient facts to show he has standing to seek damages. *Cf. In re Wellpoint, Inc. Out-of-Network "UCR" Rates Litig.*, 865 F. Supp. 2d 1002, 1021-22 (C.D. Cal. 2011) (finding allegations sufficient to show Article III standing as to certain plaintiffs). That does not mean these same facts will be sufficient to state a claim. *See Doe v. Chao*, 540 U.S. 614, 624-25 (2004).

Brown also seeks injunctive relief. "Standing must be shown with respect to each form of relief sought, whether it be injunctive relief, damages or civil penalties." *Bates v. United Parcel*

---

[4]     Brown alleges Marlow owns Reynard. (FAC ¶ 30.) Brown alleges the USHG Defendants own and operate Gramercy Tavern. (FAC ¶ 22.)

[5]     With the exception of the fried-chicken sandwich, Brown neither alleges facts regarding the cost of each of his meals nor alleges that he would have tipped less than the 20% the Comal and Camino Defendants included in his bills. (*Id.* ¶ 54.)

*Serv.*, 511 F.3d 974, 985 (9thc Cir. 2007) (citing *Friends of the Earth v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)). To show he has standing to pursue injunctive relief, Brown must "demonstrate that he has suffered or is threatened with a 'concrete and particularized' legal harm, coupled with a 'sufficient likelihood that he will again be wronged in a similar way.'" *Bates*, 511 F.3d at 985 (quoting first *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) and then *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). The latter inquiry turns on whether Brown has a "real and immediate threat of repeated injury." *Id.* The threat of future injury cannot be "conjectural or hypothetical" but must be "certainly impending" to constitute an injury in fact for injunctive relief purposes. *Davidson v. Kimberly Clark*, 889 F.3d 956, 967 (9th Cir. 2018). Brown is a resident of Minnesota, and he does not allege that he intends to dine at any Defendants' restaurants in the immediate future. Accordingly, the Court concludes he fails to allege facts sufficient to show he has standing to seek injunctive relief.

Accordingly, the Court GRANTS, IN PART, AND DENIES, IN PART, Defendants' joint motion to dismiss for lack of standing.

**B.      Brown Fails to Show He Timely Served Guidara and Humm with the Complaint.**

Guidara and Humm argue Brown failed to serve them within the time permitted by Federal Rule of Civil Procedure 4(m). Brown bears the burden of demonstrating that service is proper. *See Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). Brown filed the original complaint on October 6, 2017. Under Rule 4(m), Brown was required to serve Humm and Guidara by January 4, 2018, and the record shows he did not. (*See* Dkt. No. 74, Order Granting Administrative Motion to Extend Time for Service at 1:19-20.) Although the Court found Brown had not demonstrated good cause for an extension of time, it exercised its discretion, granted him until February 12, 2018 to effect service, and stated there would be no further extensions. (*Id.* at 2:10-3:18.)

On February 13, 2018, Brown filed affidavits of service that purport to show he served Guidara and Humm on February 12, 2018. (Dkt. Nos. 90-91.) In those affidavits, Mohamed Bouri ("Bouri") attests that, at 8:39 p.m., he served a copy of the complaint and summons on "Billy 'Doe' (Manager)" at 11 Madison Avenue, New York, N.Y., 10011 (EMP's address) and, on

5

that date, mailed a copy of those documents in an envelope marked "Personal and Confidential" to the same address. *See* N.Y. C.P.L.R. § 308. Bouri submitted a supplemental declaration, in which he attests he personally served an individual named Billy and then deposited the summons and complaint in envelopes marked personal and confidential. (Dkt. No. 154-1, Declaration of Mohamed Bouri, ¶¶ 5-7.) The affidavits of service constitute *prima facie* evidence that Brown served Guidara and Humm, which can be "overcome only by strong and convincing evidence." *SEC v. Internet Solutions for Bus., Inc.*, 509 F.3d 1161, 1166 (9th Cir. 2007) (quoting *O'Brien v. R.J. O'Brien & Assocs.*, 998 F.2d 1394, 1398 (7th Cir. 1993)).

Guidara and Humm attest they have not been served with copies of the complaint and summons. (Dkt. No. 145-1, Declaration of Will Guidara ("Guidara Decl."), ¶ 12; Dkt. No. 145-5, Declaration of Daniel Humm ("Humm Decl."), ¶ 12.) According to Guidara and Humm, EMP's general manager is Billy Pelle. (Dkt. No. 145-3, Declaration of Billy Pelle ("Pelle Decl."), ¶ 3; Guidara Decl., ¶ 8; Humm Decl., ¶ 8.) Pelle, Guidara, and Humm attest that Pelle is the only manager at EMP named Billy. Pelle also attests that although he was at EMP at 8:39 p.m. on February 12, 2018, he did not accept documents from Bouri or from anyone else. Pelle also attests he has not spoken to any process server in connection with this matter. (*Id.* ¶¶ 7-9, 11-12; *see also* Regan Decl., ¶¶ 7-8.)

Bouri describes "Billy" as a white male with brown hair, between 35 and 44 years old, between 5'4" and 5'8" tall, and between 161 and 190 pounds. (*See* Dkt. Nos. 90-91.) Pelle attests that he is 6'2" tall and has thinning red hair. (Pelle Decl., ¶ 13; *see also* Guidara Decl., ¶ 8; Humm Decl., ¶ 8; Regan Decl., ¶ 9.) Pelle also attests that he reviewed video footage of the area outside the entrance to EMP. (Pelle Decl., ¶ 17.) He attests that, between 8:30 and 9:00 p.m., the footage showed "what [he considered] to be normal guest activity" and "gave [him] no basis whatsoever to believe that [Bouri] or any process server entered EMP." (*Id.* ¶ 19.) Finally, Pelle and Regan attest that they have not received the complaint and summons by mail. (Pelle Decl., ¶ 20; Regan Decl., ¶¶ 13-18.)[6]

---

[6]    Pelle and Regan attest that they asked and were told by EMP employees that the employees did not speak to process servers. Brown objects to these statements on the basis that

6

The Court concludes Bouri's affidavits of service and the supplemental declaration are not sufficient to counter the declarations submitted by Pelle, Regan, Guidara, and Humm, which the Court concludes are "strong and convincing evidence" that Guidara and Humm were not properly served. Brown argues the issue is moot because Guidara and Humm were served with the FAC. The Court does not find this argument persuasive. *See, e.g., Jen v. City and County of San Francisco*, No. 15-cv-3834-HSG, 2018 WL 1524049, at *1 (N.D. Cal. Mar. 28, 2018) (finding that if a plaintiff files an amended complaint, the time period in Rule 4(m) does not begin to run anew as to defendants named in original complaint). Although Guidara and Humm raised these arguments in a motion to dismiss the original complaint, Brown apparently made no effort to rectify service or to ask the Court to revisit its ruling that it would not grant a further extension of time to effect service.

Accordingly, the Court GRANTS Guidara's and Humm's motion based on Brown's failure to effect service within the time required under Rule 4(m), as extended by the Court. Even if Brown had served Guidara and Humm in a timely manner, for the reasons set forth in the following section, the Court also concludes that Brown fails to show the Court would have personal jurisdiction over them.

**C.     Brown Has Not Shown the Court Has Personal Jurisdiction Over the New York Defendants and Has Not Shown Jurisdictional Discovery Is Warranted.**

Each New York Defendant moves to dismiss for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). Brown bears the burden to establish that personal jurisdiction over the New York Defendants is proper. *Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007). When "a district court acts on a defendant's motion to dismiss without holding an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. … That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir.

the statements are inadmissible hearsay. The Court did not rely on those statements. Accordingly, it overrules Brown's objections as moot.

1995) (citations omitted); *see also AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (holding that where the trial court rules on jurisdictional issue based on affidavits and without holding an evidentiary hearing, the plaintiff need only make a prima facie showing). Where the facts are not directly controverted, plaintiff's version of the facts is taken as true. *See AT&T*, 94 F.3d at 588. Likewise, conflicts between the facts contained in the parties' affidavits must be resolved in a plaintiff's favor for purposes of deciding whether a prima facie case for personal jurisdiction exists. *Schwarzenegger v. Fred Martin Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

"The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). California's long-arm statute permits a court to exercise personal jurisdiction over a defendant whenever the exercise of such jurisdiction would be consistent with due process. *See id.*; Cal. Code of Civ. Pro § 410.10. The exercise of personal jurisdiction over a defendant comports with the Due Process Clause where the defendant has sufficient "minimum contacts" with the forum state such that the assertion of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945). The "strength of contacts" required to meet this standard depends on whether the plaintiff is seeking to invoke specific jurisdiction or general jurisdiction. *See Ranza v. Nike, Inc.,* 793 F.3d 1059, 1068 (9th Cir. 2015).

### 1. Conspiracy Jurisdiction.

Brown urges the Court to adopt a "conspiracy jurisdiction" theory, whereby a plaintiff may establish jurisdiction over alleged co-conspirators not subject to jurisdiction in a particular forum by alleging an actionable conspiracy and a "substantial act" in furtherance of the conspiracy in the forum state. *See, e.g., In re Vitamins Antitrust Litig.*, 94 F. Supp. 2d 26, 33 (D.D.C. 2000) (finding that Illinois long-arm statute encompassed conspiracy theory of jurisdiction but finding plaintiffs failed to allege "insufficient detail of the alleged conspiratorial acts that actually occurred in Illinois").

"California does not recognize conspiracy as a basis for acquiring personal jurisdiction

over a party." *Mansour v. Superior Court*, 38 Cal. App. 4th 1750, 1760 (1995). The Ninth Circuit also has not adopted this theory of jurisdiction. *See, e.g., Chirila v. Conforte,* 47 Fed. Appx. 838, 842 (9th Cir. 2002); *cf. Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 492 (9th Cir. 1976) (rejecting conspiracy theory of venue). District courts within the Ninth Circuit either have declined to adopt such a theory or have declined to reach the issue on the basis that there were insufficient facts to show a conspiracy existed. *See, e.g., UMG Recordings, Inc. v. Global Eagle Entertainment,* No. CV 14-03466-MMM (JPRx), 2015 WL 12752879, at \*8-9 (C.D. Cal. July 2, 2015) (stating that "[e]ven if the theory is viable, to comply with traditional notions of fair play and substantial justice, it must be based on more than conclusory allegations of the existence of a conspiracy"); *General Steel Domestic Sales, LLC v. Suthers*, No. CIV S-06-411 LKK/KJM, 2007 WL 704477, at \*5 (E.D. Cal. March 2, 2007) (declining to adopt theory when viability is in doubt within the Ninth Circuit and where plaintiff failed to allege a conspiracy); *U.S. Vestor, LLC v. Biodata Info. Tech. AG,* 290 F. Supp. 2d 1057, 1065 (N.D. Cal. 2003) ("The conspiracy claims are insufficient because California law does not recognize conspiracy as a basis for acquiring jurisdiction over a foreign defendant.").

In the absence of clear Ninth Circuit authority, the Court will not apply a conspiracy jurisdiction theory in this case.[7] Brown does not contend the Court has general jurisdiction over Crafted Hospitality, Birth of the Cool, the Huertas Defendants, the Alliance Defendants, the Happy Cooking Defendants, Momofuku 232, or Momo Holdings. He also concedes that "absent application" of the conspiracy theory he cannot allege a supporting act aimed at California by these defendants, *i.e.* that the Court would have specific jurisdiction over these Defendants. Accordingly, the Court GRANTS their motions to dismiss on this basis.

### 2. General Jurisdiction.

Brown argues that Chang, Colicchio, Humm, Guidara, and Meyer are subject to general jurisdiction, which permits a court to exercise jurisdiction over a defendant when that defendant's

---

[7] Even if the Court were to adopt the theory, the Court would grant the motion. For the reasons set forth in Section D the Court concludes Brown has not alleged facts to support a viable conspiracy between the California Defendants and the New York Defendants.

9

1    activities are so "continuous and systematic as to render them essentially at home in the forum

2    State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). This is an "exacting" standard.

3    *Schwarzenegger*, 374 F.3d at 801. "For an individual, the paradigm forum for the exercise of

4    general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v.*

5    *Brown*, 564 U.S. 915, 924 (2011). Individuals are domiciled where they make their "permanent

6    home," *i.e.* where they reside "with the intention to remain or to which [they intend] to return."

7    *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001.)

8         Brown alleges these Defendants have spent "substantial time in" or "regularly" visit

9    California for restaurant business and, in Colicchio's case, to act as a judge on the television show

10   Top Chef. (FAC ¶¶ 26, 29, 39-40, 48.b.) Chang and Colicchio attest that: they reside in New

11   York City, New York; have New York driver's licenses; pay New York state income taxes; and

12   have registered their cars in New York. (Dkt. No. 98-1, Declaration of David Chang ("Chang

13   Decl."), ¶ 2; Dkt. No. 142-1, Declaration of Thomas Colicchio ("Colicchio Decl."), ¶ 2.) Humm

14   and Guidara also attest they are residents of New York. (Humm Decl., ¶ 3; Guidara Decl., ¶ 3.)

15        Chang attests that, after Brown filed the lawsuit, he temporarily located to Los Angeles to

16   open a restaurant. He also attests he "continued to travel back and forth between California and

17   my home in New York[.]" (Chang Decl., ¶ 5.) Colicchio attests that his contacts with California

18   consist of "business meetings related to Crafted Hospitality's Los Angeles restaurant and the

19   filming of the television show Top Chef[.]" (Colicchio Decl., ¶ 6.) Humm attests that in 2017, he

20   made four trips to Los Angeles for four to five days, "in connection with business relating to"

21   another restaurant, NoMad LA, and attests that in 2018 he travelled to Los Angeles for a total of

22   13 days for NoMad LA's opening. (Humm Decl., ¶¶ 17-19.) Guidara attests that in 2017 he made

23   two trips of four and five days to Los Angeles in 2017 and two trips of six and seventeen days in

24   2018. However, Humm and Guidara each attest that, as of the date Brown filed his original

25   complaint, they had only spent four days in Los Angeles on NoMad LA related business.

26   (Guidara Decl., ¶¶ 17-19.) Although Meyer has not submitted a declaration, Brown does not

27   allege Meyer resides in California. Rather, he relies on allegations that Meyer has travelled to

28   California and on the fact that he allegedly owns or invests in restaurants here to establish

                                                      10

jurisdiction.

Brown argues it is "reasonable to surmise" that the contacts these five defendants allegedly had with California is so systematic and continuous to render them at home in California, even if they are not domiciled here. "An individual's frequent visits to a forum, or even his owning property in a forum, do not, alone, justify the exercise of general jurisdiction over him." *Hendricks v. New Video Channel America, LLC*, No. 14-cv-02989-RSWL-SSx, 2015 WL 3616983, at *4 (C.D. Cal. June 8, 2015) (finding individual Canadian defendant not subject to general jurisdiction based, *inter alia*, on 8-9 trips to California during his lifetime); *see also OOO Brunswick Rail Mgmt. v. Sultanov*, No. 15-cv-00017-EJD, 2017 WL 264047, at *2 (N.D. Cal. Jan. 20, 2017) (finding plaintiff failed to show defendants were subject to general jurisdiction in California where neither defendant lived in California and had only visited the state).

The Court concludes that Brown has not made a prima facie showing that Chang, Colicchio, Humm, Guidara, or Meyer are subject to general jurisdiction in California. Accordingly, the Court GRANTS their motions to dismiss on this basis.

### 3. Specific Jurisdiction.

Specific jurisdiction "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U.S. at 919 (internal quotations, alterations, and citations omitted). Specific jurisdiction over a defendant exists where: (1) the defendant has purposefully directed its activities at the forum state or has purposefully availed itself of the privileges of doing business in the forum; (2) the plaintiff's claim arises out of or relates to those activities; and (3) the assertion of personal jurisdiction is reasonable and fair. *Schwarzenegger*, 374 F.3d at 802. "The plaintiff bears the burden of satisfying the first two prongs of the test. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.* (internal citation omitted). "On the other hand, if the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Menken*, 503 F.3d at 1057 (internal quotations and citations omitted).

United States District Court
Northern District of California

In analyzing the reasonableness of exercising jurisdiction, the Court applies a seven-factor analysis:

> (1) the extent of the purposeful interjection into the forum state, (2) the burden on the defendant of defending in the forum, (3) the extent of conflict with the sovereignty of defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000) (citing *Burger King,* 471 U.S. at 476).

The first prong of the specific jurisdiction test is treated "somewhat differently in contract and tort cases." *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006); *see also Schwarzenegger*, 374 F.3d at 802. Because Brown's claims sound in tort, the Court evaluates the first prong using a three part "effects" test derived from *Calder v. Jones*, 465 U.S. 783 (1984). *See Schwarzenegger*, 374 F.3d at 803. Under that test, the Court looks to whether: (1) the defendant committed an intentional act; (2) the act was expressly aimed at the forum state; and (3) the defendant knows the act would cause harm in the forum state. *Id.* An intentional act is done with the "intent to perform an actual, physical act in the real world rather than an intent to accomplish a result or consequence of that act." *See Schwarzenegger*, 374 F.3d at 806. "'[R]andom, fortuitous, or attenuated contacts' are insufficient to create the requisite connection to the forum." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985))).

Brown alleges,

> [u]pon information and belief, this Court has personal jurisdiction over all defendants … by way of the purposeful direction of their intentional acts at the State of California with knowledge that the harmful effect of their acts was likely to injure California residents. [Footnote omitted.] Upon information and belief, such defendants were aware that: a) they were participating in the same conspiracy as the California defendants, b) California defendants provided information and support to New York defendants for the purpose and with the effect of furthering the conspiracy in New York, c) New York defendants provided information and support to California defendants for the purpose and effect of furthering the conspiracy in California, and d) California residents who purchased food and drinks from the defendant restaurants were overcharged on

said purchases and hence were damaged and injured as a result of
the conspiracy.

(FAC ¶ 49.)

Much of this paragraph contains legal conclusions couched as fact. To the extent Brown

relies only on these allegations to support specific jurisdiction over any New York Defendant, the

Court concludes they are insufficient to establish a prima facie showing of specific jurisdiction.

*See Schwartz v. KPMG, LLC*, 476 F.3d 756, 766 (9th Cir. 2007) ("[M]ere 'bare bones' assertions

of minimum contacts with the forum or legal conclusions unsupported by specific factual

allegations will not satisfy a plaintiff's pleading burden.").

### a. Chang, Colicchio, Humm, and Guidara.

Brown does not present any argument that the Court could exercise specific jurisdiction

over Chang, Colicchio, Humm, or Guidara. (*See* Opp. Br. at 13:14-17:16.) The Court GRANTS

their motions to dismiss on this basis as well.

### b. Meyer.

Brown alleges that on October 17, 2015, "Meyer congratulated Camino for 'leading the

way.'" (FAC ¶ 88.) Brown does not allege how or where Meyer made the statement. Although it

would qualify as an "intentional act," there are no allegations it was expressly aimed at California

or that Meyer made the statement intending to cause harm in California. Brown also argues that

Meyer has attempted to attract industry support to eliminate tipping, citing to allegations that

USHG runs a "help-line" for restaurants that are interested in switching to a no-tipping model.

(FAC ¶ 124.a.) However, he neither sets forth facts nor provides evidence from which the Court

could conclude Meyer targeted the help-line to restaurants or restauranteurs in California. Even

when the Court considers the facts that purportedly show the Court has general jurisdiction over

Meyer, the Court concludes that Brown fails to show that Meyer expressly aimed any

jurisdictionally relevant acts at California. Thus, he fails to make a prima facie showing of

specific jurisdiction over Meyer.

The Court GRANTS Meyer's motion to dismiss on this basis as well.

### c. Sagaria.

Brown alleges Sagaria traveled to the Bay Area in July 2015 and April 2016 to attend

13

industry conferences hosted by the Golden Gate Restaurant Association ("GGRA"). (FAC ¶¶ 48.c, 77, 128.) At the first conference, Sagaria allegedly attended a panel discussion on "The Tipping Point: Rising Labor Costs and the New York Restaurant." (FAC ¶ 77.) Sagaria also allegedly spoke with Vogler about Vogler's tipless model, "which helped inspire some of the mechanics of USGH's tipless policy." (*Id.* (internal alterations omitted).) At the second conference, Sagaria allegedly participated in the opening panel discussion, "The Tipping Point: A Year Later," with Vogler and Hoffman. (*Id.* ¶ 128.) Brown also alleges that on March 10, 2016, Sagaria "tweeted that the no-tipping movement is 'an (ultra) marathon. Not a sprint. One restaurant at a time.'" (FAC ¶ 123.)

These allegations are sufficient to allege Sagaria engaged in intentional acts. Sagaria argues his participation in the GGRA industry conferences are not sufficient to satisfy the express aiming prong and relies, in part, on *HK China Group, Inc. v. Beijing United Auto. & Motorcycle Mfg. Group*, 411 Fed. Appx. 664, 666 (9th Cir. 2011) and *Sher v. Johnson*, 911 F.2d 1357 (9th Cir. 1990). In both of those cases, the Ninth Circuit applied the purposeful availment analysis used in contract cases. Although they are not entirely apt, they do suggest that, in some instances, occasional visits to the forum state will not be sufficient to satisfy the "purposeful direction" prong. There also are no facts to suggest the tweet was expressly aimed at California. The Court has considered all of Sagaria's alleged contacts with California. *Cf. Yahoo!*, 433 F.3d at 1208. For reasons discussed below, the Court concludes that Brown fails to show a bi-coastal price fixing conspiracy. Thus, even if Sagaria's tweet and his attendance at and participation in the GGRA conferences could satisfy the first two prongs of the *Calder* effects test, the Court concludes the allegations in the FAC are insufficient to show Sagaria knew this conduct would cause harm in California.

The Court GRANTS Sagaria's motion to dismiss on this basis as well.

### d. USHG.

Brown alleges that "USHG personnel have traveled throughout the country promoting hospitality included and upon information and belief, California was the destination for some such travels." (FAC ¶ 48.a.) Brown also alleges that USHG has invested in Tender Greens, a

California based restaurant chain, and the ice-cream chain Salt & Straw, which he alleges has multiple California locations. He alleges that USHG "is believed to own a significant stake in Shake Shack, which also has multiple California locations." (*Id.*) None of those restaurants are named as defendants and there are no allegations they are involved in the alleged price fixing conspiracy. Therefore, Brown fails to show these contacts are jurisdictionally relevant.

Brown also argues that USHG has worked to attract support in the restaurant industry to eliminate tipping and cites to the help-line USHG established. Again, Brown fails to provide any basis to conclude the establishment of this help-line was expressly aimed at California. He also relies on allegations regarding statements made by one of USHG's officers at the Colorado Restaurant Association's conference in Denver, Colorado, but Brown fails to explain how those statements were expressly aimed at California and does not suggest that anyone from California attended that meeting. (FAC ¶ 138.) He also relies on a tweet that USHG posted after the April 2016 GGRA conference, which states USHG "was honored to share in the dialogue and learn from our west coast peers." (FAC ¶ 128.) There are no allegations that this tweet was expressly aimed at California, rather than at any other state where USHG's followers are located.

The Court concludes that Brown has not made a prima facie showing that the Court could exercise specific jurisdiction over USHG, and the Court GRANTS its motion to dismiss on this basis.

> e.      **The Marlow Defendants.**

Brown alleges the Marlow Defendants "developed an open-source 'gratuity-free' logo which is, upon information and belief, used in restaurants throughout the United States and in California to market the elimination of tipping." (FAC ¶ 48.d.) According to Brown, this logo is available for free on the website "gratuityfree.nyc" and "is currently being used by restaurants in … California." (*Id.*, ¶ 103; *see also id.* ¶ 176.) While the development of the logo and the operation of the website would qualify as intentional acts, the allegations are not sufficient to show those acts were "expressly aimed" at California. Further, Brown offers no evidence to show the Marlow Defendants targeted or otherwise sought out California restaurants or restaurateurs to persuade them to utilize the logo or to take advantage of the website.

The Court concludes that Brown has not made a prima facie showing that Marlow and Tarlow purposefully directed their activities at California, and the Court GRANTS their motion to dismiss on this basis.

### 4. Jurisdictional Discovery.

Brown requests jurisdictional discovery. A court may grant discovery where "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Data Disc, Inc. v. Systems Tech. Associates, Inc.*, 557 F.2d 1280, 1285 n. 1 (9th Cir. 1977). The Ninth Circuit has reversed for abuse of discretion when further discovery "might well" have established a basis for personal jurisdiction. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003). However, denial of jurisdictional discovery "is not an abuse of discretion when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction," *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977), or when the request is "based on little more than a hunch that it might yield jurisdictionally relevant facts," *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008).

Brown concedes that for eleven (11) of the New York Defendants he cannot establish an act expressly aimed at California without jurisdictional discovery, but he gives the Court no reason to conclude he has a basis to believe such facts would exist. Brown relies, in part, on *Youming Jin v. Ministry of State Security*, 335 F. Supp. 2d 72 (D.D.C. 2004). In that case, however, the court concluded the plaintiff had sufficiently alleged a non-resident defendant participated in a conspiracy and granted the plaintiff's request for discovery on that basis. *Id.* at 83-84. As discussed below, the Court concludes Brown has not alleged facts that show a bi-coastal conspiracy. The Court concludes Brown's request for jurisdictional discovery is "based on little more than a hunch that it might yield jurisdictionally relevant facts," and it DENIES the request for that reason. *Boschetto*, 539 F.3d at 1020.

Accordingly, the Court DISMISSES the claims against each New York Defendant for lack of personal jurisdiction.

//

United States District Court
Northern District of California

**D.      Brown Fails to State A Claim.**

In their joint motion to dismiss, Defendants argue Brown fails to state a claim and lacks statutory standing.  The Court evaluates both arguments pursuant to Rule 12(b)(6).  *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).  On a Rule 12(b)(6) motion, the Court assumes "that all the allegations in the complaint are true[.]"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The parties agree that the Cartwright Act and Donnelly Act claims are subject to the same analysis as the Sherman Act claim and that if that claim fails, these two claims also fail.  *See, e.g., Walker v. USAA Cas. Ins. Co.*, 474 F. Supp. 2d 1168, 1174 (E.D. Cal. 2007); *Wolf Concept S.A.R.L. v. Eber Bros. Wine & Liquor Corp.*, 736 F. Supp. 2d 661, 669 (W.D.N.Y. 2010).  Brown also agrees that his UCL claim hinges upon the viability of the Sherman Act claim.  Accordingly, the Court has focused its analysis on the Sherman Act claim.

Section 1 of the Sherman Act prohibits any "contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States."  15 U.S.C. § 1.  Brown must allege facts that show (1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce among the several States, … (3) which actually injures competition."  *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008).  In *Twombly*, the Supreme Court stated that

> a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] … Factual allegations must be enough to raise a right to relief above the speculative level[.] ... In applying these general standards to a § 1 claim, we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made.  Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal agreement[.] ... [A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice.  Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.  Hence, when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a

United States District Court
Northern District of California

suggestion of a preceding agreement, not merely parallel conduct
that could just as well be independent action.

*Twombly*, 550 U.S. at 555-57 (citations omitted).[8]  "A claim has facial plausibility when the

Plaintiff pleads factual content that allows the court to draw the reasonable inference that the

Defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(citing *Twombly*, 550 U.S. at 556).

Brown's theory is that California Defendants and the New York Defendants engaged in a

bi-coastal conspiracy to fix prices.  Horizontal price fixing is *per se* illegal under the Sherman

Act.[9]  *See United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 223 (1940); *see also Texaco v.*

*Dagher*, 547 U.S. 1, 5 (2006) ("per se liability is reserved for only those agreements that are 'so

plainly anticompetitive that no elaborate study of the industry is needed to establish their

illegality'") (quoting *Nat'l Soc. of Prof. Engrs. v. United States*, 435 U.S. 679, 692 (1978)).  Thus,

Brown must allege evidentiary facts to show a single price-fixing conspiracy that would consist of

some, if not all, of the California Defendants and some, if not all, of the New York Defendants.[10]

*See In re Wellpoint, Inc.*, 865 F. Supp. 2d at 1025.  Additionally, Brown must allege facts that

show he suffered "antitrust injury," *i.e.,* "loss or damage 'of the type the antitrust laws were

designed to prevent and that flows from that which makes defendants' acts unlawful.'"  *Cargill,*

---

[8]      In their motion to dismiss, Defendants cite news articles that address why the USHG
Defendants chose to pursue a "Hospitality Included" business model.  On a motion to dismiss, the
Court can only consider materials outside the pleadings to the extent they are subject to judicial
notice under Federal Rule of Evidence 201 or that have been incorporated by reference into a
complaint.  Although it appears Brown relies on one of the references cited by the Defendants, the
Court has not relied on Defendants' references to resolve this motion.

[9]      The EMP Defendants argue Brown fails to allege facts to show their conduct affected
interstate commerce, depriving the Court of subject matter jurisdiction.  Because the Court
concludes it lacks jurisdiction over the New York Defendants and because it concludes the facts
alleged also are not sufficient to allege a bi-coastal conspiracy, the Court does not reach this
alternative argument.

[10]      Unless Brown can show a bi-coastal conspiracy, he cannot establish the New York
Defendants caused him harm – or others – harm in California.  For this reason, the Court does not
evaluate whether the allegations are sufficient to establish a separate conspiracy that would consist
only of the New York Defendants.  (*See, e.g.*, Dkt. No. 156, Opp. Br. at 8:28-11:19.)

*Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 113 (1986) (quoting *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489 (1977)); *see also Glen Holly Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1007-08 (9th Cir. 2003).

### 1. Brown Has Not Alleged Sufficient Acts to Allege an Agreement Between the California Defendants and the New York Defendants.

Throughout his FAC, Brown alleges that the Defendants "conspired" with one another and "agreed to raise prices." Those allegations amount to ultimate facts, which are not sufficient on their own to state a claim. *See Kendall*, 518 F.3d at 1047-48 (plaintiff must allege evidentiary facts to show "who, did what, to whom (or with whom), where and when" to state a Section 1 claim); *see also Twombly*, 550 U.S. at 565 n.10. Brown relies on allegations that he argues are circumstantial evidence of the alleged bi-coastal conspiracy. *See In re Citric Acid Litig.*, 191 F.3d 1090, 1093-94 (9th Cir. 1999) (noting that a price-fixing claim can be supported by direct or circumstantial evidence).[11] Thus, Brown must plead "allegations plausibly suggesting (not merely consistent with) agreement." *Twombly*, 550 U.S. at 557. In the Ninth Circuit, courts look to "plus factors" to make this distinction, *i.e.* "economic actions and outcomes that are largely inconsistent with unilateral conduct but largely consistent with explicitly coordinated action." *In Re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1193-94 (9th Cir. 2015).

Brown argues the existence of the conspiracy can be inferred from the fact that Sagaria attended an industry conference hosted by GGRA and, while there, "connected with" Vogler to talk about Vogler's tipless policy. (FAC ¶ 77.) Brown also relies on allegations that Borden, who is no longer a defendant, attended a town hall hosted by USHG, where USHG allegedly shared best practices and discussed its decision to end tipping. He also cites to Borden's presence at a conference in New York where one of the presentations was "Should America Ban Tipping."

---

[11]     Direct evidence must be explicit and require no inferences to establish the existence of an agreement. *In re Citric Acid Litig.*, 191 F.3d at 1094, 1104 n.8. The only potentially "direct" evidence of an agreement is an email purportedly authored by Paluska in September 2014 and allegations regarding the California Defendants' efforts to publicize their decision to eliminate tipping. (See FAC ¶¶ 57-70.) These allegations do not reflect an agreement between the California Defendants and any of the New York Defendants.

Brown also relies on allegations that Vogler, Hoffman, and Sagaria participated in a panel entitled "The Tipping Point: A Year Later," at a conference hosted by GGRA. Finally, Brown relies on Meyer's statement congratulating Camino for leading the way, and a tweet by USHG following the GGRA conference that it was "honored to share in the dialogue and learn from our west coast peers." (FAC ¶¶ 88, 92, 128.)

At best, these allegations link the USHG Defendants to Vogler, Hoffman, and Camino. However, "mere participation in trade-organization meetings where information is exchanged and strategies are advocated does not suggest an illegal agreement." *In re Musical Instruments*, 798 F.3d at 1196. That is because "[g]athering information about pricing and competition in the industry is standard fare for trade associations" and "trade associations often serve legitimate functions, such as providing information to industry members, conducting research to further the goals of the industry, and promoting demand for products and services." *In re Citric Acid Litig.*, 191 F.3d at 1098 (citing *Maple Flooring Mfrs. Ass'n v. United States*, 268 U.S. 563, 567 (1925)); *cf. Kelsey*, 245 F. Supp. 3d at 1144-45 (on motion to dismiss declining to infer "nefarious purpose or unlawful conduct" from allegations of defendants' attendance at owner meetings, the draft, and trade shows, which "constitute[d] standard fare and served legitimate functions in the NFL").

If a group of competitors make "complex and historically unprecedented changes in pricing structure at the very same time, and … for no other discernible reason," those facts could support an inference of conspiracy. *Twombly*, 556 U.S. at 556 n.4. Brown argues that is the case here. However, Brown fails to allege facts from which it would be reasonable and plausible to infer that the California Defendants compete with the New York Defendants. As one court facing a motion to dismiss a similar claim brought by Brown's counsel stated, "there is no reason why bar owners in one state would agree to fix prices with bar owners in another state. After all, they operate in totally different markets." *Uhr v. Responsible Hospitality Institute, Inc.*, No. 10-cv-4945 (PJS/TNL), 2011 WL 4091866, at *10 (D. Minn. Sept. 14, 2011) (granting motion to dismiss Sherman Act claim based on allegations that defendants fixed prices by eliminating happy hours).

Brown also relies on *In re Text Messaging Antitrust Litig.*, 630 F.3d 622 (7th Cir. 2010). There, the court found the plaintiffs sufficiently alleged a price-fixing conspiracy where the

20

defendants, who allegedly sold 90% of the text messaging services in the United States, increased prices "in the face of steeply falling costs." *Id.* at 628. The plaintiffs also alleged that the defendants' pricing structures had been "heterogenous and complex" but they "simultaneously jacked up their prices by a third." *Id.* Although the decision to eliminate tipping might be viewed as "historically unprecedented," Brown includes allegations that show there were discernible reasons for a price increase, including an increase in the minimum wage. *Cf. Kendall*, 518 F.3d at 1049 ("Consortiums indirectly establish the merchant discount fee, must as the cost of eggs sets a floor for the price of an omelet on a menu. Just like the restaurateur, the banks charge the merchant a higher price than their cost of business to make a profit. This behavior suggests a rational business decision, not a conspiracy.").

Brown does not include many details about the alleged price increases, but the allegations do not show the decision to do so was simultaneous or that the increases were uniform. Indeed, some of the New York Defendants are alleged to have eliminated tipping four years after the California Defendants eliminated tipping. (*See, e.g.,* FAC ¶¶ 81-82, 84-85, 98, 155, 157.) For that reason, the Court finds the facts here are distinguishable from the facts alleged in *In re Text Messaging*. *See also In re Musical Instruments*, 798 F.3d at 1197 n.14 (noting plaintiffs failed to include allegations that the prices of the defendants' products increased but, even if they had, the facts did not show the same "uniformity and simultaneity" as the facts in the *In re Text Messaging* case). Brown also includes allegations that although Meyer stated it would be tough to go it alone in making the switch to a no-tipping model, some Defendants did so without consequence. Thus, even if the decision to eliminate tipping was contrary to a Defendant's self-interest, the allegations do not suggest that "individual action would be so perilous in the absence of advance agreement that no reasonable firm would make the challenged move without such an agreement." *In re Musical Instruments*, 798 F.3d at 1195.

For the foregoing reasons, the Court concludes Brown fails to allege facts that suggest a conspiracy between these two groups of Defendants. Rather, the Court concludes the allegations, at best, demonstrate "conscious parallelism," which is not sufficient to state a claim under *Twombly*. Accordingly, the GRANTS Defendants' motion on that basis. Because there is no

dispute that they are subject to the Court's jurisdiction, the Court also has examined whether Brown has stated a claim solely against the California Defendants, including whether he has alleged facts that are sufficient to show antitrust injury. *See Paladin Associates, Inc. v. Montana Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003) ("Where the defendant's conduct harms the plaintiff without adversely affecting competition generally, there is no antitrust injury.").

Brown alleges the California Defendants "among and between themselves 'agreed to the following basic parameters: 1. Minimum 20% service charge 2. No tip line 3. Commitment to change to a service charge by (a certain date TBD) 4. That the service charge be used for employee wages, benefits, and payroll expenses.'" (FAC ¶ 57.) According to Brown, that agreement was memorialized in an email, and "[i]n late 2014, pursuant to their agreement," the California Defendants eliminated tipping and "menu prices were raised at Trou Normand, Bar Agricole, Camino and Comal." (*Id.* ¶ 70.)

Because Brown alleges the California Defendants raised menu prices (by some unspecified amount) and added a 20% service charge to their menus, it is not clear to the Court which prices he contends are fixed. If it is the menu prices, the email he relies on does not contain allegations about increasing menu prices. Brown does not include any other allegations from which the Court can infer that the California Defendants agreed to increase menu prices, let alone agreed to a uniform increase in prices. If it is the service charge, the Court concludes he has not alleged facts showing he was injured by that practice because he does not allege he would have paid less than 20% as a tip.

Accordingly, the Court GRANTS Defendants' joint motion to dismiss on this basis as well. It is not clear to the Court how Brown will be able to allege a plausible price fixing conspiracy that consists of just four restaurants, given the number of restaurants in the Bay Area. However, because the Court cannot say it would be futile, it will grant Brown a final opportunity to amend the complaint solely against the California Defendants.

## CONCLUSION

For the foregoing reasons:

1. The Court DENIES the Momofuku Defendants' motion to dismiss for lack standing

1    and GRANTS their motion to dismiss for lack of personal jurisdiction.  In light of the latter ruling,

2    the Court DENIES as moot their alternative motion to dismiss for improper venue.  (Dkt. No.

3    135).

4        2.    The Court GRANTS the Happy Cooking Defendants' motion to dismiss for lack of

5    personal jurisdiction.  (Dkt. No. 140).

6        3.    The Court GRANTS the Crafted Hospitality Defendants' motion to dismiss for lack

7    of personal jurisdiction.  In light of this ruling, it DENIES AS MOOT their alternative motion to

8    dismiss for improper venue.  (Dkt. No. 142).

9        4.    The Court GRANTS the motion to dismiss for lack of personal jurisdiction filed

10   by: (a) the USHG Defendants; (b) the Marlow Defendants; (c) the Huertas Defendants; and (d) the

11   Alliance Defendants.  (Dkt. No. 144);

12       5.    The Court GRANTS, IN PART, AND DENIES, IN PART, the motion to dismiss

13   for lack of standing by the EMP Defendants, and it GRANTS their motions to dismiss for failure

14   to effect service, and for lack of personal jurisdiction.  In light of those rulings, it DENIES, AS

15   MOOT, their alternative motion to dismiss for improper venue.

16       6.    The Court GRANTS, IN PART, AND DENIES, IN PART, the joint motion to

17   dismiss for lack of standing, and it GRANTS the joint motion failure to state a claim.  (Dkt. No.

18   141).

19       7.    The Court DISMISSES, WITHOUT PREJUDICE, all claims against the New York

20   Defendants.  The Court GRANTS Brown one final opportunity to amend his claims as to the

21   California Defendants only.  If Brown chooses to amend, he shall file a second amended

22   complaint by January 28, 2019.  The California Defendants shall answer or otherwise respond by

23   February 19, 2019.

24   //

25   //

26   //

27   //

28   //

8.     If Brown chooses not to file a second amended complaint, the Court shall dismiss, with prejudice, the claims against the California Defendants, will enter judgment, and shall close the file.

**IT IS SO ORDERED.**

Dated: January 7, 2019

_____

JEFFREY S. WHITE
United States District Judge