David Lavine, SBN 166744
dlavinelaw@gmail.com
MAILLY LAW
100 Pine Street, Suite 1250
San Francisco, CA  94111
Tel: (415) 745-3250

Guy E. Mailly, SBN 135720
gmailly@bohmwildish.com
MAILLY LAW
695 Town Center Drive, Suite 700
Costa Mesa, CA 92626
(714) 384-6531

Steven E. Uhr (admitted *pro hac vice*)
seuhr@uhrlawoffice.com
LAW OFFICE OF STEVEN E. UHR, PLLC
7010 W. 84th Street Circle
Bloomington, MN  55438
(952) 239-0346

Attorneys for Plaintiff
TIMOTHY BROWN

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| **TIMOTHY BROWN,** | **Case No. 4:17-cv-05782-JSW** |
| **Plaintiff,** | **PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| vs. | |
| **140 NM LLC,** *et al.*, | **Date:  April 12, 2019** |
| **Defendants.** | **Time:  9:00 a.m.**<br>**Courtroom: 5**<br>**Judge: Honorable Jeffrey S. White** |

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENTS………………………………….....…………….....1

I.   INTRODUCTION ……………………......……………………......…………….1

II.  SUMMARY OF FACTS ALLEGED IN THE SECOND AMENDED COMPLAINT…..2

III. ARGUMENT…………………………………………………………………….3

    A. Plaintiff Has Article III Standing to Bring the Alleged Antitrust Claims …….....…….....3

        1.  Whether and How Much Plaintiff Would Have Tipped Absent the Alleged Conspiracy is Immaterial to His Standing, and Likely Immaterial to Damages Calculation …………………………….....…………………………………….5

        2.  Plaintiff Has Established Standing to Seek Injunctive Relief ……....………….7

    B. Defendants' Motion to Dismiss for Failure to State a Claim Should be Denied……………………………………………………………………….8

        1.  Pertinent Law ……………………………………………………………….8

        2.  Plaintiff Alleges Direct, Non-Conclusory Evidence of an Illicit Agreement Among Defendants to Raise Prices in Concert……………………….....……11

        3.  To Allege a Price-Fixing Conspiracy, No Uniform Price Increase Among Participants, No Minimum Number of Participants Beyond Two, and No Minimum Market Share is Required ………………………….....……….....14

IV. CONCLUSION …………………………………………….....……...……....15

### TABLE OF AUTHORITIES

**Page**

**Cases**

*In re Automotive Refinishing Paint Antitrust Litigation*,

    2004 WL 7200711 * 3 (E.D. Pa. October 29, 2004)…………………………...……..12

*Bell Atl. Corp. v. Twombly*,

    550 U.S. 544 (2007)……………………………………………………………..8, 12

*Bogosian v. Gulf Oil Corp.*,

    561 F2d 434 (3rd Cir. 1977)……………….……………………………………4, 10

*In re Blood Reagents Antitrust Litigation*,

    2015 WL 6123211 at *30 (E.D. Pa 2015)…………………………………………6

*Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*,

    429 U.S. 477 (1977)……...… …… …………… …… …………… …… …………...4

*In re Capacitors Antitrust Litigation*,

    106 F.Supp.3d 1051 (N.D. Cal. 2015)……………...……...…………………9, 13

*Clayworth v. Pfizer*,

    233 P.3rd 1066 (Cal. 2010)……………….…………….………………………6

*In re Delta/AirTran Baggage Fee Antitrust*,

    2016 WL 3770957, at *7 (N.D. Ga. July 12, 2016)…………………………………5

*In re Elec. Books Antitrust Litigation*,

    2014 WL 1282293 at *16–17 (S.D.N.Y. Mar. 28, 2014)…………………………...…6

*In re Flash Memory Antitrust Litigation*,

    643 F.Supp.2d 1133 (N.D. Cal. 2009)…………………….………...…………..11, 12, 13

*Flat Glass Antitrust Litigation*,

    385 F.3rd 350 (3rd Cir. 2004)…………………………………………...……9

*In re Flat Panel Antitrust Litigation*,

    586 F.Supp2d 1109 (N.D. Cal 2008)……….…………….……………...……13

*In re Graphics Processing Units Antitrust Litigation*,

 540 F.Supp.2d 1085 (N.D. Cal. 2007)……………………………………………………13

*Hanover Shoe, Inc. v. United Shoe Machinery Corp*.,

 392 U.S. 481 (1968)……………………………………………..……………………6

*Hawaii v. Standard Oil of Cal.*,

 405 U.S. 251, fn. 14 (1968)…………….…………………………………………5

*Hensley-Maclean v. Safeway, Inc.*,

 No. 11-CV-01230-RS, 2015 WL 3956099 at *3 (N.D. Cal. June 29, 2015)………………8

*In re High Fructose Corn Syrup*,

 295 F.3d 651 (7th Cir. 2002)…………….……………………………………9, 10

*In re High-Tech Employee Antitrust Division*,

 856 F.Supp. 2d 1103 (N.D. Cal. 2012)….………………………………………14

*Intervest v. Bloomberg*,

 340 F.3d 144, 160 (3rd Cir. 2003)…………….……………………………..10

*Kamakahi v. American Society for Reproductive Medicine*,

 305 F.R.D. 164 (N.D. Cal. 2015)…………….……………………………………14

*In re K–Dur Antitrust Litig.*,

 No. 01–1652, 2007 WL 5302308, at *12 (D.N.J. Jan. 2, 2007)………...……………5

*Kendall v. Visa U.S.A., Inc.*,

 518 F.3d 1042 (9th Cir. 2008)…………….………………………………9

*Knevelbaard Dairies v. Kraft Foods, Inc.*,

 232 F.3d 979 (9th Cir. 2000)…………….………………………………14

*In re Lidoderm Antitrust Litigation*,

 2017 WL 679367 at *21 (N.D. Cal. 2017)………………………………………5

*Lucey v. Maricopa County*,

 693 F.3d 896 (9th Cir. 2012)…………….………………………………2

*Lujan v, Defenders of Wildlife*,

 504 U.S. 555 (1992)…………….………………………………………7

*Metronet Service Corp. v Quest Co.*,

  2001 WL 765167 at *2 (W.D. Wash. April 16, 2001)……………………………………..10

*In re Musical Instruments & Equip. Antitrust Litig.*,

  798 F.3d 1186 (9th Cir. 2015)…………………………………………………………..8, 9

*National Soc. of Professional Engineers v. United States*,

  435 U.S. 679 (1978)………………………....………………..……..…………………..8

*In re Nexium Antitrust Litig.*,

  777 F.3d 9 (1st Cir. 2015)……………………………………………………………..…5

*In re Online DVD–Rental Antitrust Litig.*,

  779 F.3d 914 (9th Cir. 2015)……………………………………………………....…….4

*Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*,

  81 F.Supp.4d 1 (D.D.C. 2015)…………………………………………………………...5

*In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*,

   906 F.2d at 432, 439…………………..…………………………..……………….…9, 12

*In re Plasma Derivative Protein Therapies Antitrust Litigation*,

  764 F.Supp.2d 991(N.D. Ill. 2011)……………..……………………………………..10

*In re Polypropylene Carpet Antitrust Litig.*,

   178 F.R.D. 603 (N.D. Ga.1997)…………………..……………………………………..5

*In re: Qualcomm*,

  2017 WL 5235649 at *11 (N.D. Cal. 2017)…………………………………...…………4

*Rossi v. Standard Roofing*,

  156 F.3d 452 (3rd Cir. 1998)…..…………………………………………….……10, 13

*Schuylkill Health System v. Cardinal Health*,

  2014 WL 3746817 at *4 (E.D. Pa. 2014)……..…………...………………………….…4

*Somers v. Apple, Inc.*

  729 F.3d 953 (9th Cir. 2013)…..……………………………………………..………….4

*Southern Pacific v. Darnell-Taenzer*,

  245 U.S. 531 (1918)……………………………………………………………………..6

*Starr v. Baca*,

    652 F.3d 1202 (9th Cir. 2011)…………….…………………………..…………9

*In re Static Radom Access Memory Antitrust Litigation*,

    580 F.Supp.2d. 896, 901 (N.D. Cal. 2008)…………………………………..13

*United States v. Socony Vacuum Co.*,

    310 U.S. 150 1940…………………………………………………………..8

*U.S. v. Falstaff Brewing Corp.*,

    410 U.S. 526, 534 n. 13 (1973)……………………………….……………9, 13

*Vaughn v. Bay Envtl. Mgmt., Inc.*,

    567 F.3d 1021 (9th Cir. 2009)……………….………………………………4

*Ward v. Apple, Inc.*,

    791 F.3d 1041 (9th Cir. 2015)……………………………..…....……………4


**<u>Statutes and Rules</u>**

15 U.S.C. § 1……………………………………………………………...8

Fed. R. Civ. P. 12(b)(6)…………………………………………………...9


**<u>Other Authorities</u>**

Phillip E. Areeda & Herbert Hovenkamp, <u>Antitrust Law</u>, ¶345 (4th ed. 2014)………………3

## Preliminary Statements

1.  A motion to dismiss should be granted if the plaintiff fails to allege facts sufficient to state a claim.  The Sherman Antitrust Act prohibits conspiracies to raise prices. Brown alleges that defendants confirmed in writing their agreement to raise prices by at least 20% by either raising menu prices or adding a 20% minimum service charge.  Isn't Brown's allegation of a *per se* violation of the Sherman Act sufficient to state a claim?

2.  A plaintiff has standing if he suffered an antitrust injury.  Paying a higher price, due to an antitrust conspiracy, is such an antitrust injury.  Brown paid higher prices on meals from two of the named defendants who agreed to raise prices by at least 20%. Doesn't Brown's paying higher prices due to defendants' agreement to raise prices and eliminate tipping constitute an antitrust injury and establish standing to bring this action?

## I.    INTRODUCTION

Following the Court's order granting defendants' motion to dismiss the First Amended Complaint (FAC) with partial leave to amend ["Order," Dkt. 178], plaintiff filed a Second Amended Complaint (SAC) alleging a price-fixing conspiracy among and between the named California defendants, owners and operators of four Bay Area restaurants [Dkt. 179]. Plaintiff alleges in the SAC upon information and belief that other restaurants in the Bay Area and elsewhere are also participants in the conspiracy. [Dkt. 179, SAC ¶¶ 23-24].

In the SAC, plaintiff alleges an agreement among defendants to increase restaurant prices in concert, through adding a mandatory service charge or by raising prices on menu items. [Dkt. 179, SAC ¶ 49]. Such an unlawful agreement to increase prices is not often able to be alleged by a plaintiff claiming a price-fixing conspiracy – plaintiffs most often must rely on only circumstantial evidence of such an agreement.  Plaintiff's allegation here of the terms of a written agreement among market participants to increase prices in collaboration with one another is the gold standard in antitrust conspiracy pleading and, alone, is sufficient to plead both federal and state antitrust conspiracy violations.

1

As a diner at two of the restaurants at issue during the course of the alleged conspiracy who paid higher prices as a result of the alleged conspiracy, plaintiff has established standing to assert claims under the Sherman Act and under the California Cartwright Act.  Because plaintiff has alleged an express agreement among the defendants to work together to increase prices at their restaurants, he has sufficiently pleaded facts to support each cause of action alleged in the SAC.  Accordingly, defendants' motion to dismiss the SAC for lack of standing and for the failure to state a claim should be denied.[1]

## II.    SUMMARY OF FACTS

Plaintiff alleges with specificity in the SAC that in September 2014, a group of restaurants in San Francisco, Oakland, and Berkeley, California agreed to raise prices, and that plaintiff, who purchased food from two of the restaurants at issue, consequently incurred antitrust injury and overcharge damages.

Defendants stated expressly in writing that they agreed to raise prices by a "minimum [of] 20%." [Dkt. 179, SAC ¶ 35].  That writing, a September 21, 2014 email from defendant John Paluska to the other defendants and to additional restaurateurs, is quoted extensively in the SAC.  *Id*.  The email identifies the parties to the agreement – "Russ and Allison (Camino), Thad Vogler (Bar Agricole and Bar Normand), Paul Canales (Duende) and us [referring to defendants Paluska and Hoffman]."  *Id*.  These defendants met the following day, September 22, 2014, at Camino to discuss the agreement with "a good-sized group."  *Id*.  The goal of the conspirators was to implement the agreement, i.e., to raise prices in a coordinated fashion, "by

---

[1]  Because the Court did not grant leave to amend the First Amended Complaint (FAC) with respect to establishing jurisdiction over the New York-based defendants (Dkt. 178 at 23), and did not permit jurisdictional discovery with respect to them despite the liberal standard favoring such discovery (Dkt. 178 at 16), plaintiff did not allege in the SAC, and does not argue here in support of, jurisdiction over or jurisdictional discovery concerning the New York-based defendants.  However, to preserve objection to the Court's ruling preventing plaintiff from re-filing against the New York defendants in this court for appeal, plaintiff notes his objection to that portion of the Court's Order here.  *See Lucey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) ("For claims dismissed with prejudice and without leave to amend, we will not require that they be repled in a subsequent amended complaint to preserve them for appeal").

2

the first of next year if not sooner." *Id*. As planned, at the end of 2014, defendants implemented the agreement and increased prices as a group. [Dkt. 179, SAC ¶ 49].[2]

Defendants hoped to "shift the existing culture of tipping," with "the Bay area [leading] the way," *id*., and thus have made considerable efforts to recruit other restaurants to participate and increase their prices as well. *See* SAC at ¶ 45 (on November 19, 2014, defendant Hopelain said the group should "tell people what we are doing and encourage/rally them to do it, too), ¶ 46 (Hopelain discussing proposed meeting in December 2014 with other Oakland restaurants "to explain what we are going to do [a]nd hopefully rally them to do the same"), ¶ 51 (in July 2015, sharing best practices with restaurants in New York City who subsequently increased prices), ¶ 51 (discussing best practices as to how to raise prices/eliminate tipping at trade association meetings). Eliminating tipping and increasing prices to customers was apparently not an isolated event among a highly select group of restaurants. A national survey in May 2016 by American Express concluded that almost 50 percent of restaurants have adopted or intended to adopt the tip-free, service-included business model. [Dkt. 179, SAC ¶ 60]. Seventeen percent indicated that they may do so if other restaurants followed suit, and another ten percent were undecided. [Dkt. 179, SAC ¶ 61].

## III.   ARGUMENT

### A.   Plaintiff Has Article III Standing to Bring the Alleged Antitrust Claims.

Plaintiff has established his standing to sue based on his allegations of having ordered and paid for meals in restaurants that expressly agreed to eliminate tipping and raise menu prices. "Because protecting consumers from monopoly prices is the central concern of antitrust, buyers have usually been preferred plaintiffs in private antitrust litigation. As a result, consumer standing to recover for an overcharge paid directly to an illegal cartel or monopoly is seldom doubted." Phillip E. Areeda & Herbert Hovenkamp, <u>Antitrust Law</u>, ¶345 (4th ed. 2014).

---

[2] Despite its initial agreement, Duende did not increase prices, and is not a defendant.

3

To proceed with an antitrust lawsuit, a plaintiff must show a "case or controversy" that brings jurisdiction to Article III courts, and must also show standing, which is defined as the kind of injury that the antitrust laws were intended to prevent and which "flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489 (1977). Antitrust standing can be established by showing that consumers paid higher prices for a product due to the anticompetitive actions of a defendant. *In re Online DVD–Rental Antitrust Litig.*, 779 F.3d 914, 922 (9th Cir. 2015). "Paying higher prices is the quintessential form of antitrust injury." *Schuylkill Health System v. Cardinal Health*, 2014 WL 3746817 at *4 (E.D. Pa. 2014). It is sufficient if the complaint makes a plausible claim of antitrust injury and damages. *In re: Qualcomm*, 2017 WL 5235649 at *11 (N.D. Cal. 2017). *See also Somers v. Apple, Inc.* 729 F.3d 953, 963 (9th Cir. 2013) (need to plead plausible injury and damage). The court must accept as true all material non-conclusory allegations in the complaint. *Vaughn v. Bay Envtl. Mgmt., Inc.*, 567 F.3d 1021, 1024 (9th Cir. 2009).

The plain allegations of injury and damages in the SAC meet this standard. Plaintiff alleges that he purchased food at two of the named defendants' restaurants during the conspiracy period, and that he was overcharged as a result of the alleged conspiracy. [Dkt. 179, SAC ¶ 32]. Both restaurants had raised prices to diners and had eliminated tipping. *Id.* The Court in its prior Order ruled that such purchases confer standing on plaintiff to seek damages. [Dkt. 178 at 4:18-19] (standing established by virtue of plaintiff's purchase of food at a higher cost than would have been charged absent a price-fixing conspiracy). That is a correct legal conclusion which should not be disturbed here.

Because antitrust conspirators are liable for the acts of their co-conspirators, there is no requirement that plaintiff make purchases from each defendant. *See Ward v. Apple Inc.*, 791 F.3d 1041, 1048 (9th Cir. 2015) (antitrust conspirators are liable for the acts of their co-conspirators)*; Bogosian v. Gulf Oil Corp.*, 561 F2d 434, 448 (3rd Cir. 1977) (the "fact that a customer has not made purchases from every co-conspirator does not prevent him from

4

suing all—for each co-conspirator contributed to the charging of the supra-competitive price paid by the purchaser").[3]

1.  Whether and How Much Plaintiff Would Have Tipped Absent the Alleged Conspiracy is Immaterial to His Standing, and Likely Immaterial to Damages Calculation.

In its Order dismissing the FAC with leave to amend, the Court questioned whether plaintiff has demonstrated injury "because he does not allege he would have paid less than 20% as a tip." [Dkt. 178 at 22:19-20].  Whether and how much plaintiff would have tipped but for the conspiracy is immaterial to standing.  An antitrust injury occurs the moment the purchaser incurs an overcharge.  *In re Lidoderm Antitrust Litigation,* 2017 WL 679367 at *21 (N.D. Cal. 2017) (*quoting In re Delta/AirTran Baggage Fee Antitrust,* 2016 WL 3770957, at *7 (N.D. Ga. July 12, 2016).  *See also Hawaii v. Standard Oil of Cal.*, 405 U.S. 251, 262 fn. 14 (1968) (antitrust damages are established by the amount of the overcharge, and "courts will not go beyond the fact of this injury to determine whether the victim of the overcharge has partially recouped its loss in some other way …").  *See also In re Nexium Antitrust Litig.,*777 F.3d 9, 27 (1st Cir. 2015) ("Antitrust injury occurs the moment the purchaser incurs an overcharge, whether or not that injury is later offset"); *In re K–Dur Antitrust Litig.*, No. 01–1652, 2007 WL 5302308, at *12 (D.N.J. Jan. 2, 2007) (plaintiffs are entitled to recover the full amount of the overcharge, regardless of whether they may have benefited in other ways

---

[3] In fact, standing would be proper even if plaintiff had not specified from which defendant(s) he purchased, or had made purchases from conspirators who were not named defendants.  *See Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co*., 81 F.Supp.3d 1, 7 (D.D.C. 2015) (finding that because the alleged co-conspirators are jointly and severally liable, "Plaintiffs ... need not identify, at this stage, to which co-conspirator they paid fuel surcharges ..."); *In re Polypropylene Carpet Antitrust Litig.*, 178 F.R.D. 603, 609 (N.D. Ga.1997) ( "[I]n order for Plaintiffs to possess standing to act as class representatives, Plaintiffs must adduce evidence showing they purchased carpet from the named Defendants or their co-conspirators during the alleged conspiracy period.")  Indeed, there is no requirement at the pleading stage that plaintiff identify the specific date and time of day he made purchases or the specific items purchased or amount paid.  "Plaintiffs need only allege, as they have in the amended complaint, that they suffered damages as a result of the conspiracy in which defendants participated."  *Oxbow Carbon*, 81 F.Supp.3d at 7 (D.D.C. 2015).  The allegations place defendants on notice of the nature of the injury and damages claimed, and defendants can explore additional details during discovery.

5

from defendants' price fixing); *In re Elec. Books Antitrust Litigation*, 2014 WL 1282293 at
*16–17 (S.D.N.Y. Mar. 28, 2014) (alleged benefits to consumers, even those "directly related
to the goods at issue," would not be used to offset or reduce any damages owed by the
defendant); *In re Blood Reagents Antitrust Litigation*, 2015 WL 6123211 at *30 (E.D. Pa
2015) ("[Defendant] cites no case in which a court required plaintiffs to account for potential
decreases in the price of some products as the result of an alleged horizontal price-fixing
conspiracy").

       In the same vein, a defendant cannot argue that the damages of a direct purchaser are
limited because the purchaser passed on the overcharge to downstream customers.  *Hanover
Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481 (1968).  The Supreme Court based
its ruling in part on practical concerns:  pass-through mitigation would undermine judicial
economy and reduce incentives for injured parties to bring suits; and the defendants would
retain the fruits of their unlawful conspiracy and have less incentive to not engage in such
activity in the future.[4]  The California Supreme Court reached the same result under its
antitrust law *in Clayworth v. Pfizer*, 233 P.3rd 1066 (Cal. 2010) (no pass-through mitigation
under the Cartwright Act).

       Similarly, here, defendants cannot escape liability on the notion that, but for the
conspiracy, plaintiff might, or even likely would, have voluntarily tipped a server.
Defendants have provided no authority to show that any *voluntary* tip that might have been
paid to a server diminishes plaintiff's standing or requires a potential offset to damages

---

[4] The above principle has a long pedigree. In *Southern Pacific v. Darnell-Taenzer*, 245 U.S.
531, 533-34 (1918) the Supreme Court ruled that a pass-on defense is not available in an
action for damages caused by excessive rate charges under federal transportation law. Writing
for the Court, Justice Holmes explained:

> The only question before us is . . . whether the fact that the plaintiffs were able
> to pass on the damage that they sustained in the first instance by paying the
> unreasonable charge . . . prevents their recovering the overpayment from the
> carriers. The answer is not difficult. The general tendency of the law, in regard
> to damages at least, is not to go beyond the first step.  As it does not attribute
> remote consequences to a defendant, so it holds him liable if proximately the
> plaintiff has suffered a loss. The plaintiffs suffered losses in the amount of the
> verdict when they paid. Their claim accrued at once in the theory of the law
> and it does not inquire into later events.                                    6

arising from an antitrust conspiracy to raise prices *required* to be paid to the restaurateurs for food and drink.  In any event, the issue of any possible differences in damages calculation across class members is properly developed at the class certification and expert discovery stages of the case, not at the motion to dismiss stage, when only allegation of antitrust injury arising from a conspiracy to increase prices is required.

Accordingly, plaintiff has established standing to sue as a victim of antitrust injury.

2.   Plaintiff Has Established Standing to Seek Injunctive Relief.

The Court ruled in its prior Order, and defendants continue to contend, that plaintiff should be denied standing to pursue injunctive relief because he has not shown in his allegations that he is likely to incur a similar injury again.  [Dkt. 178 at 5] (standing to pursue injunctive relief not established without allegation that plaintiff residing out-of-state will dine at one of the restaurants at issue in the "immediate future").  Defendants read the standing standard with respect to seeking injunctive relief too narrowly.

The Supreme Court set the general rule for standing to seek injunctive relief in *Lujan v, Defenders of Wildlife,* 504 U.S. 555, 560 (1992):  plaintiff must demonstrate that, having suffered a "concrete and particularized harm," he is sufficiently likely to be harmed again "in a similar way."  While Plaintiff has not alleged that he has a firm intention of again eating at one of the four restaurants currently at issue, he has alleged that the price-fixing conspiracy to eliminate tipping and increase prices likely extends well beyond the defendants identified by name in the SAC, and beyond the Bay Area, and that, consequently, he and other putative class members, locals and visitors alike, are likely to incur "higher restaurant prices in lieu of voluntary tipping" at a restaurant in the future.  (Dkt. 179, SAC ¶ 34).  Such an allegation does not identify a future dining experience in a complicit restaurant by specific date or location, but it makes clear that such a dining experience may be difficult to avoid by plaintiff and other diners.

Should this allegation of plaintiff's intention not be deemed sufficient to establish standing to seek injunctive relief, plaintiff would seek the Court's forbearance from granting the motion to dismiss in this respect in favor of allowing an additional putative class member as

7

needed at the class certification stage, perhaps one with a more formed intention to eat at one or more of the restaurants owned or operated by defendants in the future, to become a named plaintiff, in order to fill any perceived standing gap.  *See Hensley-Maclean v. Safeway, Inc.*, No. 11-CV-01230-RS, 2015 WL 3956099 at *3 (N.D. Cal. June 29, 2015) (so long as plaintiff had standing to bring class action claim initially, plaintiff should be granted leave to amend to substitute a class member with current standing as a named plaintiff).

B.   **Defendants' Motion to Dismiss for Failure to State a Claim Should be Denied.**

1.   Pertinent Law

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States." 15 U.S.C. § 1.  Horizontal price fixing is a *per se* violation of the Sherman Act, which renders immaterial any asserted reasonableness for the fixed prices, or the motivation of the conspirators.  *United States v. Socony Vacuum Co*., 310 U.S. 150, 213-14 1940.  *Per se* liability is reserved for those agreements that are "so plainly anticompetitive that no elaborate study of the industry is needed to establish their illegality."  *National Soc. of Professional Engineers v. United States*, 435 U.S. 679, 692 (1978).

To state a § 1 claim, "a formulaic recitation of the elements ... will not do."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  Rather, the complaint must allege such facts as will nudge the claim "across the line from conceivable to plausible."  *Id.* at 570.  In this regard, "parallel conduct, such as competitors adopting similar policies around the same time in response to similar market conditions, may constitute circumstantial evidence of anticompetitive behavior."  *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1193 (9th Cir. 2015).  "But mere allegations of parallel conduct—even consciously parallel conduct—are insufficient...." *Id.*  "Plaintiffs must plead something more, some further factual enhancement, a further circumstance pointing toward a meeting of the minds of the alleged conspirators." *Id.* (quotation marks omitted).  That is, "plaintiffs must plead evidentiary facts," such as "who, did what, to whom (or with whom), where, and when," *id.* at 1194 n.6 (quotation marks omitted), or "circumstantial evidence in the form of "plus

8

factors" that "coupled with parallel conduct ... take a complaint from merely possible to plausible." *Id.* at 1194 n.7; *see also Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008) (plaintiff must plead evidentiary facts, not merely conclusions, to reach plausibility). Plus factors are defined as "economic actions and outcomes that are largely inconsistent with unilateral conduct but largely consistent with explicitly coordinated action."  *In re Musical Instruments,* 798 F.3d at 1194.

The most important evidence of conspiracy will generally be non-economic evidence that there was an actual, manifest agreement not to compete.  *Flat Glass Antitrust Litigation*, 385 F.3rd 350, 361 (3rd Cir. 2004).  That evidence may involve customary indications of traditional conspiracy, or proof that the defendants assembled together and exchanged assurances of common action or otherwise adopted a common plan even though no meetings, conversations, or exchanged documents are shown.  *Id.*

The *Twombly* standard does not impose a *probability* requirement at the pleading stage. Rather, "it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Id.* at 556.  In this Circuit, "[i]f there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint will survive a motion to dismiss under Rule 12(b)(6).  Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  The task of the district court "is not to sustain or dismiss a complaint based on whether the Court feels it is a winner or has curb appeal."  *In re Capacitors Antitrust Litigation*, 106 F.Supp.3d1051, 1063 (N.D. Cal. 2015).  The court's task is to determine whether the facts alleged in the complaint rise above mere speculation, even if the court has doubts about them. *Id.*

Courts have recognized that direct evidence of conspiracy, such as an admission or a written price-fixing agreement, "will rarely be available" in a price-fixing case.  *In re Coordinated Pretrial Proceedings in Petroleum Prods Antitrust Lit.,* 906 F.2d at 439.  It is for this reason that "circumstantial evidence is the lifeblood of antitrust law."  *U.S. v. Falstaff*

9

*Brewing Corp.,* 410 U.S. 526, 534 n. 13 (1973).  S*ee also High Fructose,* 295 F.3d at

662 (noting that "ambiguous" evidence should be considered in antitrust claims because

"most cases are constructed out of a tissue of such statements and

other circumstantial evidence").

The likelihood that a plaintiff will possess direct evidence of a secret conspiracy at the

pleading stage prior to discovery is even more remote.  Such evidence is "peculiarly within

the possession of the defendant."  *Metronet Service Corp. v Quest Co*., 2001 WL 765167 at

*2 (W.D. Wash. April 16, 2001).  *See also Bogosian v. Gulf Oil Corp*, 337 F.Supp. 1234,

1235-36 (E.D.Pa. 1972) ("Experience has shown that where a conspiracy is suspected, the

proof of it most frequently emerges from discovery aimed at defendants. In providing for

private remedies in antitrust cases, Congress intended thereby to broaden the potential for

enforcement of the antitrust laws by private citizens. To require that each private plaintiff

have personal knowledge of the legal and factual intricacies of an alleged national conspiracy

would impair at least to some degree the ability of private citizens to augment by private

action governmental enforcement of Congress's will").

However, where direct non-conclusory evidence of conspiracy is available at the

pleading stage, "the fact finder is not required to make inferences to establish facts, and

therefore the Supreme Court's concerns over the reasonableness of inferences in antitrust

cases evaporate." *Rossi v. Standard Roofing,* 156 F.3d 452, 466 (3rd Cir. 1998).  *See also*

*Intervest v. Bloomberg*, 340 F.3d 144, 160 (3rd Cir. 2003) (direct evidence of conspiracy

"obviates the fact finder's need to make inferences of a conspiracy"); *In re High Fructose*

*Corn Syrup*, 295 F.3d 651, 654 (7th Cir. 2002) (because price fixing is a *per se* violation of the

Sherman Act, an admission by the defendants that they agreed to fix prices is "all the proof

that a plaintiff needs"); *In re Plasma Derivative Protein Therapies Antitrust Litigation*, 764

F.Supp.2d. 991, 998 (N.D. Ill. 2011) (direct evidence of agreement—such as an admission by

an insider—will permit a plaintiff to survive summary judgment).                                    10

2.  <u>Plaintiff Alleges Direct, Non-Conclusory Evidence of an Illicit Agreement Among Defendants to Raise Prices in Concert.</u>

The SAC contains extensive detailed allegations, as to the "who, what, where" of the alleged conspiracy, including a written summary of a term-by-term agreement to increase prices together as a group. The allegations are not merely conclusory allegations of conspiracy, but rather an express agreement in defendants' own words.  Hence, the allegations are not only plausible, they were actuated as designed -- and thus they "easily satisfy the notice pleading requirements of the Federal Rules …".  *In re Flash Memory Antitrust Litigation*, 643 F.Supp.2d 1133, 1147 (N.D. Cal. 2009).

The direct evidence of conspiracy includes the following:

1.  On September 21, 2014, defendant Paluska sent an email to defendants Vogler, Moore, Canales and others stating that they had "agreed to … minimum 20% service charge …." The email said there would be a meeting the following day at Camino to discuss. [Dkt. 179, SAC ¶ 35].

2.  The conspirators decided that they would "announce as a group with a press release in mid-October, with the idea of implementing the new service charge model within a few weeks from the announcement, likely between Dec 1 [2014] and Jan 1 [2015 ]." [Dkt. 179, SAC ¶ 35].

3.  On October 24, 2014, the San Francisco Chronicle reported on the agreement. The article quotes Paluska – "If we were doing this, and there was a sense that the rest of the world wouldn't pay much mind to it, I would be more concerned. But this is on everybody's minds." [Dkt. 179, SAC ¶ 37].

4.  On October 27, 2014, defendant Vogler said on a radio interview that "we as a group decided" to increase prices and eliminate tipping.  [Dkt. 179, SAC ¶ 39].

5.  In late 2014, the defendant restaurants implemented the agreement and raised prices. [Dkt. 179, SAC ¶ 39].

Additional direct and strong circumstantial evidence of collusion is found in the SAC at ¶¶ 37-38 (media reports including quotes from defendants),   43 (conspirators "check[ing] in" with each other to see how things are going), ¶ 44 (concern that another restaurant that eliminating tipping had not raised prices enough), ¶¶ 35, 45-46 (recruiting other Bay

11

Area restaurants to join),[5] and ¶¶ 51, 54, 59-60 (sharing best practices with restaurants in New York through trade association meetings and in other settings).[6]

Defendants have not explained why an express agreement among the defendants to increase prices by a minimum of 20% is not a sufficient allegation of evidentiary facts to defeat a motion to dismiss.  Defendants have offered no benign alternative explanation. Sharing of information across industry participants may be, as the Court notes at Dkt. 178 at 20, "standard fare" or stock-in-trade in the restaurant industry – but such information sharing is no longer benign when it results in, or aids in maintaining, an illicit agreement to raise prices in concert.[7]  Even if there potentially were an alternative innocent explanation, it is not the role of the Court to make factual findings at the pleading stage.  "A well-pleaded complaint may proceed even if it strikes a savvy judge very remote and unlikely." *Twombly*, 550 U.S. at 556.

This Court in *In re Flash Memory Antitrust Litigation*, *supra*, denied a motion to dismiss even where the complaint did not include direct evidence of collusion.  Rather, the court relied on circumstantial evidence suggestive of conspiracy, such as "allegations of specific instances where output was reduced, following meetings by the defendants that, in turn, led to "implausible" price increases."  The plaintiff in that case did not have the benefit

---

[5] Dkt. 179, SAC at ¶ 45 ("tell [other restaurant owners] what we are doing and encourage/rally them to do it, too"); SAC at ¶ 46 ("we are trying to set up another meeting … with other Oakland restaurants to explain what we are going to do . . . [a]nd hopefully rally them to do the same … a lot of people are trying to figure it out"); SAC at ¶ 37 ("this is on everybody's mind").

[6] The FAC contained substantial allegations that restaurants in NYC and elsewhere had also conspired to increase prices and eliminate tipping.  The Court dismissed the New York defendants on jurisdictional grounds and because plaintiff had not sufficiently alleged a "bi-coastal" conspiracy.  Plaintiff had not characterized the conspiracy as strictly "bi-coastal"; rather, the evidence suggests that restaurants in many markets are eliminating tipping and raising prices in concert, in order for consumers to accept this change as an emerging industry standard rather than as an isolated restaurant decision which consumers can avoid by patronizing a different restaurant.  [Dkt. 179, SAC ¶ 24].

[7] "It is widely understood that trade associations can be used to facilitate the creation and maintenance of price-fixing conspiracies …".  *In re Automotive Refinishing Paint Antitrust Litigation*, 2004 WL 7200711 * 3 (E.D. Pa. October 29, 2004).

of a written agreement to raise prices to rely on – yet the court still found the complaint sufficient:

> The Ninth Circuit has aptly observed that "direct evidence will rarely be available" to prove the existence of a price fixing conspiracy. *See Petroleum Prods.,* 906 F.2d at 439. It is for that reason that "circumstantial evidence is the lifeblood of antitrust law." *U.S. v. Falstaff Brewing Corp.,* 410 U.S. 526, 534 n. 13, 93 S.Ct. 1096, 35 L.Ed.2d 475 (1973). In this case, the allegations regarding Defendants' participation and use of joint venture and cross-licensing agreements go beyond merely alleging that Defendants' joint ventures, licensing agreements and other business affiliations simply fostered an "opportunity" to collude. To the contrary, Plaintiffs alleged that such agreements were used as the means to maintain and achieve the end result of the conspiracy by controlling the supply, and thereby permitting increases in the price for the products. … While these allegations may not expressly state that the agreements were illegal, they nonetheless may be considered with the pleadings as a whole in determining the existence of a "plausible" conspiracy. *See High Fructose,* 295 F.3d at 662 (noting that "ambiguous" evidence should be considered in antitrust claims because "most cases are constructed out of a tissue of such statements and other circumstantial evidence").

*Id*. at 1147.

In this case, plaintiff's allegations of collusive price increases across restaurants are stronger, more direct, and more compelling than those in *In re Flash Memory*. As the allegations supply direct evidence of express agreement and follow-through collusive action, "the fact finder is not required to make inferences to establish facts, and therefore the Supreme Court's concerns over the reasonableness of inferences in antitrust cases evaporates." *Rossi v. Standard Roofing,* 156 F.3d at 466.

Circumstantial evidence supporting an antitrust conspiracy was also offered to overcome a motion to dismiss in *In re Static Radom Access Memory Antitrust Litigation*, 580 F.Supp.2d 896, 901 (N.D. Cal. 2008). In that case, this court denied defendants' motion to dismiss because there was evidence, including an email from one competitor to another stating "Are you willing to exchange product roadmaps again," suggesting that they had a "standing agreement" to exchange highly confidential information, from which one could infer a price-fixing conspiracy. There was no agreement with terms to raise prices on a schedule alleged in the complaint. Even with this relatively weaker evidence, the case

13

was allowed to proceed.[8]  The evidence of an express written agreement to raise prices collusively in the instant case is of a strikingly higher grade, and therefore should pose no obstacle to continuing past the pleading stage.

3. <u>To Allege a Price-Fixing Conspiracy, No Uniform Price Increase Among Participants, No Minimum Number of Participants Beyond Two, and No Minimum Market Share Is Required.</u>

As to the Court's question in its Order, Dkt. 178 at 22:14-15, as to "which prices [plaintiff] contends are fixed," plaintiff clarifies the matter as follows:  "[i]n late 2014, pursuant to their agreement, the defendants eliminated tipping from their restaurants, and either a generally applicable service charge was added or menu item prices were increased at Bay Area restaurants Trou Normand, Bar Agricole, Camino and Comal." [Dkt. 179, SAC ¶ 49].  Further, the written agreement among the conspirators states clearly that each restaurant will add a "[m]inimum 20% service charge." [Dkt. 179, SAC ¶ 35].  An actionable price-fixing conspiracy does not require that the defendants all increase prices by the same amount. *See, e.g., Kamakahi v. American Society for Reproductive Medicine*, 305 F.R.D. 164, 174 (N.D. Cal. 2015) (*per se* unlawful for competitors to agree even on minimum prices).  It is sufficient that the defendants agree to increase prices in collaboration with one another.

As to the Court's concern that "[i]t is not clear to the Court how Brown will be able to allege a plausible price fixing conspiracy that consists of just four restaurants, given the number of restaurants in the Bay Area" [Dkt. 178 at 22:22-23], a market need not be defined and pleaded in a horizontal price-fixing case, and not defining the market or the market share of the named defendants is not a bar to antitrust conspiracy pleading or recovery. *Knevelbaard Dairies v. Kraft Foods, Inc.,* 232 F.3d 979, 986 (9th Cir. 2000) ("When a *per se* violation such as horizontal price fixing has occurred, there is no need to define a relevant market or to show that the defendants had power within the market").  Even so,

---

[8] *See also  In re Capacitors Antitrust Litigation*, 106 F.Supp.3[rd] 1051 (N.D. Cal. 2015) (allegations sufficient to avoid dismissal even though circumstantial); *In re Flat Panel Antitrust Litigation*, 586 F.Supp2d 1109, 1115-16 (N.D. Cal 2008) (same); *In re Graphics Processing Units Antitrust Litigation*, 540 F.Supp.2d 1085 (N.D. Cal. 2007) (same); *In re High-Tech Employee Antitrust Division*, 856 FSupp2d 1103 (N.D. Cal. 2012) (same).

14

plaintiff alleges that the conspiracy appears poised to grow in scope among further participants, and may well have already.  [Dkt. 179, SAC at ¶¶ 23-24, 35, 37, 45-46, 51-54].[9]

## IV.    CONCLUSION

Plaintiff has sufficiently pleaded that he has standing by alleging that he purchased food at a restaurant at prices increased pursuant to agreement with other restaurants.  He has alleged facts sufficient to allege a *per se* violation of the Sherman Act by alleging that defendants conspired to raise restaurant prices to consumers, and that he was harmed thereby. As plaintiff has established standing to bring the price-fixing claims in the SAC, and has sufficiently pleaded violations of federal and state antitrust law, defendants' motion to dismiss should be denied.

Dated:  March 5, 2019

/s/ David Lavine              /s/ Guy E. Mailly              /s/ Steven E. Uhr
David Lavine                  Guy E. Mailly                  Steven E. Uhr (*pro hac vice*)
Counsel for Plaintiff         Counsel for Plaintiff          Counsel for Plaintiff
TIMOTHY BROWN                 TIMOTHY BROWN                  TIMOTHY BROWN

---

[9] Defendant also argues that plaintiff must allege a conspiracy "that reaches beyond California." [Dkt. 180 at 8].  It is unclear whether this is an interstate commerce argument, but, if it is, the complaint plausibly alleges that the alleged conspiracy has a substantial impact on interstate commerce in enumerated ways. [Dkt. 179, SAC ¶ 81].

15