UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY BROWN,<br><br>        Plaintiff,<br><br>    v.<br><br>140 NM LLC, et al.,<br><br>        Defendants. | Case No. 17-cv-05782-JSW<br><br>**ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND**<br><br>Re: Dkt. No. 180 |

Now before the Court for consideration is the motion to dismiss filed by defendants: 140 NM LLC, d/b/a Trou Normand ("Trou Normand"), Bar Agricole, LLC d/b/a Bar Agricole ("Bar Agricole"), and Thaddeus M. Vogler ("Vogler") (the "Vogler Defendants"); Hopemoorelain, LLC, d/b/a Camino ("Camino"), Russell Moore ("Moore"), and Allison Hopelain ("Hopelain") (the "Camino Defendants"); Es Verdad, LLC, d/b/a Comal ("Comal"), John Paluska ("Paluska"), and Andrew Hoffman ("Hoffman") (the "Comal Defendants") (collectively "Defendants"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it HEREBY GRANTS Defendants' motion, without leave to amend.

**BACKGROUND**

Plaintiff, Timothy Brown ("Brown"), alleges Defendants are part of a "larger conspiracy spearheaded by the Union Square Hospitality Group." According to Brown Defendants conspired to eliminate tips and to increase prices "by around twenty percent," either by increasing menu prices or by adding a surcharge.[1] (*See, e.g.,* Second Amended Complaint ("SAC") ¶¶ 1-2, 23-24.)

---

[1] Defendants note that Brown alleges that Vogler publicly stated that he had abandoned the no-tipping policy at his restaurants, Bar Agricole and Trou Normand. (*See* SAC ¶ 62.) Defendants also assert that Camino is now closed.

1

1   On January 7, 2019, the Court dismissed Brown's first amended complaint on the basis
2   that the Court lacked personal jurisdiction over the "New York Defendants," whom Brown alleged
3   conspired with Defendants to increase prices.  The Court also concluded Brown failed to state a
4   claim and lacked standing to seek injunctive relief.  *See generally Brown v. 140 NM LLC,* No. 17-
5   cv-5782-JSW, 2019 WL 118425 (N.D. Cal. January 7, 2019).

6   On January 28, 2019, Brown filed the SAC, in which he asserts claims on behalf of himself
7   and on behalf of a putative class for: (1) a violation of the Sherman Act, 15 U.S.C. section 1; (2) a
8   violation of California's Cartwright Act, California Business and Professions Code sections
9   16720, *et seq.*; aand (3) a violation of California's Unfair Competition Law, California Business
10  and Professions Code sections 17200, *et seq*.

11  Defendants argue that Brown fails to allege facts to show he has Article III standing to
12  seek damages or injunctive relief.  Defendants also argue Brown fails to state a claim under the
13  Sherman Act and, as a result, his state law claims fail as well.  The Court shall address the relevant
14  facts, as necessary, in the analysis.

**ANALYSIS**

**A.   The Court Grants the Motion to Dismiss for Lack of Article III Standing.**

Defendants argue Brown has not alleged he has standing under Article III of the United States Constitution, including standing to seek injunctive relief.  The Court evaluates a motion to dismiss for lack of standing under Federal Rule of Civil Procedure 12(b)(1).  *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).  Where, as here, a defendant makes a facial attack on jurisdiction, the factual allegations of the complaint are taken as true.  *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion dismiss, [courts] presume that general allegations embrace those specific facts that are necessary to support the claim.") (internal citation and quotations omitted).  The plaintiff is then entitled to have those facts construed in the

1  light most favorable to him or her. *Fed'n of African Am. Contractors*, 96 F.3d at 1207.

2  At the pleading stage, a plaintiff "must 'clearly … allege facts demonstrating' each
3  element" of Article III's standing requirements. *In re Online DVD-Rental Antitrust Litig.*, 779
4  F.3d 914, 922 (9th Cir. 2015) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). Those
5  requirements are that the plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the
6  challenged conduct of the defendant, (3) that is likely to be redressed by a favorable judicial
7  decision." *Spokeo, Inc. v. Robins*, __ U.S. __, 136 S.Ct. 1540, 1547 (2016) (citing *Lujan*, 504 U.S.
8  at 560-61. The jurisdictional question of standing precedes, and does not require, analysis of the
9  merits." *Equity Lifestyle Props., Inc. v. County of San Luis Obispo*, 548 F.3d 1184, 1189 n.10 (9th
10 Cir. 2008). Thus, a plaintiff may be able to sufficiently allege facts to show standing, even if
11 those facts are not sufficient to state a claim for relief.

12 In addition, "[s]tanding must be shown with respect to each form of relief sought, whether
13 it be injunctive relief, damages or civil penalties." *Bates v. United Parcel Serv.*, 511 F.3d 974,
14 985 (9th Cir. 2007) (citing *Friends of the Earth v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S.
15 167, 185 (2000)). In order to show standing to pursue injunctive relief, a plaintiff must
16 "demonstrate that he has suffered or is threatened with a 'concrete and particularized' legal harm,
17 coupled with a 'sufficient likelihood that he will again be wronged in a similar way.'" *Bates*, 511
18 F.3d at 985 (quoting first *Lujan*, 504 U.S. at 560 and then *City of Los Angeles v. Lyons*, 461 U.S.
19 95, 111 (1983)). The latter inquiry turns on whether the plaintiff has a "real and immediate threat
20 of repeated injury." *Id.* The threat of future injury cannot be "conjectural or hypothetical" but
21 must be "certainly impending" to constitute an injury in fact for injunctive relief purposes.
22 *Davidson v. Kimberly Clark*, 889 F.3d 956, 967 (9th Cir. 2018).

23 Brown alleges that, in late 2014 and pursuant to alleged agreement set forth in an email,
24 "the defendants eliminated tipping from their restaurants, and either a generally applicable service
25 charge was added or menu item prices were increased[.]" (SAC ¶¶ 35, 49.) Brown alleges that on
26 June 26, 2017, he dined at Comal and Camino and alleges each of these restaurants removed the
27 tip line from the receipts. According to Brown, by that time Vogler and his restaurants had
28 returned to tipping. (*Id.* ¶ 62.) Brown alleges that he paid $10.93 at Camino, "with service

included," and he alleges "Comal added a '20% service charge in lieu of a tip to the bill." (SAC ¶ 32.) Brown also alleges he "generally tips in an amount tied to the quality of his dining experience, sometimes at 20%, but often less, and occasionally more." (*Id.* ¶ 33.)

Unlike his allegations against one of the former Defendants, Brown does not allege specific facts in paragraph 32 about how the prices at Camino and Comal varied from the prices before the alleged conspiracy began. (*Id.*) Brown also does not allege that he would have tipped in an amount less than the 20% service charge he paid at Comal. The Court concludes that Brown has not alleged *facts* to show he suffered an injury in fact.[2]

The Court previously concluded that because Brown, who is a resident of Minnesota, had not alleged that he intended to dine at Defendants' restaurants in the immediate future, he failed to allege facts sufficient to show he has standing to seek injunctive relief. *See Brown*, 2019 WL 118425, at *3. Brown does not include any new facts that would alter the Court's ruling or from which the Court could infer it is likely, rather than merely speculative, that he would be injured by the alleged conduct.

Accordingly, the Court GRANTS Defendants' motion to dismiss for lack of standing.

**B.     Brown Fails to State A Claim For Relief Under the Sherman Act.[3]**

Assuming for the sake of argument that Brown's allegations are sufficient to show he has standing, the Court would still grant Defendants' motion on the basis that Brown fails to allege facts to show antitrust injury. On a Rule 12(b)(6) motion, the Court assumes "that all the allegations in the complaint are true[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

---

[2]     For this reason, Brown also lacks standing under the UCL, which requires him to show he "suffered injury in fact and [] lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. This provision requires a plaintiff to sufficiently allege: (1) he or she has "lost 'money or property' sufficient to constitute an 'injury in fact' under Article III of the Constitution" and (2) there is a "causal connection" between the defendant's alleged UCL violation and the plaintiff's injury in fact. *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203-04 (9th Cir. 2010) (citations omitted).

[3]     The parties agree that the Cartwright Act claim is subject to the same analysis as the Sherman Act claim and that if the latter claim fails, so does the former. *See, e.g., Walker v. USAA Cas. Ins. Co.*, 474 F. Supp. 2d 1168, 1174 (E.D. Cal. 2007); *Wolf Concept S.A.R.L. v. Eber Bros. Wine & Liquor Corp.*, 736 F. Supp. 2d 661, 669 (W.D.N.Y. 2010). Brown also agrees that his UCL claim hinges upon the viability of the Sherman Act claim.

4

1  (2007). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the

2  court to draw the reasonable inference that the Defendant is liable for the misconduct alleged."

3  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

4        Section 1 of the Sherman Act prohibits any "contract, combination in the form of trust or

5  otherwise, or conspiracy, in restraint of trade or commerce among the several States." 15 U.S.C. §

6  1. Brown must allege facts that show (1) a contract, combination or conspiracy among two or

7  more persons or distinct business entities; (2) by which the persons or entities intended to harm or

8  restrain trade or commerce among the several States, … (3) which actually injures competition."

9  *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008). Antitrust injury is "loss or

10  damage 'of the type the antitrust laws were designed to prevent and that flows from that which

11  makes defendants' acts unlawful.'" *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 113

12  (1986) (quoting *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489 (1977)). *See*

13  *also Paladin Ass'cs, Inc. v. Montana Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003) ("Where the

14  defendant's conduct harms the plaintiff without adversely affecting competition generally, there is

15  no antitrust injury.").

16        Brown's theory of liability is that the Defendants engaged in a horizontal conspiracy to

17  conspired to fix prices either by increasing menu prices or by adding a service charge. Horizontal

18  price fixing is *per se* unlawful under the Sherman Act. *See, e.g., Texaco v. Dagher*, 547 U.S. 1, 5

19  (2006) ("per se liability is reserved for only those agreements that are 'so plainly anticompetitive

20  that no elaborate study of the industry is needed to establish their illegality'") (quoting *Nat'l Soc.*

21  *of Prof. Engrs. v. United States*, 435 U.S. 679, 692 (1978)). In order to show he was injured by

22  this practice, Brown would need to show he paid an inflated price for his meals. *See, e.g., Big*

23  *Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1102 (9th Cir. 1999); *In re Lidoderm*

24  *Antitrust Litig.*, No. 14-md-02521-WHO, 2017 WL 679367, at *21 (N.D. Cal. Feb. 21, 2017)

25  (addressing injury in context of motion for class certification).

26        As discussed above, Brown includes no facts that show menu prices at Defendants'

restaurants increased as a result of the alleged agreement.[4]  Thus, if the prices that were fixed were the menu prices, there are no facts to show he paid an overcharge.  Brown also contends that the Defendants "fixed" prices by adding a 20% service charge.  Brown alleges this service charge was added to a menu *in lieu of and not in addition to* a tip.  However, there are no facts in the SAC to support the allegation that the 20% service charge is more than consumers would have paid by way of a tip, such that it would be reasonable to infer it is an overcharge.  Accordingly, the Court concludes Brown fails to allege facts showing a loss of the type "that the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful."  *Cargill*, 479 U.S. at 113.  Accordingly, the Court GRANTS Defendants' motion to dismiss on this basis as well.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss.  Brown amended his claim once as a matter of right, and the Court granted him a further opportunity to amend when it dismissed the first amended complaint.  The Court concludes that any further attempts to amend would be futile.  Accordingly, the Court shall enter judgment, and the Clerk shall close this file.

**IT IS SO ORDERED.**

Dated: May 20, 2019

_____
JEFFREY S. WHITE
United States District Judge

---

[4] The Court also notes that the email on which Brown relies to establish an agreement does not mention menu prices.  (*See* SAC ¶ 35.)